UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

KEITH CHIN, Individually and on Behalf of      :
All Others Similarly Situated,                 :
                                               :
               Plaintiff,        :
                                               :
       vs                                :
                                               :
KE HOLDINGS INC., PENG YONGDONG,               :
XU TAO, SHAN YIGANG, BAO FAN, LI               :   21-cv-11196 (GHW)
ZHAOHUI, CHEN XIAOHONG, COLLEEN                :
A. DE VRIES, GOLDMAN SACHS (ASIA)              :
L.L.C., MORGAN STANLEY & CO. LLC, J.P.         :
MORGAN SECURITIES LLC, CHINA                   :
RENAISSANCE SECURITIES (HONG                   :
KONG) LIMITED, GOLDMAN SACHS &                 :
CO. LLC and CHINA RENAISSANCE                  :
SECURITIES (US) INC.,                          :
                                               :
               Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR JOINT MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants KE Holdings Inc.*
*and Colleen A. De Vries*

O'MELVENY & MYERS LLP
Jonathan Rosenberg
B. Andrew Bednark
7 Times Square
New York, NY 10036
Phone: (212) 326-2000
Fax: (212) 326-2061
jrosenberg@omm.com
abednark@omm.com

William K. Pao (*pro hac vice*)
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Phone: (213) 430-7272
Fax: (213) 430-6407
wpao@omm.com

*Counsel for Defendant KE Holdings Inc.*

GOODWIN PROCTER LLP
Douglas H. Flaum
Gabrielle Lisa Gould
620 Eighth Avenue
New York, NY 10018
Phone: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com
ggould@goodwinlaw.com

*Counsel for Underwriter Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT..........................................................................................................................1

I.      PLAINTIFF FAILS TO PLEAD A MISSTATEMENT OR OMISSION .........................2

II.     PLAINTIFF FAILS TO PLEAD A "STRONG INFERENCE" OF SCIENTER...............7

III.    LACK OF LOSS CAUSATION IS APPARENT ON THE COMPLAINT'S FACE ......10

IV.    PLAINTIFF FAILS TO PLEAD SECURITIES ACT STANDING...............................10

CONCLUSION.....................................................................................................................10

## TABLE OF AUTHORITIES

### CASES

*Arkansas Public Employees Retirement System v. Bristol-Meyers Squibb Co.*,
 28 F.4th 343 (2d Cir. 2022)...................................................................................7

*In re Chembio Diagnostics, Inc. Securities Litigation*,
 No. 20-CV-2706 (ARR) (PK), 2022 WL 2872671 (E.D.N.Y. July 21, 2022) ...................9

*In re China XD Plastics Co. Ltd. Securities Litigation*,
 No. 14-cv-05308 (GBD), 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016) .................3, 4, 6

*Francisco v. Abengoa*, *S.A.*,
 481 F. Supp. 3d 179 (S.D.N.Y. 2020) ...............................................................8

*Glaser v. The9, Ltd.*,
 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ...............................................................8

*In re HEXO Corp. Securities Litigation*,
 524 F. Supp. 3d 283 (S.D.N.Y. 2021) ...............................................................2

*Indiana Public Retirement System v. Pluralsight, Inc.*,
 45 F.4th 1236 (10th Cir. 2022)......................................................................2, 8

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001)..............................................................................8

*In re Keyspan Corp. Securities Litigation*,
 383 F. Supp. 2d 358 (E.D.N.Y. 2003) .............................................................2

*Lerner v. Fleet Bank, N.A.*,
 459 F.3d 273 (2d Cir. 2006)............................................................................10

*In re Longwei Petroleum Investment Holding Ltd. Securities Litigation*,
 No. 13 CV 214(HB), 2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ...............................3, 5

*In re Manulife Financial Corp. Securities Litigation*,
 276 F.R.D. 87 (S.D.N.Y. 2011)......................................................................10

*McIntire v. China MediaExpress Holdings, Inc.*,
 927 F. Supp. 2d 105 (S.D.N.Y. 2013) .............................................................3

*Miao v. Fanhua, Inc.*,
 442 F. Supp. 3d 774 (S.D.N.Y. 2020) .........................................................4, 6

*Milligan v. GEICO General Insurance Co.*,
 No. 20-3726-cv, 2022 WL 433289 (2d Cir. Feb. 14, 2022) ...............................8

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
 No. 08 Civ 5653(PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010).............................10

*In re NIO, Inc. Securities Litigation*,
 No. 19-CV-1424 (NGG) (JRC), 2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)................2

*In re Pareteum Securities Litigation*,
 No. 19 Civ. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021).........................8

*Plumbers & Pipefitters National Pension Fund v. Davis*,
 No. 1:16-cv-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ..........................3

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of
 Commerce*,
 694 F. Supp. 2d 287 (S.D.N.Y. 2010) ..............................................................................8

*In re Rockwell Medical, Inc. Securities Litigation*,
 No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ...........................8

*Rombach v. Chang*,
 355 F.3d 164 (2d Cir. 2004)...............................................................................................9

*Rotunno v. Wood*,
 No. 22-502, 2022 WL 14997930 (2d Cir. Oct. 27, 2022) ..................................................9

*In re Sanofi Securities Litigation*,
 155 F. Supp. 3d 386 (S.D.N.Y. 2016) ...............................................................................9

*Schaffer v. Horizon Pharma PLC*,
 No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ..............................5

*In re Scottish Re Group Securities Litigation*,
 524 F. Supp. 2d 370 (S.D.N.Y. 2007) ..............................................................................8

*In re UBS AG Securities Litigation*,
 No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012).........................2

*In re XL Fleet Corp. Securities Litigation*,
 No. 21 Civ. 2002 (LGS), 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022).............................6

**PRELIMINARY STATEMENT**

The Opposition exposes the Complaint's false premise that any discrepancy between KE Holdings' disclosed metrics and Muddy Waters' analysis of incomplete customer-facing data must mean there was a material misrepresentation.  The Opposition *concedes* that the short seller did not review complete information, overlooked significant data sources, and used unsupported assumptions to *extrapolate* KE Holdings' "true" figures.  Worse still, Plaintiff admits that its counsel did not corroborate *any* of Muddy Waters' findings through independent investigation.

Equally flawed is the Opposition's heavy reliance on the Company's disclosure of "active" stores and agents in Q3 2021.  Far from "admitting" that any prior statement was false, the Company merely presented more specific data that was consistent with prior disclosures that most stores had seen "low activity levels" throughout 2020.  Nor does Muddy Waters' purported "field work" show overstated store totals.  The Complaint pleads no facts showing the handful of stores that Muddy Waters failed to locate were fabricated.  Plaintiff also fails to reconcile the multiple errors and gaps in Muddy Waters' GTV and revenue findings.

Dismissal is also warranted because Plaintiff fails to plead with particularity a "strong inference" of scienter.  Unable to identify any specific report contradicting Defendants' statements, the Opposition resorts again to bootstrapping a scienter inference from the Company's alleged Q3 2021 "admission," and speculating over the reasons for this press release and the Company's disclosure that its independent investigation—like Plaintiff's own—found no evidence of fraud.

**ARGUMENT**

Because Plaintiff *admits* that "overlapping conduct forms the basis for" all its claims (Opp. at 6), all its claims are subject to Rule 9(b).  Contrary to Plaintiff's assertions, (*id.*), "separat[ing] [its] claims under the Securities Act and the Exchange Act and disclaim[ing] fraud as a basis for [its] Securities Act claims" does not exempt the Complaint from heightened pleading

1

requirements.  *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021).

Unlike the case Plaintiff cites,[1] the Securities Act claims here are explicitly fraud-based, relying

on the Muddy Waters Report (AC ¶¶ 210, 221), which accuses KE Holdings of "systemic fraud"

(AC Ex. A at 2), that Plaintiff alleges existed at the time of the SPO (Opp. at 15, 25).

## I.    PLAINTIFF FAILS TO PLEAD A MISSTATEMENT OR OMISSION

### A.    The Q3 2021 Press Release Did Not Reveal Any Prior Misstatement

Plaintiff does not dispute that the Company had no duty to disclose the new category of

"active" stores and agents that it announced in Q3 2021.  (Br. at 10.)  Rather, it contends that the

introduction of these "active" metrics was an "admission" that its prior reported totals were false.

(Opp. at 2, 7.)  But Plaintiff cannot dispute that the Company *never* restated any prior metrics.

(*See* Br. at 10.)  Indeed, KE Holdings even reproduced these same figures in the Q3 2021 Press

Release alongside the new "active" metrics (Ex. D at 1 n.3).[2]

Nor were reported store and agent totals misleading for failing to state "that KE's network

included significant numbers of inactive stores and agents," as Plaintiff contends.  (Opp. at 8–9.)

"Even at the pleading stage, dismissal is appropriate where the complaint is premised on the

nondisclosure of information that was actually disclosed."  *In re Keyspan Corp. Sec. Litig.*, 383 F.

Supp. 2d 358, 377 (E.D.N.Y. 2003).  Here, KE Holdings warned that "***most of the brokerage***

***stores on our platform were subject to lockdown and low activity level for a certain period of***

***time in . . . 2020 due to the COVID-19 pandemic***."  (Ex. B at 103; Ex. L at 99.)  Contrary to

Plaintiff's claims, no reasonable investor would have understood from this disclosure that *all*

---

[1]    *See In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at *5 (E.D.N.Y. Aug. 12, 2021) (alleging defendants did not "possess reasonable grounds for the facts presented to investors in the Registration Statement").

[2]    Plaintiff also "conceded . . . by silence" that the Q3 2021 Press Release was not a "corrective disclosure" that revealed a prior misstatement to the market.  *In re UBS AG Sec. Litig.*, No. 07 Civ. 11225 (RJS), 2012 WL 4471265, at *18 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014); (*see* Br. at 11).  Plaintiff's case is thus inapposite, as there, defendant "later explained" its prior figure was false.  *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1250 (10th Cir. 2022).

reported stores and agents were "active" at the time. (Opp. at 8.) And far from discounting the low activity levels as a "situation that had passed," as Plaintiff claims, (Opp. at 8–10), the Company made clear that such low store and agent activity levels persisted throughout 2020 even as overall revenue increased for another reason—namely, new home transactions on the platform:

> Although most of the brokerage stores on our platform were subject to lockdown and low activity level for a certain period of time in 2020 due to the COVID-19 pandemic, the significantly increased demand and capacity of our platform for new home transactions still brought about [] strong revenue growth [compared to] 2020. (Ex. L at 99; *see also* Ex. B at 103 (similar).)

The Q3 2021 disclosure of "active" metrics was consistent with both this disclosure and the Company's general statements, on which Plaintiff relies, allegedly "tying KE Holdings' success to the size and active nature of its store and agent network." (Opp. at 9 & n.8.) Plaintiff does not dispute that, even under the "active" metrics introduced in Q3 2021, KE Holdings still had tens of thousands of active stores and hundreds of thousands of active agents. (Br. at 11.) Plaintiff's own case recognizes that such generic statements about the Company's success, which do "not 'offer any of [] long-term guarantees' or specifics," are puffery. *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-cv-3591-GHW, 2020 WL 1877821, at \*10 (S.D.N.Y. Apr. 14, 2020).

### B.    The Muddy Waters Report Does Not Establish Falsity

Unlike the cases Plaintiff cites, "the reasonableness of the allegation that [KE Holdings'] SEC filings are fraudulent depends ***entirely*** on whether the pleaded facts support a reasonable inference that there is indeed a significant discrepancy between [the] SEC . . . filings" and the data Muddy Waters reviewed.[3] *In re China XD Plastics Co. Ltd. Sec. Litig.*, No. 14-cv-05308 (GBD),

---

[3]    Unlike here, the short sellers in Plaintiff's cases alleged falsity based on discrepancies between defendants' *own* filings to different regulators. *See, e.g., In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13-cv-14, 2014 WL 285103, at \*1 (S.D.N.Y. Jan. 27, 2014) (defendant "reported drastically different revenues to the SAIC and SEC"); *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 125 (S.D.N.Y. 2013).

2016 WL 1241522, at *5 (S.D.N.Y. Mar. 23, 2016).  Plaintiff does not dispute that Muddy Waters overlooked or was unable to obtain significant data, relying instead on unsupported assumptions to *extrapolate* KE Holdings' figures.  (Opp. at 15, 18–20 & n.18.)  Nor does Plaintiff plead that Muddy Waters' "unnamed" sources had access to the Company's internal data.  (*Id*. at 14.)  Plaintiff even ***admits*** its counsel ***could not corroborate or replicate*** Muddy Waters' findings (Opp. at 15 n.11)—which alone warrants dismissal.  *See Miao v. Fanhua, Inc*., 442 F. Supp. 3d 774, 802 (S.D.N.Y. 2020) (dismissing complaint that "does not allege any independent corroborative facts, any independent investigation by counsel, or any contact by plaintiff's counsel with the interviewees").  Because "[i]t is not reasonable to infer that [the] SEC filings must be false based upon a comparison to less than a complete set of" data, the Muddy Waters Report cannot support Plaintiff's claim of falsity.  *China XD*, 2016 WL 1241522, at *6.

Plaintiff's claims regarding store and agent count, GTV, and revenue are all fatally flawed because they all depend on Muddy Waters' review of data from the "Find Agent" function. Plaintiff does not dispute that this is an incomplete source, as it expressly ***omits*** agents listed on a separate "New Home" subpage, as well as agents who opt out of customer-facing search results. (Br. at 13.)  The Muddy Waters Report, however, is clear that the "Find Agent" function is its only source, as the "New Home" subpage is not mentioned *once* in its 30-page description of methodology.[4]  (*See* AC Ex. A at 47–77.)  Plaintiff argues that "Defendants do not provide any reason why agents would choose to" opt out of search results.  (Opp. at 16.)  Putting aside Plaintiff's impermissible burden-shifting, there are, of course, countless reasons that an agent might choose to opt out—*e.g*., an already large existing customer base, a preference for working

---

[4]    The Muddy Waters Report includes a screenshot of the customer-facing app home page, confirming that data was collected from the home page, not the "New Home" subpage.  (*Compare* AC Ex. A at 47 *with* Ex. B at 161.)  Muddy Waters never denied that it excluded such data, even after KE Holdings noted this flaw.  (*See* Ex. J at 1.)

with offline community-centric stores, or sell-side agents who work directly with buy-side agents rather than potential buyers.[5]  As ***Plaintiff*** bears the burden to plead fraud with particularity, its failure to account for, much less explain, obvious innocuous explanations is fatal to its claims.

Plaintiff's reference to the "Agent Cooperation Network (ACN)" (Opp. at 16) is just another way of referring to the same internal data, as the Muddy Waters Report itself confirms:

> The platform contains key data points on the number of stores and transactions for new and existing homes, what the company refers to as its Agent Cooperation Network (ACN). ***Platform data is available for external customers to view. We created an automated program to collect the publicly available data on BEKE's platform*** for the sale of new and existing homes through the Company owned brokerage (Lianjia) and connected store brokerages.  (AC Ex. A at 47.)

Hence, Muddy Waters' reference to the ACN does not change the fact that its sole source of data is external, customer-facing "[p]latform data . . . available for external customers to view." (*Id.*).

### 1. Agents and Stores Were Not Overstated

For several other independently dispositive reasons, the Muddy Waters Report also cannot support Plaintiff's claim that store and agent counts were inflated.  <u>First</u>, Muddy Waters did not collect ***any data*** from financial periods reported in the SPO Documents, 2020 20-F, or Q3 2020 to Q2 2021 Press Releases, and thus cannot "support claims of [falsity] for the entire Class Period."[6] *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018).

<u>Second</u>, the Complaint ***itself*** states that Muddy Waters' purported "field work" found only that the stores "closed or merged into other stores," (AC ¶¶ 70–79), or "were listed separately . . .

---

[5]   As the SPO Documents explain, a single transaction "can be served by a group of agents, each performing different roles including posting, relationship and information management, documentation, field work, and key keeping." (Ex. B at 154–55.)  Not all of these roles require "connecting with customers." (Opp. at 16.)  Plaintiff also fails to allege why an agent at an offline store, which "serve[s] as convenient access points for ***local walk-in*** housing customers," would need to appear in online search results.  (Ex. B at 162.)

[6]   Unlike here, the allegations in *Longwei*—including "video surveillance," "interviews with local, unnamed residents," and "published photographs of the railroad tracks ostensibly used to deliver fuel, which showed overgrowth and rust, suggesting that they had been 'unused' for 'quite some time'"—pleaded that the company had abandoned its facilities at an earlier date.  2014 WL 285103, at *1.

to keep track of the business of the respective managers operating out of the same store" (*id.* ¶ 85). Even accepting these allegations as true, they do not indicate false store or agent counts, but only that the Company's online operations, as previously disclosed, are meant to "allow agents to track, manage and complete the transaction process."[7] (Ex. B at 143.) Plaintiff does not allege that the Company's SEC filings relied on data shown on its customer-facing platform.

Third, the Opposition confirms that the comparison Plaintiff seeks to draw between Lianjia agents reported in KE Holdings' SEC filings and the SAIC filings of certain of its Deyou subsidiaries is an apples-to-oranges comparison. (Br. at 16–17.) Plaintiff ignores that the filings in question, made to different countries' regulators and thus not directly comparable, *China XD*, 2016 WL 1241522, at *6, belong to **two completely different entities with vastly different characteristics**—*i.e.*, Lianjia stores directly operated by the Company versus Deyou stores that operate under a franchise model. (Opp. at 17–18.) Plaintiff ignores that Muddy Waters did not review SAIC data for any **store** (*see* Br. at 16), even though Lianjia has "approximately 1,400 and 1,000 brokerage stores, in Beijing and Shanghai, respectively."[8] (Ex. L at 60.) Muddy Waters' purported review of other SEC filings in addition to the 2020 20-F does not cure the defect (*id.* at 16), as these also list only "the Company's *major* subsidiaries," not all subsidiaries.[9] (Opp. at 17.) Plaintiff's failure to recognize these "demonstrable errors," even in its Opposition, supports dismissal. *Miao*, 442 F. Supp. 3d at 804.

---

[7]   In contrast, Plaintiff's cases plausibly alleged widespread fraudulent practices. *See, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, No. 21 Civ. 2002 (LGS), 2022 WL 493629, at *4 (S.D.N.Y. Feb. 17, 2022) (first-hand employee accounts of being directed by the company to record false sales "even if [] customer had not expressed interest").

[8]   While the six stores with which Muddy Waters allegedly spoke may "be aware of [their] own hiring practices," (Opp. at 18), they were not in a position to know the practices of the thousands of other Lianjia stores.

[9]   (July 25, 2020 F-1 at F-111, https://sec.report/Document/0001047469-20-004229/; Nov. 16, 2020 F-1 at F-15, https://sec.report/Document/0001047469-20-005501/. Muddy Waters only reviewed QiChaCha and QiXinBao to pull "annual SAIC data for [the Company's] Shanghai subsidiaries," *i.e.*, the two "major" subsidiaries listed in its SEC filings. (AC Ex. A at 3.)

### 2.   GTV and Revenue Were Not Overstated

Muddy Waters' purported findings regarding GTV and revenue also fail to plead falsity. The Opposition *admits* that Muddy Waters *excluded* (i) transaction data from *39%* of days in Q2 and Q3 2021 (Opp. at 18; Br. at 18); (ii) existing-home sales data for *one third* of the cities, including Chengdu, Beijing, and Shanghai, the last two of which are "KE Holdings' two primary markets," (Opp. at 18; Br. at 18–19; AC ¶ 116); (iii) sales price data for *all* new-home sales (Br. at 18); and (iv) other sources of GTV and revenue—*e.g.*, new-home revenue and "platform service fees, franchise fees, and other value-added services" (*id.* at 19–20; Ex. J at 1; Ex. B at 95).

Plaintiff fails to fill these gaps.  First, Plaintiff ignores that Muddy Waters' GTV and revenue estimates are based on incomplete data from the "Find Agent" function.  (*Supra* § I.B.) Second, Plaintiff's speculation that "Muddy Waters . . . would have captured data from the dedicated new home sales team and any 'other sales channels' because they operate '*on* [KE's] platform'" ignores that Muddy Waters did not collect any data from the "New Home" subpage. (*Supra* § I.B & n.6.)  Third, Plaintiff fails to allege any facts showing that the CRE data used to estimate new home sales prices is reliable, or that *2020* data is comparable to *2021* transaction prices.  (*See* Opp. at 18 & n.17.)  Finally, although Muddy Waters referenced "platform service fees" in describing KE Holdings' revenue recognition practices, (AC Ex. A at 10), it did not state that such fees were included in its data collection.  (*See id.* at 47–77; Opp. at 19–20.)

## II.   PLAINTIFF FAILS TO PLEAD A "STRONG INFERENCE" OF SCIENTER

Plaintiff's failure to plead a "strong inference" of scienter likewise requires dismissal of all claims.  Plaintiff's failure to allege motive requires "correspondingly greater" allegations of conscious misbehavior or recklessness, neither of which Plaintiff adequately pleads.  *Ark. Pub. Emps. Ret. Sys. v. Bristol-Meyers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).  Plaintiff has not identified any specific report or information giving Defendants "access to contrary facts."

7

*Francisco v. Abengoa*, *S.A.*, 481 F. Supp. 3d 179, 213-14 (S.D.N.Y. 2020). "[B]road reference[s] to raw data," *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 588 (S.D.N.Y. 2011), like the SPO Documents' "agent activity data" Plaintiff references, are insufficient (Opp. at 22).[10] Plaintiff does not allege that this data included the "active" metrics later defined in Q3 2021, or any reason why KE Holdings could not have retroactively used such data to determine the "active" metrics later. (Opp. at 21.) Plaintiff does not allege that any Individual Defendant had access to this data or any contrary GTV or revenue data and continues to disclaim any fraudulent intent by the Underwriter Defendants. (*Id.* at 6, 22.) Plaintiff's insistence that the Company's executives must have known because they "were responsible for KE's overall strategy" (Opp. at 21 n.22) is a position-based allegation entitled to no weight. *Plumbers & Steamfitters Local 773 v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010). Regardless, the failure to allege "a clear duty to disclose" also warrants dismissal. *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001).[11]

Plaintiff's attempts to infer scienter in hindsight from KE's purported Q3 2021 "admission" fails for the same reasons above (*supra* § I.A), and finds no support in the case law Plaintiff cites. (Opp. at 20–21.) In those cases, courts inferred scienter from *restatements* of past metrics, which are not alleged here.[12] Plaintiff's new allegation that KE Holdings introduced the "active" metrics because it "anticipated" the Muddy Waters Report (Opp. at 21) should not be considered because it is not in the Complaint, nor is it supported by any well-pleaded facts showing KE Holdings knew the Muddy Waters Report's subject matter or release date. *See Milligan v. GEICO Gen. Ins. Co.*,

---

[10] The complexity and volume of the Company's data is materially different from the "single objectively verifiable data point" that the CFO in Plaintiff's case admitted he monitored. *Pluralsight*, 45 F.4th at 1263–64.

[11] *See also In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *15 (S.D.N.Y. Mar. 30, 2018) (scienter theory based on defendant's failure "to publicly count its chickens before they hatch, would effectively create a duty to disclose and a presumption of fraudulent intent that is contradicted by the law of this Circuit").

[12] *See, e.g.*, *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *10, 17 (S.D.N.Y. Aug. 11, 2021) (noting "magnitude of corrections in a restatement"); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) (finding "some circumstantial evidence of scienter" from "large, $112 million 'surprise' valuation").

2022 WL 433289, at *6 (2d Cir. Feb. 14, 2022) ("[c]omplaint cannot be amended by the briefs").

Plaintiff's remaining scienter theories are equally meritless. Plaintiff does not dispute that "an internal investigation tends to undermine any inference of scienter." (Br. at 22–23). To the extent Plaintiff complains about the level of detail disclosed about the investigation, the most compelling inference is that there was nothing more to disclose because the investigation—like Plaintiff's counsel—"did not uncover any unlawful activity." *In re Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 407 (S.D.N.Y. 2016). Similarly, the more compelling inference as to why the Company removed the "Find Agent" function was to prevent further misuse and inaccurate speculation about the Company's financials. Plaintiff's reliance on two unrelated allegations from the Muddy Waters Report (Opp. at 22) underscores the lack of any coherent scienter inference, individually or holistically. *See Rotunno v. Wood*, 2022 WL 14997930, at *5 (2d Cir. Oct. 27, 2022) (concluding that "unrelated" allegations "do not add to the plausibility of the scienter allegations").

Plaintiff's failure to plead scienter requires dismissal of *all* its claims. (Br. at 20 & n.7.) "[C]ourts in this circuit have consistently . . . dismiss[ed] Securities Act claims that sound in fraud but fail to plead scienter." *In re Chembio Diagnostics, Inc. Sec. Litig.*, No. 20-CV-2706 (APR) (PK), 2022 WL 2872671, at *7 (E.D.N.Y. July 21, 2022) (collecting cases). Plaintiff claims this long line of authorities "misread[s]" *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), because Rule 9(b) "does not add substantive elements such as scienter to any claim." (Opp. at 7 n.6.) But while "[f]raud is not an element or a requisite to a claim under Section 11 or Section 12(a)(2) . . . claims under those sections may be—and often are—predicated on fraud," requiring particularized allegations of the "circumstances constituting fraud." *Rombach*, 355 F.3d at 170-71. In other words, Rule 9(b) itself does not add substantive elements, but Plaintiff's reliance on a fraud-based theory converts their claim into one requiring more than a negligent state of mind. *Id.* While

Plaintiff contends it can allege state of mind generally (Opp. at 7), any "relaxation of Rule 9(b)'s specificity requirement regarding condition of mind" does not allow "speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Nor can Plaintiff disclaim fraud for its Securities Act claims when all the alleged conduct overlaps.

## III. LACK OF LOSS CAUSATION IS APPARENT ON THE COMPLAINT'S FACE

The Opposition confirms Plaintiff cannot demonstrate "the market reacted negatively to a corrective disclosure of the fraud." (Opp. at 24.) While the Company's stock price fluctuated on the day the Muddy Waters Report was released—from a low of $17.72 to a high of $21.33—it closed *higher* than when it opened, (Ex. I at 9), rendering Plaintiff's "loss causation allegation implausible." *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011). Plaintiff cites no authority supporting loss causation based on a fleeting intra-day price dip.

## IV. PLAINTIFF FAILS TO PLEAD SECURITIES ACT STANDING

Plaintiff rests on its conclusory allegations that it purchased ADSs "traceable" (AC ¶ 250) and "pursuant to" (AC ¶ 257) the SPO Documents to plead Section 11 and 12(a)(2) standing, respectively. (Opp. at 25.) But merely reciting the statutory elements cannot suffice in the SPO context here. The Complaint alleges no facts to support a plausible inference that Plaintiff bought the SPO ADSs, as opposed to the millions of other identical and fungible ADSs already in the market. Plaintiff also identifies no purchases directly from any defendant to plead Section 12 standing,[13] and merely repeats that it purchased at the offering price on the offering date (Opp. 25 n.27), which is insufficient to plead Section 11 standing (Br. 25).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice.

---

[13] *See, e.g.*, *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, 2010 WL 1473288, at *4 (S.D.N.Y. Mar. 29, 2010) (dismissing Section 12(a) claim for failing to allege certificate purchased directly from the defendant).

Dated:  New York, New York
      December 7, 2022

                                      Respectfully submitted,

/s/ Douglas H. Flaum                          /s/ Robert A. Fumerton

GOODWIN PROCTER LLP
Douglas H. Flaum
Gabrielle Lisa Gould
620 Eighth Avenue
New York, NY 10018
Phone: (212) 813-8800
Fax: (212) 355-3333
dflaum@goodwinlaw.com
ggould@goodwinlaw.com

*Counsel for Underwriter Defendants*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
Fax: (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants KE Holdings Inc.
and Colleen A. De Vries*

O'MELVENY & MYERS LLP
Jonathan Rosenberg
B. Andrew Bednark
7 Times Square
New York, NY 10036
Phone: (212) 326-2000
Fax: (212) 326-2061
jrosenberg@omm.com
abednark@omm.com

O'MELVENY & MYERS LLP
William K. Pao (*pro hac vice*)
400 South Hope Street
18th Floor
Los Angeles, CA 90071
Phone: (213) 430-7272
Fax: (213) 430-6407
wpao@omm.com

*Counsel for Defendant KE Holdings Inc.*