**Robbins Geller Rudman & Dowd LLP**

| | | |
|---|---|---|
| Boca Raton | Melville | San Diego |
| Chicago | Nashville | San Francisco |
| Manhattan | Philadelphia | Washington, D.C. |

Erin W. Boardman
eboardman@rgrdlaw.com

May 8, 2023

<u>VIA ECF</u>

The Honorable Gregory H. Woods, U.S.D.J.
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *Chin v. KE Holdings, Inc., et al.*, Case No. 1:21-cv-11196 (GHW) (S.D.N.Y)

Dear Judge Woods:

We represent Lead Plaintiff Saskatchewan Healthcare Employees' Pension Plan ("Plaintiff") in the above-captioned matter, and respectfully submit the enclosed supplemental authority, *Nayani v. LifeStance Health Group, Inc.*, No. 22-cv-6833 (JSR), 2023 WL 3260260 (S.D.N.Y. May 4, 2023), in further opposition to Defendants' pending motion to dismiss.  *See* ECF No. 83.

In holding that otherwise historically-accurate statements about the company's clinician retention rate gave rise to a duty to disclose a recent increase in clinician turnover, Judge Rakoff explained that "'literal accuracy is not enough. . . . An issuer must as well desist from misleading investors by saying one thing and holding back another.'  That duty is precisely what plaintiff alleges the defendants breached."  *LifeStance*, 2023 WL 3260260, at *3 (citations omitted).  While Plaintiff here maintains that the reported store and agent counts were themselves materially false and misleading for including inactive stores and agents (*see* ECF No. 89 at 7-8), *LifeStance* confirms the corollary point that those statements—whether literally accurate or not—gave rise to a duty to tell the whole truth.  *See* ECF No. 89 at 8-9.  Defendants breached this duty by "holding back" the fact that large portions of the store and agent counts were comprised of inactive stores and agents.  *Id.*; *LifeStance*, 2023 WL 3260260, at *3.

Moreover, Judge Rakoff found the Securities Act claims did not sound in fraud because "the allegations . . . simply track[ed] the elements of section 11, and a plaintiff cannot be held to allege fraud whenever he tracks those elements."  *LifeStance*, 2023 WL 3260260, at *2.  Similarly, here, the Securities Act allegations in the Amended Complaint allege no more than negligence, tracking the language of Section 11 and Section 12(a)(2).  *See* ECF No. 51 ¶¶208, 213, 215, 217, 219, 221, 244, 247, 257-258.

Respectfully submitted,

Erin W. Boardman

cc:    All Counsel of Record (via ECF)

Encl.

2023 WL 3260260
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Nizar S. NAYANI, Individually and on Behalf
of All Others Similarly Situated, Plaintiff,
v.
LIFESTANCE HEALTH GROUP, INC., Michael K.
Lester, J. Michael Bruff, Robert Bessler, Darren Black,
Jeffrey Crisan, William Miller, Jeffrey Rhodes, Eric
Shuey, Katherine Wood, Morgan Stanley & Co. LLC,
Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC,
Jefferies LLC, TPG Capital BD, LLC, UBS Securities
LLC, and William Blair & Company, L.L.C., Defendants.

22-cv-6833 (JSR)
|
Signed May 4, 2023

**Attorneys and Law Firms**

David Avi Rosenfeld, Michael Gerard Capeci, Samuel
Howard Rudman, Mark Tamerlane Millkey, Robbins Geller
Rudman & Dowd LLP, Melville, NY, Brent Edward Mitchell,
Brent Edward Mitchell, Long Island City, NY, for Plaintiff.

Cole A. Goodman, Sara A. Bellin, William T. Davison, Ropes
& Gray LLP, Boston, MA, Daniel V. McCaughey, Ropes &
Gray LLP, San Francisco, CA, Martin Jonathan Crisp, Ropes
& Gray LLP, New York, NY, for Defendants LifeStance
Health Group, Inc., Michael K. Lester, J. Michael Bruff,
Robert Bessler, Darren Black, Jeffrey Crisan, William Miller,
Jeffrey Rhodes, Eric Shuey, Katherine Wood.

Brian Stryker Weinstein, Esther C. Townes, Davis Polk &
Wardwell LLP, New York, NY, Vincent Barredo, Davis Polk
& Wardwell LLP, Menlo Park, CA, for Defendants Morgan
Stanley & Co. LLC, Goldman Sachs & Co. LLC, J.P. Morgan
Securities LLC, Jefferies LLC, TPG Capital BD, LLC, UBS
Securities LLC, William Blair & Company, L.L.C.

MEMORANDUM ORDER

JED S. RAKOFF, United States District Judge

 **\*1**  This is a putative class action filed by plaintiff Nizar
Nayani against defendants LifeStance Health Group, Inc.
("LifeStance"), a firm that provides mental health services,

nine of LifeStance's officers and directors (the "Individual
Defendants"), and seven underwriters of LifeStance's initial
public offering ("IPO"). The First Amended Complaint
("FAC") alleges that LifeStance filed a materially inaccurate
registration statement (the "Registration Statement") in
preparation for its IPO.

On January 18, 2023, defendants moved to dismiss the FAC.
After full consideration of the parties' written submissions
and oral arguments, the Court denied defendants' motion by
"bottom-line order" dated April 10, 2023. This memorandum
reconfirms that order and explains the reasoning behind its
rulings.

I. Plaintiff's Allegations
LifeStance is a company that provides mental health services
throughout the United States. FAC, ¶ 21. In 2021, LifeStance's
then-owners decided to take it public. On May 17, 2021,
in preparation for LifeStance's IPO, LifeStance filed a
Registration Statement on Form S-1, which became effective
on June 9, 2021. Id. at ¶ 25-26.

As the Registration Statement itself noted, LifeStance's
retention of its clinicians was central to its success. Id. at
¶ 28. The Registration Statement claimed that LifeStance
had performed remarkably well on this metric, noting that
LifeStance retained physicians at a rate of 87% between
March 2017 and December 31, 2020, significantly above the
industry average of 77%. Id. at ¶ 68.

Midway through the second quarter of 2021, however,
LifeStance began to see a marked increase in clinician
turnover. FAC, ¶ 57. Since physician retention was so
important to LifeStance's success, this increase in turnover
allegedly was discussed among high levels of LifeStance's
management. Id. at ¶¶ 34, 54. But LifeStance did not disclose
the increase in clinician turnover in its Registration Statement.

LifeStance went public on June 10, 2021, at an initial price of
$18.00 per share. FAC, ¶ 27. On August 11, 2021, LifeStance
disclosed its financial results for the second quarter of 2021
and revised its financial projections for the second half of
2021. Id. at ¶¶ 97-111. LifeStance revised its expected profit
margin for the second half of 2021 downwards by between
7.4% and 9.5% and its EBITDA by between 25.9% and
33.2%, attributing these declines to its struggles with clinician
retention. Id. at SI 107. On this news, LifeStance's stock
declined by 46%, eliminating more than $2.5 billion of market
value. Id. at ¶ 109.

The First Amended Complaint asserts two claims:

(1) That all defendants violated section 11 of the Securities Act by filing a registration statement that was materially inaccurate, due to its failure to disclose the decline in clinician retention that was observed during Q2 2021;

(2) That the Individual Defendants violated section 15 of the Securities Act because (a) they were directly responsible for LifeStance as its controlling persons and (b) LifeStance violated section 11.

## II. Discussion

### A. Standard of Review

**\*2** To survive a motion to dismiss for failure to state a claim, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint must offer more than "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). If the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 570.

Additionally, defendants argue that the FAC must be pled with particularity under Rule 9(b). Rule 9(b), of course, applies to a claim that alleges fraud, Fed. R. Civ. P. 9(b), and the defendants argue that plaintiff's allegations "sound in fraud" because the FAC alleges that the defendants knew of a material decline in clinician retention but still touted LifeStance's historical clinician retention rate. See FAC, ¶¶ 121, 129.

This argument misconstrues both the plaintiff's complaint and the applicable law. The FAC expressly states that "it does not allege, and does not intend to allege, fraud or scienter, which are not elements of a § 11 [or § 15] claim, and any implication of fraud or scienter is disclaimed." FAC, ¶¶ 121, 129. Additionally, the FAC alleges that defendants either knew or "should have known" that the pertinent statements were false -- allegations that are consistent with negligence. Finally, the allegations in the FAC simply track the elements of section 11, and a plaintiff cannot be held to allege fraud whenever he tracks those elements. See Fresno County Employees' Retirement Association v. comScore, Inc., 268 F. Supp. 3d 526, 559 (S.D.N.Y. 2017) ("[To] hold that bare recitations

of the elements of the causes of action triggered Rule 9(b) would be contrary to the holding of the Court of Appeals in Rombach [v. Chang], 355 F.3d [164, 178 (2d Cir. 2004)], that claims under Section 11 need not sound in fraud."); In re Orion Sec. Litig., No. 08 CIV. 1328 (RJS), 2009 WL 2601952, at *1 (S.D.N.Y. Aug. 20, 2009) ("[T]hat a fact was known and not disclosed does not mean, as a matter of law, that the circumstances of the resulting omission sound in fraud."). Thus, the FAC does not "sound in fraud," and its allegations will not be held to the heightened pleading requirements of Rule 9(b).

### B. Duty to Disclose

The main issue raised by the defendants' motion is whether LifeStance had a duty to disclose its interim retention data in the Registration Statement. Defendants argue that LifeStance had no such duty for three independent reasons. Defendants assert that disclosure of the interim retention data was not needed to correct any otherwise misleading statement, that the interim retention data was immaterial, and that LifeStance had no duty to disclose results between the close of two quarters. The Court is not persuaded by any of defendants' arguments.

### 1. Duty to Correct

Section 11 of the Securities Act does not impose a freestanding duty to disclose material information. Rather, section 11 imposes liability for omissions only when a registration statement "omit[s] to state a material fact required to be stated therein," or "omit[s] to state a material fact ... necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a); Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017).

Defendants argue that LifeStance's Registration Statement was not misleading, even without disclosure of LifeStance's interim retention data. [1] LifeStance's Registration Statement reported its historical retention rate -- dating from March 2017 through December 31, 2020 -- accurately. And LifeStance expressly warned its investors that its retention rate might change in the future. See Decl. of Sara A. Bellin in Supp. of Mot. to Dismiss, Ex. A, at 15 (warning that LifeStance's historical results are "not necessarily indicative of results to be expected for the full year ending December 31, 2021 ...."). Thus, defendants argue, the Registration Statement was not misleading even without the interim retention data. See In re Coty Inc. Sec. Litig., 2016 WL 1271065, at *6 (S.D.N.Y. Mar. 29, 2016) (finding "no basis in securities law" for the proposition that a registration statement's recital of

historical financial data "created an implicit promise that [a company's] net revenues and operating income would continue to increase.").

[1]     Defendants also argue that the interim retention data was not required to be stated on the Registration Statement under applicable regulations. Since the Court finds that the data was needed to make the Registration Statement not misleading, and since that finding independently supports a duty to disclose, the Court does not address that argument here.

**\*3**  But "literal accuracy is not enough." [Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S.Ct. 1318, 1331 (2015)](). Under section 11, "An issuer must as well desist from misleading investors by saying one thing and holding back another." Id. That duty is precisely what plaintiff alleges the defendants breached. Plaintiff alleges that the Registration Statement disclosed LifeStance's historical retention rate while holding back new data -- which LifeStance already possessed -- indicating that the rate had declined. FAC, ¶¶ 57, 59. These alleged facts differ from those presented in Coty, in which plaintiffs had failed to allege that the pertinent metric had declined at the time of the defendant company's IPO, see [2016 WL 1271065, at \*6](), and they support a duty to disclose.

2. Materiality

Next, defendants argue that LifeStance had no duty to disclose the interim retention data because that data was immaterial. Information is material when there is "a substantial likelihood that the disclosure of the omitted [information] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." [DeMaria v. Andersen, 318 F.3d 170, 180 (2d Cir. 2003)](). Defendants do not dispute that LifeStance's retention rate was an important metric of its success.[2] But they argue that LifeStance's interim retention data was immaterial in the context of the Registration Statement. As noted above, the Registration Statement contained extensive caveats about what that historical data implied for future performance. Thus, defendants argue, the Registration Statement already had warned investors of the risks that allegedly were reflected in the interim retention data.

[2]     Indeed, the Registration Statement itself proclaimed that LifeStance's "ability to attract and retain quality clinicians" was a "principal competitive factor" for it, FAC, ¶ 99, and LifeStance's CEO at the time of its IPO, Michael Lester, described LifeStance's number of clinicians as its "unit economic." Id. at ¶ 100.

Be that as it may, materiality "is rarely a basis for dismissal on the pleadings." [In re Petrobras Sec. Litig., 116 F. Supp. 3d 368, 378 (S.D.N.Y. 2015)](). And a reasonable investor plausibly would have taken great interest in learning that LifeStance might not only cease to retain physicians in the future, but in fact was already struggling to retain them. Thus, the Court finds that the FAC plausibly pleads materiality.

3. Duty to Disclose Interim Results

Finally, defendants argue that LifeStance had no duty to disclose retention data between the end of two fiscal quarters, Q1 2021 and Q2 2021. According to defendants, the law does not require the "instantaneous disclosure" of intra-quarter data in an IPO, since such a duty would "require the immediate release of data without the benefit of reflection or certainty provided by the traditionally recognized reporting periods." [In re Turkcell Iletisim Hizmetler, A.S. Sec. Litig., 202 F. Supp. 2d 8, 13 (S.D.N.Y. 2001)](). More specifically, defendants assert that there is no duty to disclose "financial data for a fiscal year in progress," even when that data was available before the registration statement became effective. See [In re Focus Media Holding Ltd. Litig., 701 F. Supp. 2d 534, 540 (S.D.N.Y. 2010)](); [Asay v. Pinduoduo Inc., 2020 WL 1530745, at \*9 (S.D.N.Y. Mar. 30, 2020)](), [aff'd, 2021 WL 3871269 (2d Cir. Aug. 31, 2021)](). While the retention data that plaintiff claims ought to have been disclosed was not, strictly speaking, financial information, defendants argue that the rationale for not imposing a duty to disclose interim financial results holds in this case. Like interim financial information, they say, LifeStance's interim retention information was tentative and subject to revision.

**\*4**  But there is no bright-line rule that immunizes a company from the duty to disclose interim results. The applicable standard for whether interim results must be disclosed is simply the standard for materiality; a duty to disclose "arises if a reasonable investor would view the omission as 'significantly alter[ing] the "total mix" of information made available.' " [Stadnick v. Vivint Solar, Inc., 861 F.3d 31, 36 (2d Cir. 2017)](). Moreover, as explained above, the FAC plausibly pleads that the interim retention data was material. Thus, plaintiff's section 11 claim should not be dismissed simply

because that claim is based on a duty to disclose interim results.

### 4. Conclusion

For the foregoing reasons, the FAC plausibly alleges that the Registration Statement was misleading because it omitted a material fact -- namely, LifeStance's interim retention rate. Thus, the Court denies defendants' motion to dismiss plaintiff's section 11 claim.

### C. Control Person Violation

Plaintiff also asserts control person liability under section 15 of the Securities Act. In order to make out such a claim, the FAC must not only plead a primary violation -- such as a violation of section 11 -- but also must allege "meaningful culpable conduct [by that individual] beyond mere status as a director or officer." P. Stolz Fam. P'ship, L.P. v. Daum, 166 F. Supp. 2d 871, 873 (S.D.N.Y. 2001); rev'd in part on other grounds, 355 F.3d 92 (2d Cir. 2004); see also Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co. Inc., 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010) ("As to the Section 15 claims against the individual defendants, it not sufficient,

in the Court's view, to simply allege, as the Complaint does allege, that they were all either officers or directors of [the company] at relevant times.").

The FAC satisfies this additional requirement. The FAC alleges that the Individual Defendants had access to LifeStance's interim retention data and participated in LifeStance's IPO by, among other things, signing off on the Registration Statement. See FAC, ¶ 132. That alleged conduct goes beyond merely holding the status of being an officer or director. Thus, the Court finds that the FAC states a claim for control person liability under section 15.

### III. Conclusion

For the reasons explained above, the Court hereby reconfirms the rulings made in its April 10 order. Accordingly, the defendants' motion to dismiss the FAC is denied.

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 3260260

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.