**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KEITH CHIN, Individually and on Behalf of
All Others Similarly Situated,

                    Plaintiff,

       vs

KE HOLDINGS INC., COLLEEN A. DE
VRIES, GOLDMAN SACHS (ASIA) L.L.C.,
MORGAN STANLEY & CO. LLC, J.P.
MORGAN SECURITIES LLC, GOLDMAN
SACHS & CO. LLC and CHINA
RENAISSANCE SECURITIES (US) INC.,

                 Defendants.

: Case No. 1:21-cv-11196 (GHW) (BCM)

: **(Oral Argument Requested)**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND
APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

O'MELVENY & MYERS LLP
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 326-2000
Fax: (212) 326-2061

*Counsel for Defendants KE Holdings
Inc. and Colleen A. De Vries*

GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018
Phone: (212) 813-8800
Fax: (212) 355-3333

*Counsel for the Underwriter
Defendants*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

BACKGROUND ............................................................................................................................. 4

ARGUMENT .................................................................................................................................. 9

I.      TRACING, WHILE ALSO A MERITS ISSUE, MUST BE ESTABLISHED NOW BECAUSE IT OVERLAPS IN THIS CASE WITH RULE 23'S REQUIREMENTS. ........................................................................................................ 10

II.     LEAD PLAINTIFF FAILS TO SATISFY RULE 23'S REQUIREMENTS. ................. 13

      A.      LEAD PLAINTIFF'S FAILURE TO ESTABLISH SECTION 11 STANDING THROUGH TRACING RENDERS IT AN INADEQUATE REPRESENTATIVE AND ATYPICAL OF THE SECTION 11 CLASS UNDER RULE 23(A)(3) & (4). .............................................................................. 14

      B.      LEAD PLAINTIFF IS ATYPICAL AND AN INADEQUATE REPRESENTATIVE OF THE PROPOSED SECTION 12(A)(2) CLASS BECAUSE IT HAS NOT SHOWN THAT IT PURCHASED FROM A STATUTORY SELLER. ................................................................................... 17

      C.      LEAD PLAINTIFF IS ALSO ATYPICAL UNDER RULE 23(A)(3) BECAUSE IT WAS AN IN-AND-OUT TRADER. ........................................... 18

      D.      INDIVIDUALIZED TRACING ISSUES PRECLUDE CLASS CERTIFICATION UNDER SEVERAL RULE 23 ELEMENTS. ...................... 19

III.    AT A MINIMUM, ANY CERTIFIED CLASS SHOULD BE LIMITED IN SCOPE. ........................................................................................................................ 22

CONCLUSION ............................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Morgan Stanley*,
307 F.R.D. 119 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 55 (2d Cir. 2016) ............................... 20

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 9

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ....................................................................................................... 13

*Barnes v. Osofsky*,
373 F.2d 269 (2d Cir. 1967) ............................................................................................ 15

*Bd. of Trs. of S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.*,
287 F.R.D. 216 (S.D.N.Y. 2012) ..................................................................................... 22

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ..................................................................................... 19

*Brecher v. Rep. of Argentina*,
806 F.3d 22 (2d Cir. 2015) ........................................................................................ 20, 21

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................................................................................................... 9, 10

*De Vito v. Liquid Holdings Grp., Inc.*,
2018 WL 6891832 (D.N.J. Dec. 31, 2018) ...................................................................... 14

*Doyle v. Mastercard Int'l Inc.*,
700 F. App'x 22 (2d Cir. 2017) ....................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ....................................................................................................... 20

*Feiner v. SS&C Techs., Inc.*,
47 F. Supp. 2d 250 (D. Conn. 1999) ............................................................................... 25

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
62 F.4th 704 (2d Cir. 2023) ............................................................................................ 10

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021) ..................................................................................................... 9, 11

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ....................................................................................................... 10

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ........................................................................................... 11

*Hawaii Structural Ironworkers Pension Trust Fund, Inc. v. AMC Entertainment Holdings, Inc.*,
338 F.R.D. 205 (S.D.N.Y. 2021) ..................................................................................... 13

*Holmes v. Pension Plan of Bethlehem Steel Corp.*,
   213 F.3d 124 (3d Cir. 2000) ............................................................................ 12

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   281 F.R.D. 134 (S.D.N.Y. 2012) ....................................................................... 24

*In re CarLotz Inc. Sec. Litig.*,
   667 F. Supp. 3d. 71 (S.D.N.Y. 2023) ................................................................ 18

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) .................................................................... 16, 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ............................................................................... 19

*In re FleetBoston Fin. Corp. Sec. Litig.*,
   253 F.R.D. 315 (D.N.J. 2008).......................................................................... 14

*In re Initial Pub. Offering Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004), *remanded on other grounds*, 471 F.3d 24 (2d Cir.
   2006) ........................................................................................................... passim

*In re Initial Pub. Offerings Sec. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ......................................................................... 3, 10

*In re Morgan Stanley Info. Fund Sec. Litig.*,
   592 F.3d 347 (2d Cir. 2010) ...................................................................... 12, 18

*In re NIO, Inc. Sec. Litig.*,
   2023 WL 5048615 (E.D.N.Y. Aug. 8, 2023)..................................................... 13

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010) ............................................................................ 24

*In re Puda Coal Sec. Litig.*,
   2013 WL 5493007 (S.D.N.Y. 2013).............................................................. passim

*In re Quarterdeck Off. Sys. Inc. Sec. Litig.*,
   1993 WL 623310 (C.D. Cal. 1993) .................................................................. 15

*In re RAIT Fin. Tr. Sec. Litig.*,
   2008 WL 5378164 (E.D. Pa. Dec. 22, 2008)...................................................... 14

*In re Smart Tech., Inc. Shareholder Litig.*,
   295 F.R.D. 50 (S.D.N.Y. 2013) ......................................................... 13, 19, 23

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013) ............................................................................ 13

*In re WorldCom, Inc. Sec. Litig.*,
   294 F. Supp. 2d 392 (S.D.N.Y. 2003) .............................................................. 24

*Jedrzejczyk v. Skillz Inc.*,
   2022 WL 2441563 (N.D. Cal. July 5, 2022)....................................................... 17

*Johnson v. Nextel Comm'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015) ..................................................................... 20, 22

*Kirkwood v. Taylor*,
590 F. Supp. 1375 (D. Minn. 1984), *aff'd*, 760 F.2d 272 (8th Cir. 1985) ............................... 15

*Krim v. pcOrder.com, Inc.*,
210 F.R.D. 581 (W.D. Tex. 2002) ....................................................................... 15

*Krim v. pcOrder.com, Inc.*,
402 F.3d 489 (5th Cir. 2005) .................................................................. 12, 21, 24

*Lierboe* v. *State Farm Mut. Auto. Ins. Co.*,
350 F.3d 1018 (9th Cir. 2003) ........................................................................ 15

*Lorber v. Beebe*,
407 F. Supp. 279 (S.D.N.Y. 1976) ..................................................................... 17

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002) ......................................................................... 20

*Passman v. Peloton Interactive, Inc.*,
671 F. Supp. 3d 417 (S.D.N.Y. 2023) ................................................................. 13

*Pearlstein v. BlackBerry Ltd.*,
2021 WL 253453 (S.D.N.Y. Jan. 26, 2021) ............................................................ 12

*Rambarran v. Dynamic Airways, LLC*,
2015 WL 4523222 (S.D.N.Y. July 27, 2015) .......................................................... 10

*Scholes v. Tomlinson*,
145 F.R.D. 485 (N.D. Ill. 1992)....................................................................... 18

*Set Cap. LLC v. Credit Suisse Grp. AG*,
2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023)......................................................... 13

*Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*,
2024 WL 1497110 (S.D.N.Y. Apr. 5, 2024) ........................................................... 12

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023)............................................................................... 10, 16

*Spacone v. Sanford, L.P.*,
2018 WL 4139057 (C.D. Cal. Aug. 9, 2018)......................................................... 12

*Sykes v. Mel S. Harris & Assocs. LLC.*,
780 F.3d 70 (2d Cir. 2015) .......................................................................... 20

*Teamsters Loc. 445 Freight Div. Pens. Fund v. Bombardier Inc.*,
546 F.3d 196 (2d Cir. 2008) ......................................................................... 10

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)................................................................................. 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)........................................................................ 9, 10, 11, 12

*Winter v. Stronghold Digital Mining Inc.*,
686 F. Supp. 3d 295 (S.D.N.Y. 2023) ................................................................ 18

*Xiang v. Inovalon Holdings, Inc.*,
 327 F.R.D. 510 (S.D.N.Y. 2018) .................................................................................... 24

**Other Authorities**

*CUSIP® Securities Identification*, Am. Bankers Ass'n, https://www.aba.com/about-
 us/our-story/cusip-securities-identification (last accessed Dec. 6, 2024) .................................. 4

James Chen, *Follow-on Offering,* INVESTOPEDIA (Apr. 24, 2022),
 https://www.investopedia.com/terms/f/followonoffering.asp. .................................................. 5

*The First Stop for Securities*, DTCC, Issuer Services, https://www.dtcc.com/issuer-
 services/index.html (last accessed Dec. 6, 2024)........................................................................ 5

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................................... 9

Fed. R. Civ. P. 23(b) ............................................................................................................... 9

Fed. R. Civ. P. 23(b)(3).......................................................................................................... 3, 20

## PRELIMINARY STATEMENT[1]

Essential to class certification under Rule 23 is that the proposed class representative demonstrates that it belongs to the class it seeks to represent. Here, Lead Plaintiff asks the Court to certify a class whose members "purchased the [ADS] of KE Holdings in and/or traceable to the Company's" November 2020 follow-on offering of ADS, three months after its initial public offering of ADS. But Lead Plaintiff has not proven that it can trace—as it must to be a member of, much less lead, a Section 11 class—the 22,103 ADS it purchased to the registration statement for the 35.4 million ADS that were issued in the FOO, as opposed to the ocean of *121.9 million* identical ADS, which had been issued under a different registration statement three months earlier during the IPO, and were already trading in the market at the time of Lead Plaintiff's purchase. Nor has it demonstrated—as it must to certify a Section 12(a)(2) class—that it purchased its ADS directly from a "statutory seller" in the FOO. These deficiencies (among other problems) render Lead Plaintiff unable to satisfy several required elements of Rule 23(a) & (b), not least of which is that Lead Plaintiff is not an adequate representative that is typical of the class it seeks to certify.

Lead Plaintiff's tracing deficiency is no mere technical defect—it is a strict requirement of the Section 11 claim that Lead Plaintiff made the centerpiece of its Third Amended Complaint. After the Court dismissed Lead Plaintiff's Exchange Act claims with leave to amend, Lead Plaintiff chose, in lieu of attempting to cure those claims' deficiencies, to abandon

---

[1] This brief defines (i) lead plaintiff Saskatchewan Healthcare Employees' Pension Plan as "Lead Plaintiff"; (ii) defendants Goldman Sachs (Asia) L.L.C., Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, and China Renaissance Securities (US) Inc. as the "Underwriter Defendants"; (iii) Lead Plaintiff's May 13, 2024 Third Amended Complaint as "TAC"; (iv) American Depositary Shares as "ADS"; (v) KE Holdings' August 13, 2020 initial public offering of ADS as the "IPO"; (vi) KE Holdings' November 19, 2020 follow-on offering of ADS as the "FOO"; (vii) The Bank of New York Mellon as "BNY Mellon" or the "Depositary," and (viii) Depository Trust Company as "DTC." Unless otherwise noted, all emphasis is added and all internal citations and quotation marks are omitted.

them in favor of the surviving claims under Sections 11, 12(a)(2), and 15 of the Securities Act, which do not require proof of reliance or scienter. As a condition to access these relatively relaxed liability requirements for securities offerings, however, Congress imposed a strict limitation on Section 11: A plaintiff must be able to trace the securities it purchased back to the allegedly misleading registration statement under which they were issued.

Tracing is therefore both a substantive element that must be proved at summary judgment or trial, and a prerequisite to class certification because it is a requirement of the class asserting the claim. That is why Lead Plaintiff proposes—as it must—a class of purchasers of ADS "traceable to" the FOO registration statement. But rather than showing that its own ADS are "traceable to" that registration statement, Lead Plaintiff side-steps the issue by arguing that tracing should not be evaluated at this stage because it goes to the merits. The Supreme Court, however, has held to the contrary: overlap with the merits is no reason to avoid an issue that is otherwise relevant to Rule 23—as tracing is here.

Contrary to its contention, Lead Plaintiff cannot simply rest, as it did at the pleading stage, on conclusory allegations that it purchased ADS traceable to the FOO registration statement; it must establish tracing by a preponderance of the evidence. Lead Plaintiff has failed to do so, and for good reason: the evidence Defendants submit on this motion shows that Lead Plaintiff cannot establish tracing. In particular, the FOO ADS were deposited at DTC and held by DTC in an undifferentiated and indistinguishable manner known as "fungible bulk," where they were commingled with 121.9 million IPO ADS that shared the same numeric identifier. As many courts have acknowledged, the commingling of indistinguishable IPO and subsequent offering securities complicates tracing because purchasers acquire a pro rata interest in that undifferentiated pool of securities, instead of specific securities that can be traced back to the

- 2 -

registration statement of a specific offering.  Lead Plaintiff did, however, have an opportunity to establish tracing by following the FOO registration statement's instructions to obtain certificated ADS or hold the ADS in direct registration with the Depositary, rather than holding them in street name at DTC.  It did neither.

The tracing complexities in this case defeat certification of a Section 11 class under several Rule 23 elements.  First, they render Lead Plaintiff an inadequate representative and atypical of the class members it seeks to represent, under Rule 23(a)(3) & (4), respectively.  Second, they create individualized tracing issues for each class member, "fragment[ing] the class action into myriad mini-trials."[2]  Individualized showings, such as through expert testimony, will be necessary because KE Holdings' IPO and FOO ADS were identical and commingled in fungible bulk at DTC.  These individualized issues would swamp any common, class-wide issues, defeating Rule 23(b)(3)'s predominance requirement.  They also defeat Rule 23's superiority and ascertainability elements, because they moot any efficiencies that class treatment affords.

Lead Plaintiff is also atypical of the proposed Section 11 and 12(a)(2) class under Rule 23(a)(3) in two other respects.  First, it was an in-and-out trader that purchased KE Holdings ADS before and after the FOO and sold a portion of its holdings before the alleged corrective disclosure, which subjects it to a loss-causation defense that routinely disqualifies plaintiffs from serving as class representatives under the Securities Act.  Second, Lead Plaintiff fails to establish that it can represent a class premised on the surviving Section 12(a)(2) claim because it has made no showing that it purchased in the FOO from a "statutory seller," as Section 12(a)(2) requires.  Since it fails to make the requisite Rule 23 showing that it qualifies as a class member itself,

---

[2] *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 118 (S.D.N.Y. 2004), *remanded on other grounds*, 471 F.3d 24 (2d Cir. 2006).

Lead Plaintiff is not adequate to lead or typical of a class rooted in the Section 12(a)(2) claim.

If the Court were nevertheless to certify a class over Lead Plaintiff's deficiencies, the class must, at a minimum, be significantly limited by excluding: (i) in-and-out traders who sold not just a portion (like Lead Plaintiff) but *all* their shares before the alleged corrective disclosures; and (ii) any purchaser who did not purchase directly from a FOO underwriter.[3]

## BACKGROUND

### KE Holdings and Its Operations

KE Holdings operates Beike, a leading integrated online and offline platform for housing transactions and services in China.  (TAC ¶ 2.)  Through Beike, KE Holdings facilitates a range of housing transactions, including existing- and new-home sales, home rentals, home renovation, and real-estate financial solutions.  (*Id.* ¶ 35.)

### KE Holdings Issues ADS in Both Its IPO and FOO

On August 13, 2020, KE Holdings conducted an IPO on the New York Stock Exchange, issuing ADS that each represented three class A ordinary shares of KE Holdings.  (TAC ¶ 46.) To facilitate the IPO, BNY Mellon and KE Holdings entered into a Deposit Agreement, under which BNY Mellon would create 121,900,000 ADS and hold KE Holdings class A ordinary shares underlying the ADS with its custodian.  (BNY Mellon Decl. ¶ 3, Ex. 1 ("BNY Decl.").) The ADS bore the CUSIP 482497104, a unique number that identifies an issuer and a financial instrument based on an issue's important differentiating characteristics.[4]  (*Id.*)  Under the Deposit Agreement, BNY Mellon delivered all 121,900,000 ADS, each bearing the same CUSIP, to DTC, which provides custody and securities clearance and settlement services by facilitating

---

[3] Defendants do not concede any underwriter's status as a statutory seller for liability purposes.

[4] *See CUSIP® Securities Identification*, Am. Bankers Ass'n, https://www.aba.com/about-us/our-story/cusip-securities-identification (last accessed Dec. 6, 2024).

electronic book-entry transfers of securities without physically delivering the securities certificates themselves to subsequent purchasers.  (*Id.* ¶¶ 5, Ex. 3.)  DTC registered those ADS in the name of its partnership nominee, Cede & Co.  (*Id.* ¶ 5, Ex. 3; Decl. of Ann Marie Bria ¶¶ 4 ("DTC Decl.").)  Each participant in DTC's system then manages its holdings through book entries with Cede & Co. and other DTC participant accounts.[5]  The Underwriter Defendants underwrote the IPO, meaning they bought the securities as principals for resale, and played different roles in the offering.  (*See* TAC ¶¶ 28–34.)

Three months later, KE Holdings issued an additional 35,400,000 ADS in a FOO.[6] Again, the Underwriter Defendants were assigned different roles in the offering; Morgan Stanley was the billing manager assigned to receive the initial credit of ADS.  (BNY Decl. ¶ 6.)  Leading up to the FOO, KE Holdings filed a registration statement on November 16, 2020, and a prospectus on November 19, 2020.  (Bednark Decl., Exs. A & B.)  Included was a disclosure and instruction describing how investors could hold ADS—either "directly" or "indirectly."  (*Id.*, Ex. A, at 230.)  FOO participants could hold shares "directly" either by "having an American Depositary Receipt . . . which is a certificate evidencing a specific number of ADSs, registered in your name," or "by having uncertificated ADSs registered in your name."  (*Id.*)  Alternatively, FOO participants could hold ADS "indirectly" by holding "a security entitlement in ADSs through your broker or financial institution that is a direct or indirect participant in The Depository Trust Company."  (*Id.*)  BNY Mellon maintained a list of all registered ADS

---

[5] *See The First Stop for Securities*, DTCC, Issuer Services, https://www.dtcc.com/issuer-services/index.html (last accessed Dec. 6, 2024).

[6] Lead Plaintiff's Motion mistakenly refers to this as a "secondary offering."  A follow-on offering differs from a secondary offering in that it consists of a sale of newly issued shares, as opposed to existing shares.  *See* James Chen, *Follow-on Offering,* INVESTOPEDIA (Apr. 24, 2022), https://www.investopedia.com/terms/f/followonoffering.asp.  The FOO shares, which underlaid the ADS, were newly issued, though they carried the same CUSIP as the IPO shares.  (BNY Decl. ¶ 5; DTC Decl. ¶¶ 4–5.)

holders—i.e., FOO participants who held KE Holding ADS "directly." (BNY Decl., Ex. 1, §§ 2.4, 4.1.)

On November 18, 2020, the SEC declared the registration statement effective, and a day later, KE Holdings announced the pricing of the FOO ADS and expected closing date of November 23, 2020. (TAC ¶¶ 49, 50; Bednark Decl., Ex. D.) As with the IPO, BNY Mellon delivered 35,400,000 ADS to DTC on November 23, 2020, and registered them in the name of Cede & Co. to implement the FOO. (BNY Decl. ¶¶ 4–5, Ex. 4.) These ADS bore the same CUSIP as—and were therefore indistinguishable from—ADS issued in the IPO. They were added to and commingled with the undifferentiated 121,900,000 ADS previously delivered to DTC and registered in the name of Cede & Co. at the time of the IPO. (BNY Decl. ¶ 5, Exs. 3 & 4; DTC Decl. ¶¶ 5, 7, 8.)

Also on November 23, 2020, BNY Mellon instructed DTC to credit 35,400,000 ADS to the account of DTC participant and Underwriter Defendant Morgan Stanley. (*See* BNY Decl. ¶ 6.) That credit added to the account's opening balance of 7,636,914 previously issued ADS. (*See* Bednark Decl., Ex. F at DTC-KE-0000046.) These ADS were not registered to Morgan Stanley; rather, they were credited to Morgan Stanley's DTC Account such that Morgan Stanley held a pro rata beneficial interest (or proportional share) in Cede & Co.'s aggregate undifferentiated holding of 157,300,000 ADS from both the IPO and FOO—in other words, Morgan Stanley had no ownership rights to any specific KE Holdings ADS on deposit at DTC. (*See* DTC Decl. ¶ 8.)

After the Underwriter Defendants exercised their right to purchase additional ADS in the FOO, BNY Mellon delivered an additional 5,310,000 ADS—with the same CUSIP as all previously-issued ADS—to DTC on November 27, 2020, and registered them in the name of

Cede & Co.  (Bednark Decl., Ex. C; BNY Decl. ¶¶ 7–8, Exs. 5 & 6.)  These were added to the 157,300,000 ADS previously delivered to DTC and registered in the name of Cede & Co.  So, at the close of November 27, 2020, an aggregate total of 162,610,000 ADS had been deposited at DTC and registered to Cede & Co.  (DTC Decl. ¶ 6.)

Those 5,310,000 KE Holdings ADS were credited to Morgan Stanley's DTC account on November 27, 2020.  (*See* BNY Decl. ¶ 7.)  As with the prior credit, none of the newly delivered ADS were registered in Morgan Stanley's name; rather, Morgan Stanley's DTC account was credited such that it held a pro rata beneficial interest in Cede & Co.'s undifferentiated holding of commingled IPO and FOO ADS.  (*See* BNY Decl. ¶¶ 7–8, Ex. 6; DTC Decl. ¶ 8.)  In other words, Morgan Stanley did not own, and could not sell or transfer, any *specific* ADS.  (*See* DTC Decl. ¶ 8.)

**Lead Plaintiff's Order and Receipt History**

Lead Plaintiff states that "[o]n or about November 19, 2020," it "purchased" 22,103 shares of KE Holdings ADS.  (Decl. of Pam Peters (ECF 145, Ex. 1), ¶ 4.)  Besides a declaration from Lead Plaintiff's Manager of Corporate Finance and Plan Liabilities regarding her general familiarity with this case and awareness of Lead Plaintiff's November 19, 2020 purchase (*see id.*), Lead Plaintiff has not submitted any documentary evidence, such as transaction confirmations, to this Court in connection with its Motion.  Nor has Lead Plaintiff indicated from whom it "purchased" the ADS.

Lead Plaintiff held its KE Holding ADS *indirectly*, because neither Lead Plaintiff nor its "outside investment manager," Baillie Gifford (Bednark Decl. ¶ 7, Ex. E at 3), was issued physical securities certificates, nor were any ADS registered to Lead Plaintiff or Baillie Gifford according to BNY Mellon's registered ADS holder list (BNY Decl. ¶¶ 8–9, Ex. 6).

- 7 -

**Appointment of Lead Plaintiff, Third Amended Complaint, and Case Schedule**

After Keith Chin initiated this action on January 3, 2022, and several alleged ADS purchasers moved for appointment to lead a class (ECF Nos. 6, 13, 17, 19, 22, 26), the Court ultimately appointed Lead Plaintiff on March 29, 2022 (ECF No. 37).  Lead Plaintiff then filed an amended complaint on June 17, 2022, asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act, as well as Sections 10(b) and 20(a) of the Exchange Act.  (*See* ECF No. 51.) Lead Plaintiff alleged that on November 8, 2021, KE Holdings disclosed "for the first time" the numbers of "active" stores and agents on its platform relative to the totals "for each quarter since the IPO," which allegedly indicated that previously disclosed totals (including those in the FOO registration statement) were "inflated" because a subset of stores and agents were "inactive." (*Id.* ¶¶ 53, 55, 56, 59.)  The complaint also alleged, however, that the corrective disclosure that "revealed" those alleged "defects" in the FOO registration statement was a short-seller report (the "Muddy Waters Report") released on December 16, 2021.  (*Id.* ¶ 1, 10.)  In the same complaint, Lead Plaintiff alleged that it "purchased KE Holdings ADSs on November 19, 2020 . . . pursuant and/or traceable to the Secondary Offering Documents," but included no evidentiary support for that assertion.  (*Id.* ¶ 19.)

All defendants filed a joint motion to dismiss on September 23, 2022.  (*See* ECF No. 84.) On February 26, 2024, the Court dismissed with leave to amend the Exchange Act claims due to Lead Plaintiff's failure to adequately plead scienter.  The Court ruled that the Securities Act claims based on the FOO could proceed.  (ECF No. 100 at 43–44.)

Plaintiff subsequently filed the operative TAC on May 13, 2024.  While the TAC abandoned the dismissed Exchange Act claims and some of the related allegations, the Securities Act claims remained, as did the allegations about KE Holdings' November 8, 2021 disclosure

- 8 -

regarding active versus inactive stores and agents (TAC ¶¶ 6, 54, 56, 57, 60), and Lead

Plaintiff's conclusory traceability allegation. (TAC ¶ 20.)  The Underwriter Defendants, KE

Holdings, and De Vries filed their answers on June 17, 2024.  (*See* ECF Nos. 122, 127, 128.)

On July 1, 2024, the Court held a status conference that covered, among other things, the

timing for class-certification briefing.  Defendants noted that one reason for the proposed early

scheduling of class certification was that "there will be meaningful opposition to class

certification on . . . the tracing issue," and that "there's a good prospect that plaintiff won't be

able to show tracing or purchasing in the offering."  (Bednark Decl. ¶ 9, Ex. G.)  The Court

agreed to schedule class-certification briefing during the document phase of fact discovery.

(ECF No. 131.)

## ARGUMENT

Lead Plaintiff bears the burden of establishing that its action satisfies all four

requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least

one of the three subsections of Rule 23(b), such as predominance and superiority.  *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  As the Supreme Court has repeatedly

emphasized, district courts must rigorously analyze plaintiffs' compliance with these criteria:

"certification is proper only if the trial court is satisfied, after a rigorous analysis, that the

prerequisites of Rule 23[] have been satisfied."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

350–51 (2011); *see Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013); *see also Goldman*

*Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 122 (2021) ("a court has an obligation

before certifying a class to determine that Rule 23 is satisfied, even when that requires inquiry

into the merits").

That rigorous analysis ensures that plaintiffs have carried their burden of satisfying Rule

- 9 -

23 through competent proof.  Because "Rule 23 does not set forth a mere pleading standard," *Dukes*, 564 U.S. at 350, "plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *see also, e.g.*, *Comcast*, 569 U.S. at 33–34; *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33 n.3 (2d Cir. 2006). "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." *Teamsters Loc. 445 Freight Div. Pens. Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  "Courts in this Circuit have consistently denied class certification motions where the party seeking certification failed to present sufficient evidence as to one or more Rule 23 elements." *Rambarran v. Dynamic Airways, LLC*, 2015 WL 4523222, at *4 (S.D.N.Y. July 27, 2015) (collecting cases).  Lead Plaintiff has not met this burden.

## I.   TRACING, WHILE ALSO A MERITS ISSUE, MUST BE ESTABLISHED NOW BECAUSE IT OVERLAPS IN THIS CASE WITH RULE 23'S REQUIREMENTS.

As the Supreme Court recently reaffirmed, tracing is a strict requirement of Section 11. *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023).  Analyzing the statutory language, the Supreme Court held that "contextual clues persuade us" that the more "natural" reading of the statute requires that "the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading"—a ruling consistent with "every court of appeals to consider the issue." *Id.* at 768.  As the Court further reasoned, because "the 1933 Act is limited in scope" compared to the 1934 Act, "it seems equally possible that Congress sought a balanced liability regime that allows a narrow class of claims to proceed on lesser proof but requires a higher standard of proof to sustain a broader set of claims." *Id.* at 769–70.

Because "a class definition is interpreted according to the substantive law that provides the basis for the class action," *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 716

- 10 -

(2d Cir. 2023), *Slack* requires that any certified Section 11 class be restricted to those who can establish tracing.  Lead Plaintiff acknowledges as much by seeking to certify a putative class of FOO participants who can trace their shares to the FOO registration statement.  *See* Mot. at 1.  But Lead Plaintiff asks the Court to certify that class without deciding first whether Lead Plaintiff itself can trace its shares to the FOO.  *See* Mot. at 14.  According to Lead Plaintiff, the Court should simply delay evaluating tracing until summary judgment because it is also relevant to the merits of the Section 11 claim.  *See id.*  But the Supreme Court disagrees with this argument.

The Court has held that district courts *cannot* refrain from deciding an issue under Rule 23 simply because it overlaps with the merits.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (affirming denial of class certification after analyzing overlapping merits and Rule 23 issues).  In assessing a Rule 23 issue, "courts should be open to *all* probative evidence on that question—qualitative as well as quantitative—aided by a good dose of common sense . . . regardless whether the evidence is also relevant to a merits question[.]"  *Goldman Sachs Grp. Inc.*, 594 U.S. at 122.  "Frequently th[e] 'rigorous [class certification] analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped.  The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Dukes*, 564 U.S. at 351; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) ("[W]e are at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case.") (finding no typicality because of non-reliance defense).

Evaluating tracing now is especially warranted here because it goes to a "prerequisite to class certification"—Lead Plaintiff's statutory standing to assert a Section 11 claim.  *Doyle v.*

*Mastercard Int'l Inc.*, 700 F. App'x 22, 25 (2d Cir. 2017); *see, e.g.*, *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 500 (5th Cir. 2005) (affirming dismissal of Section 11 claim after denial of class certification due to failure to establish stock purchase traceable to offering); *see also Spacone v. Sanford, L.P.*, 2018 WL 4139057, at *5 (C.D. Cal. Aug. 9, 2018) (denying class certification, in part, for failure to demonstrate statutory standing). Standing is a Rule 23 prerequisite because a lead plaintiff that lacks "standing to assert claims on his own behalf . . . lack[s] standing to assert similar claims on behalf of a class." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000). Consistent with these principles, a lead plaintiff seeking to represent a putative Section 11 class must be able to establish tracing at class certification. *See infra* Section II.A. (collecting cases). If Lead Plaintiff cannot trace its shares directly to the FOO registration statement, then it lacks standing to assert the Section 11 claim, both on its own behalf and on behalf of the class it seeks to certify. Tracing cannot be ignored at class certification, as Lead Plaintiff contends, just because it is pertinent to another stage of the case. *See id.*; *Dukes*, 564 U.S. at 351–60. For similar reasons, the Court should also consider now whether Lead Plaintiff has satisfied the "statutory seller" element required to assert a Section 12(a)(2) claim. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 359 (2d Cir. 2010) (describing statutory-seller element).

The cases Lead Plaintiff cites, in which courts declined to address an overlapping merits argument in the Rule 23 context, are inapposite and do not compel a different result. Several do not involve Section 11 or 12(a)(2) claims at all and thus fail to address the necessity of an overlapping merits inquiry where tracing goes both to the merits and a plaintiff's ability to satisfy Rule 23. *Pearlstein v. BlackBerry Ltd.*, 2021 WL 253453, at *6 (S.D.N.Y. Jan. 26, 2021) (Exchange Act claims); *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, 2024 WL 1497110, at

- 12 -

*7 (S.D.N.Y. Apr. 5, 2024) (same); *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (same); *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 436 (S.D.N.Y. 2023) (consumer protection claims); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013) (RICO claims). And some agree that "[m]erits questions may be considered" when "relevant to determining whether" Rule 23 is satisfied. *Passman*, 671 F. Supp. 3d at 436 (quoting *Amgen*, 568 U.S. at 466).

For those cases Lead Plaintiff cites that actually involved Section 11 and 12(a)(2) claims, most concerned *initial* public offerings or a single note offering, which do not present the tracing complexities of subsequent public offerings, particularly where, as here, DTC holds commingled, undifferentiated shares from multiple offerings in fungible bulk. *See In re Smart Tech., Inc. Shareholder Litig.*, 295 F.R.D. 50, 53 (S.D.N.Y. 2013) (dispute centered around IPO); *In re NIO, Inc. Sec. Litig.*, 2023 WL 5048615, at *1 (E.D.N.Y. Aug. 8, 2023) (same); *Set Cap. LLC v. Credit Suisse Grp. AG*, 2023 WL 2535175 (S.D.N.Y. Mar. 16, 2023) (exchange-traded note offering). Plaintiff's sole authority involving a secondary public offering, *Hawaii Structural Ironworkers Pension Trust Fund, Inc. v. AMC Entertainment Holdings, Inc.*, 338 F.R.D. 205 (S.D.N.Y. 2021), is inapposite because the defendant did not argue that the lead plaintiff failed to establish its own ability to trace or that it purchased from a statutory seller, nor was traceability in the context of DTC's fungible-bulk holdings before the court. *Id.* at 211–15.

Thus, none of the cases Lead Plaintiff cites refutes that, under the circumstances here, a tracing inquiry is necessary to evaluate Lead Plaintiff's ability to satisfy Rule 23.

## II.    LEAD PLAINTIFF FAILS TO SATISFY RULE 23'S REQUIREMENTS.

Lead Plaintiff fails to meet its burden to satisfy Rule 23's requirements as to both the Section 11 and Section 12(a)(2) claims. Lead Plaintiff is atypical of and inadequate to represent the class under Rule 23(a)(3) & (4) because Lead Plaintiff has not shown (i) that it can trace its

- 13 -

ADS to the FOO registration statement as Section 11 class members must; or (ii) that it purchased its ADS in the FOO from a statutory seller as Section 12(a)(2) class members must. This, alone, is enough to deny Lead Plaintiff's Motion.  Also rendering Lead Plaintiff atypical of the class as to both claims—providing further grounds to deny the Motion—is that Lead Plaintiff was an in-and-out trader that sold many of its ADS before the alleged corrective disclosure, subjecting it to unique defenses.  Lead Plaintiff also cannot satisfy Rule 23's predominance, superiority, and ascertainability requirements as to the Section 11 claim because of the tracing complexities this case presents.  In light of this case's unique circumstances involving identical ADS held in an undifferentiated manner, individualized inquiries would be needed to determine whether putative class members could trace their ADS, and this would eviscerate any efficiencies afforded by class treatment.

     **A.**     **Lead Plaintiff's Failure to Establish Section 11 Standing Through Tracing Renders It an Inadequate Representative and Atypical of the Section 11 Class Under Rule 23(a)(3) & (4).**

"A class representative's lack of standing under Section 11 qualifies as a 'unique defense' sufficient to defeat the typicality of a proposed class representative." *In re IPO*, 227 F.R.D. at 120.  And a named plaintiff lacks standing to pursue a Section 11 claim if it cannot establish tracing.  *In re Puda Coal Sec. Litig.*, 2013 WL 5493007, at *5 (S.D.N.Y. 2013) ("standing for Section 11 claims is limited to those who have purchased securities that are the direct subject of a specified prospectus or registration statement").[7]  A proposed class representative that lacks standing because it cannot establish tracing is therefore atypical of the

---

[7] *See also De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *16–17 (D.N.J. Dec. 31, 2018) (no standing where "plaintiffs' shares could have come from the [first] offering" or "from the pool of [secondary shares]"); *In re RAIT Fin. Tr. Sec. Litig.*, 2008 WL 5378164, at *4 (E.D. Pa. Dec. 22, 2008) (no standing where "no named plaintiff purchased any securities traceable to" the offering); *In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 350 (D.N.J. 2008) ("a plaintiff has no standing to bring a Section 11 (or Section 12) action unless the plaintiff can satisfy the tracing requirement" and it would be "anomalous to apply this rule to . . .individual plaintiffs but not to class action litigants").

Section 11 class it seeks to represent.  *See, e.g.*, *In re Quarterdeck Off. Sys. Inc. Sec. Litig.*, 1993 WL 623310, at *2–3 (C.D. Cal. 1993) (finding no typicality for Section 11 class because plaintiffs "[could not] trace their stock directly to the registration statement"); *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 584–86, 591 (W.D. Tex. 2002) (denying class certification because named Section 11 plaintiffs lacked standing as they could not trace their shares to SPO); *cf. Lierboe* v. *State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022–23 (9th Cir. 2003) (vacating class certification because named plaintiffs lacked standing to allege underlying cause of action). Similarly, a Section 11 plaintiff that cannot trace is inadequate because "their interests no longer coincide as regards the claims, and they have no incentive to prosecute vigorously a claim that they cannot pursue individually." *Kirkwood v. Taylor*, 590 F. Supp. 1375, 1381–83, 1386 (D. Minn. 1984), *aff'd*, 760 F.2d 272 (8th Cir. 1985) (decertifying Section 11 class where plaintiffs "might have purchased [the] offering stock" but could not trace their shares); *In re Quarterdeck*, 1993 WL 623310, at *2–3 (finding plaintiffs inadequate because failure to trace subjected them to "unique defense" that "would absorb a considerable amount of plaintiffs' time and divert attention from the other claims").

To demonstrate its Section 11 standing, Lead Plaintiff "bear[s] the burden of showing" that its ADS are traceable to the FOO registration statement.  *In re Puda Coal*, 2013 WL 5493007, at *6.  To do so, Lead Plaintiff must demonstrate that the ADS it purchased were the ADS that KE Holdings newly issued in the FOO, rather than the more than 120 million identical ADS previously issued in the IPO.  (DTC Decl. ¶¶ 4–5, 7.)  *See In Re Puda Coal*, 2013 WL 5493007, at *7 ("[T]raceability is strictly construed for a Section 11 claim."); *see also Barnes v. Osofsky*, 373 F.2d 269, 271–72 (2d Cir. 1967) (excluding from Section 11 settlement investors that "could not so trace their purchases" to the relevant offering).  Though such a showing may

- 15 -

be difficult due to "the rise of direct listings," Section 11 "requires a plaintiff to plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack*, 598 U.S. at 770. This "is the condition Congress has imposed for granting access to the relaxed liability requirements § 11 affords," even if tracing is difficult in Section 11 cases involving just one of multiple public offerings because "many brokerage houses do not identify specific shares with particular accounts but instead treat the account as having an undivided interest in the house's position." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013). That is exactly the case here.

As the DTC and BNY Mellon declarations establish, (1) KE Holdings IPO and FOO ADS bear the same CUSIP (i.e., numeric identifier); (2) DTC aggregated and commingled the IPO and FOO ADS in a single, fungible bulk that rendered them indistinguishable; (3) DTC participants, such as Morgan Stanley, owned only a pro rata interest in DTC's fungible bulk of commingled shares, and did not own any specific ADS; (4) Morgan Stanley's pro rata interest in DTC's fungible bulk was further commingled since its account held an interest in previously issued shares when it was credited the FOO shares on November 23, 2020; and (5) unless investors exercised their right to request certificated shares or held their ADS in direct registration per the FOO registration statement instructions, then customers of DTC participants—i.e., beneficial owners who purchased ADS directly from underwriters—owned only a pro rata interest of the pro rata interest that Morgan Stanley owned. (DTC Decl. ¶ 8.) As courts within and outside this Circuit have recognized, once initial and subsequent public offering securities with an identical CUSIP are commingled in fungible bulk at DTC, a plaintiff seeking to establish tracing faces significant hurdles. *In re Puda Coal*, 2013 WL 5493007, at *7 (observing that commingled shares "lose any specific identity"); *In re Century Aluminum*, 729

F.3d at 1107.

In its Motion, Lead Plaintiff makes virtually no effort to prove that it can overcome its traceability obstacles created by DTC's holding of the undifferentiated IPO and FOO ADS in fungible bulk, or the further commingling within Morgan Stanley's DTC account. For instance, Lead Plaintiff's Motion offers no evidence to establish that it obtained certificated shares or registered its shares. Nor can it make this showing since BNY's registered ADS holder list demonstrates that Lead Plaintiff did neither. (BNY Decl. ¶¶ 8–9, Ex. 6.)

All Lead Plaintiff offers is the allegation from its TAC, paraphrased in a witness declaration, that it purchased the ADS "on or about November 19, 2020, at a price of $58.00 per ADS." (Mot. at 4; TAC ¶ 20; ECF No. 145, Ex. 1, ¶ 4.) But this assertion shows only that some of those ADS *might* have been issued under the FOO registration statement—a standard courts have rejected. *See, e.g., In re IPO*, 227 F.R.D. at 118 ("plaintiffs are not entitled to a presumption of traceability"); *Lorber v. Beebe*, 407 F. Supp. 279, 287 (S.D.N.Y. 1976) ("under the law in this Circuit it is insufficient that stock 'might' have been issued pursuant to a defective statement"); *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022) ("obvious alternative explanation" for shares purchased on offering date at offering price is that "the shares purchased originated from the prior offering but were being traded at the secondary offering price"); *In re Puda Coal*, 2013 WL 5493007, at *7 ("It is simply not enough to note that [plaintiff] bought shares on the day of an offering in a marketplace actively trading issued shares, and rely on the similarity of date and share price to demonstrate that the shares were issued pursuant to, or were traceable to" the FOO registration statement).

**B.** **Lead Plaintiff Is Atypical and an Inadequate Representative of the Proposed Section 12(a)(2) Class Because It Has Not Shown That It Purchased from a Statutory Seller.**

Similar to Section 11, Section 12(a)(2) contains a tracing-like component that requires

- 17 -

plaintiffs to establish that they purchased in the offering from a "statutory seller." *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d at 359. "An individual is a statutory seller . . . if he: (1) passed title, or other interest in the security, to the buyers for value, or (2) successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve his own financial interests or those of the securities['] owner." *Id.* Just as it failed to show its membership in the proposed Section 11 class by tracing its ADS to the FOO, Lead Plaintiff fails to show its membership in the proposed Section 12(a)(2) class because it does not even identify who it purchased the ADS from, let alone show that the seller qualifies as a "statutory seller" under Section 12(a)(2). *See Winter v. Stronghold Digital Mining Inc.*, 686 F. Supp. 3d 295, 311 (S.D.N.Y. 2023) (collecting cases) (no Section 12 standing because "alleging a purchase of shares pursuant to a prospectus," without alleging a purchase in the offering, "is insufficient to confer standing under Section 12(a)(2)"); *In re CarLotz Inc. Sec. Litig.*, 667 F. Supp. 3d. 71, 83 (S.D.N.Y. 2023) ("Plaintiffs do not allege that [they] purchased their shares in [the offering], and they thus lack standing to bring a Section 12(a)(2) claim"). Lead Plaintiff has thus failed to uphold its burden to demonstrate that it is adequate and typical to serve as class representative for the proposed Section 12(a)(2) class. *See, e.g.*, *Scholes v. Tomlinson*, 145 F.R.D. 485, 491–92 (N.D. Ill. 1992) (denying certification of Section 12 class where lead plaintiffs had "not alleged that they knew the [issuer] or that they purchased securities from them or that the [issuer] solicited them").

### C.    Lead Plaintiff Is Also Atypical Under Rule 23(a)(3) Because It Was an In-and-Out Trader.

Lead Plaintiff is atypical of the proposed class for the additional, independent reason that it is subject to unique defenses, including negative loss causation, because it was an in-and-out purchaser. Class representatives fail Rule 23(a)(3)'s typicality requirement when "they [are]

subject to unique defenses as a result of having been 'in-and-out' purchasers," for example, "buying and selling into and out of the securities at issue during the class period." *In re Puda Coal*, 2013 WL 5493007, at *17–18 (collecting cases).

That is what Lead Plaintiff did. It made several purchases of KE Holdings ADS from August 13, 2020 (before the FOO), through October 27, 2021 (after the FOO), and also made sales on December 11, 2020, February 12, 2021, and November 19, 2021—each *before* the corrective disclosure that Lead Plaintiff alleges occurred on December 16, 2021. ECF No. 24-2. These sales defeat typicality because they subject Lead Plaintiff to a negative-loss-causation defense not typical of the proposed class. *See, e.g.*, *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 237–41 (E.D.N.Y. 2011) (finding in-and-out investor fund atypical because it sold before corrective disclosure and was subject to loss causation defense). Indeed, those who sell prior to a corrective disclosure did not sustain any losses from that sale "attributable to any misstatement or omission in the Offering Documents because (under plaintiff's own allegations) no such 'truth' was known prior to" that date. *In re Smart Techs.*, 295 F.R.D. at 59–61 (excluding in-and-out traders from the class). For that reason, courts exclude in-and-out traders who, like Lead Plaintiff, sell before the alleged corrective disclosure. *See id.*; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40–41 (2d Cir. 2009) (finding plaintiff atypical where shares sold before corrective disclosure).

### D. Individualized Tracing Issues Preclude Class Certification Under Several Rule 23 Elements.

Since DTC held undifferentiated KE Holdings IPO and FOO ADS in fungible bulk, each class member would have to trace its purchase, which would "fragment the class action into myriad mini-trials," *In re IPO*, 227 F.R.D. at 118, and thus undermine any efficiency benefits that class-wide treatment would afford. The need for individualized inquiries defeats Rule 23's

predominance, superiority, and ascertainability requirements.

The common thread among the legal standards for predominance, superiority, and ascertainability is the requirement that class treatment be *efficient* under the facts of the case. "[A] court examining predominance must assess . . . whether generalized evidence could be offered to prove [the claim's] elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Comm'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). Only where common questions "predominate over" individual ones—that is, where common questions "are more prevalent or important"—is class treatment appropriate. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). If deciding the class claims would devolve into a "series of minitrials," a putative class action cannot satisfy the predominance requirement. *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002).

Similarly, Rule 23(b)(3)'s superiority requirement ensures that a class action represents the best available method "for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides a non-exhaustive list of relevant factors, and the "most critical" is "the likely difficulties in managing a class action." *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 147 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 55 (2d Cir. 2016); *see Sykes v. Mel S. Harris & Assocs. LLC.*, 780 F.3d 70, 82 (2d Cir. 2015). Rule 23(b)(3) thus requires courts to consider "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

And in the Second Circuit, a proposed class must also be ascertainable, meaning that it can be "defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Rep. of*

- 20 -

*Argentina*, 806 F.3d 22, 24–25 (2d Cir. 2015) (class defined to encompass owners of beneficial interest in bond series insufficiently defined because it lacked temporal restriction).

Here, the critical efficiency component required by the predominance, superiority, and ascertainability elements is not present with respect to the Section 11 claim given the need for individualized assessments. Based on the unique facts in this case—where identical ADS were held in undifferentiated manner in fungible bulk—the Court would be forced to parse evidence from each putative class member to trace their ADS to the FOO registration statement, notwithstanding the commingling of the FOO ADS with identical IPO ADS. *In re IPO*, 227 F.R.D. at 118. The most straightforward proof would be individualized evidence of holding ADS in direct registration or the acquisition of certificated ADS, as the FOO registration statement prescribed for "direct" ownership. But BNY Mellon's delivery of the full 35.4 million FOO ADS to DTC and its registered ADS holder list show that no class member took such measures. Thus, individual plaintiffs will likely try to prove tracing through other means, such as matching purchase and sale orders or statistical expert testimony. *See, e.g.*, *In re Puda Coal*, 2013 WL 5493007, at *7 (holding that tracing shares through "a series of transactions" was insufficient because of shares' fungibility); *Krim*, 402 F.3d at 496 (rejecting experts' "statistical determinations" to show likelihood of tracing). These individualized showings might not be necessary in a Section 11 case premised on a subsequent offering if, for example, the newly issued shares were not identical to the previously issued IPO shares (e.g., different CUSIPs) or were held in direct registration rather than at DTC's fungible bulk, but that is not the case here. Individualized inquiries will overwhelm the principal common issue under Section 11—i.e., whether the registration statement was materially misleading—thus defeating the predominance element. *See, e.g.*, *In re IPO*, 227 F.R.D. at 118 (no predominance where "each class member

must individually prove that her shares were issued pursuant to the relevant registration statement").  Further, the various efficiencies and benefits that Lead Plaintiff argues class treatment offers (Mot. at 14–15) fall away, thus defeating the superiority element, because of the "need for 'mini-trials' to resolve individual issues" of, for example, the ability to show traceability and purchase history.  *Bd. of Trs. of S. Cal. IBEW-NECA Defined Contrib. Plan v. Bank of N.Y. Mellon Corp.*, 287 F.R.D. 216, 230 (S.D.N.Y. 2012).  These "mini-trials" are precisely what the Second Circuit sought to avoid in explaining the streamlined "administrative[] feasib[ility]" that the ascertainability element requires.  *Brecher*, 806 F.3d at 24.

"These questions are not collateral issues that could be determined in individual hearings after common questions are resolved for the class."  *Johnson*, 780 F.3d at 146.  Rather, they go to the heart of the case, specifically, whether FOO participants have established their statutory standing to assert their Section 11 claim.  *See supra* Section I.  Because these individualized issues "would fragment the class action into myriad mini-trials" about traceability, *In re IPO*, 227 F.R.D. at 118, they are directly at odds with the efficiencies that Rule 23 requires, making class certification inappropriate.

## III.    AT A MINIMUM, ANY CERTIFIED CLASS SHOULD BE LIMITED IN SCOPE.

Even if the Court were to defer tracing until summary judgment (which it should not, as discussed in Section I) and appoint Lead Plaintiff to represent a Securities Act class, that class must be significantly limited:

*The proposed class definition's "and/or" language is improper.*  Lead Plaintiff's proposed class definition is overbroad and unclear because it is phrased in both the disjunctive and the conjunctive.  In the Motion, Lead Plaintiff proposes a class defined as those "who purchased the [ADS] of KE Holdings in *and/or* traceable to the Company's secondary public offering ('SPO') on or about November 19, 2020."  (Mot. at 1.)  Lead Plaintiff's use of "and/or"

creates potentially two proposed classes, one of which is a class consisting of investors who purchased "in *or* traceable to" the FOO Registration Statement. "In" is improper since it sweeps into the putative class FOO participants who lack Securities Act standing because they cannot directly trace their shares to the FOO registration statement (Section 11) or establish a direct purchase from a statutory seller (Section 12(a)(2)). *See supra* Section II. Traceability and statutory-seller purchases are requirements, not "either/or" options.

*In-and-out purchasers should be excluded.* Even if Lead Plaintiff, a partial in-and-out trader, were appointed to represent the class, the class should be narrowed to exclude FOO participants who sold all—not just a portion—of their holdings before the alleged corrective disclosure. This is because, as discussed, "any losses on sales prior to [the corrective disclosure], necessarily would be attributable to something other than the alleged misstatements or omissions in the Offering Documents," because that is when the "purported 'truth' became known for the first time." *In re Smart Techs.*, 295 F.R.D. at 59–60.

*The class period should end on November 8, 2021.* For similar reasons, eligibility for any certified class must end on November 8, 2021, not December 16, 2021, as Lead Plaintiff proposes to coincide with the release of the Muddy Waters Report. Lead Plaintiff admits in its Motion that KE Holdings' November 8, 2021 financial results "disclosed" what the FOO registration statement allegedly concealed—that "significant portions of the stores and agents on the Company's platform were inactive," which "indicat[ed]" that the store and agent counts previously reported were "inflated." (Mot. at 4.) "[F]or the first time," Lead Plaintiff states, KE Holdings separated for investors the number of *active* stores and *active* agents on its platform. *Id.* November 8, 2021, was therefore when "some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint" was revealed—namely, that some stores

and agents included in the FOO registration statement's disclosed totals were not active.  *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010).  By contrast, the December 16, 2021 Muddy Waters Report merely reiterated that point for the middle six months of 2021, long after the November 2020 FOO.  It is therefore at most a "negative characterization of already-public information," not a corrective disclosure.  *Id.* at 512; *see also Xiang v. Inovalon Holdings, Inc.*, 327 F.R.D. 510, 521 (S.D.N.Y. 2018) (limiting class period to initial disclosure of purported misrepresentations).

*Section 11 traceability requires, at a minimum, a class of direct purchasers from underwriters.*  The Court should also exclude from the class definition, at a minimum, all FOO participants who did not purchase their ADS directly from the FOO underwriters.  Some courts analyzing Section 11 tracing have stated, typically in dictum, that public offering participants can establish tracing by demonstrating that they purchased directly from underwriters.  *See, e.g.*, *Krim*, 402 F.3d at 498; *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 147 (S.D.N.Y. 2012).  A greater showing is required in this case because underwriters did not own specific ADS, only a "pro rata beneficial interest" in the fungible bulk of identical IPO and FOO ADS held at DTC.  (DTC Decl. ¶ 8.)  If the Court were, nevertheless, to adopt these authorities' view that direct purchases from underwriters could satisfy Section 11 tracing, then at a minimum, the class should be limited to those who can establish a direct purchase from a FOO underwriter, as opposed to one made on the open market.  This class limitation could align with Section 12(a)(2), which requires a litigant to have purchased directly from a statutory seller, because in some cases courts have held that underwriters "may be liable as sellers under Section 12(a)(2)."  *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 409 (S.D.N.Y. 2003).  Thus, if the Court were to certify a Section 12(a)(2)

class, then any such class should at a minimum be limited to direct underwriter purchases. *See, e.g.*, *Feiner v. SS&C Techs., Inc.*, 47 F. Supp. 2d 250, 254–55 (D. Conn. 1999) (certifying Section 12(a)(2) subclass out of Section 11 class, limited to direct purchasers from underwriters).

## CONCLUSION

For the foregoing reasons, the Court should deny Lead Plaintiff's Motion for Class Certification. In the alternative, if the Court were not to deny class certification, the Court should substantially limit Lead Plaintiff's proposed class as described above.

Dated: New York, NY
        December 20, 2024

/s/ B. Andrew Bednark

O'MELVENY & MYERS LLP
Jonathan Rosenberg
B. Andrew Bednark
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Phone: (212) 326-2000
Fax: (212) 326-2061
jrosenberg@omm.com
abednark@omm.com

*Counsel for Defendants KE Holdings Inc.
and Colleen De Vries*

GOODWIN PROCTER LLP
Douglas H. Flaum
Gabrielle Lisa Gould
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
(212) 355-3333 (fax)
dflaum@goodwinlaw.com
ggould@goodwinlaw.com

GOODWIN PROCTER LLP
Nicholas R. Franco, III
100 Northern Avenue
Boston, MA 02210
Telephone:  (617) 570 1214
nfranco@goodwinlaw.com

*Counsel for the Underwriter Defendants*