UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| KEITH CHIN, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:21-cv-11196-GHW-BCM |
|  | : |  |
| Plaintiff, | : | LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF THE CLASS, AND APPROVAL OF NOTICE TO THE CLASS |
|  | : |  |
| vs. | : |  |
|  | : |  |
| KE HOLDINGS INC., COLLEEN A. DE VRIES, GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC and CHINA RENAISSANCE SECURITIES (US) INC., | : |  |
|  | : |  |
| Defendants. | : |  |

4920-0761-7884.v1

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    SUMMARY OF THE ACTION.............................................................................3

III.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ................................7

     A.    Terms of the Settlement ...........................................................................7

     B.    The Standards for Preliminary Approval of a Proposed Settlement.......................9

     C.    The Settlement Satisfies the Rule 23(e)(2) Factors ...............................11

          1.    Lead Plaintiff and Its Counsel Have Adequately Represented the Settlement Class......................................................................11

          2.    The Proposed Settlement Was Negotiated at Arm's Length .....................12

          3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal..................................................................13

          4.    The Proposed Method for Distributing Relief Is Effective........................14

          5.    Attorneys' Fees and Expenses ...............................................................15

          6.    The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion .........................................16

          7.    Settlement Class Members Are Treated Equitably....................................17

     D.    The Settlement Also Satisfies the Remaining *Grinnell* Factors ............................17

          1.    The Stage of the Proceedings.................................................................17

          2.    The Risks of Maintaining the Class Action Through Trial........................18

          3.    The Ability of Defendants to Withstand a Greater Judgment....................18

          4.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation........................................19

IV.   THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE .............................................................20

V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE......................22

4920-0761-7884.v1

**Page**

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ..................................................24

VII.   CONCLUSION ..........................................................................................................25

4920-0761-7884.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
  222 F.3d 52 (2d Cir. 2000)..................................................................................................23

*Billhofer v. Flamel Techs., S.A.*,
  281 F.R.D. 150 (S.D.N.Y. 2012) .................................................................................23, 24

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
  310 F.R.D. 69 (S.D.N.Y. 2015) .........................................................................................24

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992)......................................................................................18

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................................14, 18

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001)..................................................................................................13

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)....................................................................................... *passim*

*Fulton Cnty. Emps. Ret. System v. Blankfein*,
  2022 WL 4292894 (S.D.N.Y. Sept. 16, 2022).....................................................................13

*Guevoura Fund Ltd. v. Sillerman*,
  2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .....................................................................12

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
  2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022).......................................................................16

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................................23

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984),
  *aff'd*, 818 F.2d 145 (2d Cir. 1987)......................................................................................19

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...........................................................................19

4920-0761-7884.v1

**Page**

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
281 F.R.D. 134 (S.D.N.Y. 2012) .......................................................................................23

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd sub nom.*, *In re Facebook, Inc.*,
822 F. App'x 40 (2d Cir. 2020) .....................................................................................9, 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................................................12, 14, 16

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................................19

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................11, 20

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................................21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
246 F.R.D. 156 (S.D.N.Y. 2007) .......................................................................................20

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) .......................................................................................17

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)................................................................................18

*In re PPDAI Group Inc. Sec. Litig.*,
2022 WL 198491 (E.D.N.Y. Jan. 21, 2022) ......................................................................16

*In re PaineWebber Ltd. P'ships Litig.*,
147 F.3d 132 (2d Cir. 1998)..............................................................................................9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019).........................................................................................10

*In re Stock Exchs. Options Trading Antitrust Litig.*,
2006 WL 3498590 (S.D.N.Y. Dec. 4, 2006) .....................................................................21

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
2017 WL 2062985 (S.D.N.Y. May 15, 2017) ...................................................................23

4920-0761-7884.v1

**Page**

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................................22

*In re XL Fleet Corp. Sec. Litig.*,
    2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024)...................................................................16

*Lea v. Tal Education Group*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).................................................................16

*McIntosh v. Katapult Holdings, Inc.*,
    2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ................................................................18

*Panther Partners Inc. v. Jianpu Tech. Inc., et al.*,
    No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) .................................16

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sep. 29, 2022)................................................................20

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ...............................................................18

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    333 F.R.D. 39 (S.D.N.Y. 2019) .....................................................................................12

*Volino v. Progressive Cas. Ins. Co.*,
    2025 WL 733251 (S.D.N.Y. Mar. 7, 2025) ...................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................................................9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..............................................................................................21

4920-0761-7884.v1

**Page**

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77k......................................................................................................................3, 4
§77l(a)(2) .............................................................................................................3, 4
§77o.....................................................................................................................3, 4
§77z-1(a)(7) ...............................................................................................................3
§77z-1(a)(7)(A)........................................................................................................21
§77z-1(a)(7)(B)........................................................................................................21
§77z-1(a)(7)(C)........................................................................................................21
§77z-1(a)(7)(D)........................................................................................................21
§77z-1(a)(7)(E)........................................................................................................21
§77z-1(a)(7)(F) ........................................................................................................21
§78j(b)........................................................................................................................3
§78t(a) .......................................................................................................................3

Federal Rules of Civil Procedure
Rule 23 ................................................................................................................3, 21
Rule 23(a).......................................................................................................2, 11, 22
Rule 23(a)(2)............................................................................................................23
Rule 23(b) ................................................................................................................11
Rule 23(b)(3)................................................................................................2, 22, 24
Rule 23(c)..................................................................................................................18
Rule 23(c)(2)(B).......................................................................................................20
Rule 23(e)...............................................................................................................9, 22
Rule 23(e)(1).............................................................................................................2, 9
Rule 23(e)(1)(B).......................................................................................................20
Rule 23(e)(2)..............................................................................................2, 9, 10, 11
Rule 23(e)(2)(A) ......................................................................................................11
Rule 23(e)(2)(B).......................................................................................................13
Rule 23(e)(2)(C)(i) ..................................................................................................13
Rule 23(e)(2)(C)(ii).................................................................................................14
Rule 23(e)(2)(C)(iii)................................................................................................15
Rule 23(e)(2)(C)(iv).................................................................................................16
Rule 23(e)(2)(D) ......................................................................................................17

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation:2024 Full-Year Review*,
Edward Flores and Svetlana Starykh
(NERA Economic Consulting Jan. 22, 2025).......................................................19

Lead Plaintiff Saskatchewan Healthcare Employees' Pension Plan ("Lead Plaintiff" or "SHEPP") respectfully submits this memorandum of law in support of its unopposed motion for: (i) preliminary approval of the proposed Settlement in this Action; (ii) certification of the proposed Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of the settlement notices to members of the Settlement Class; and (iv) the scheduling of a final fairness hearing ("Settlement Hearing"), along with setting deadlines in connection therewith.[1] The requested relief is set forth in the Parties' agreed-upon form of [Proposed] Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order") and exhibits thereto.

## I.    INTRODUCTION

The proposed Settlement, memorialized in the Stipulation filed concurrently herewith, provides a recovery of $4.95 million in cash, inclusive of attorneys' fees and expenses ("Settlement Amount"), to resolve all of Lead Plaintiff's claims against defendants KE Holdings Inc. ("KE Holdings" or the "Company") and Colleen A. De Vries (the "KE Holdings Defendants"), and Goldman Sachs (Asia) L.L.C., Morgan Stanley & Co. LLC, J.P. Morgan Securities LLC, Goldman Sachs & Co. LLC, and China Renaissance (US) Inc. (the "Underwriter Defendants" and, together with the KE Holdings Defendants, "Defendants"). The Settlement comes after the Parties litigated Defendants' motion to dismiss, conducted fact discovery, and participated in arm's-length mediation overseen by David M. Murphy, Esq., of Philips ADR, an experienced mediator (the "Mediator").

---

[1]    Unless otherwise noted, all capitalized terms herein have the meanings ascribed to them in the Stipulation of Settlement dated September 8, 2025 ("Stipulation"), filed concurrently herewith as Exhibit 1 to the Declaration of Erin W. Boardman ("Boardman Decl.") in support of Lead Plaintiff's motion.

- 1 -

The Settlement is the result of a knowledgeable and comprehensive assessment of the strengths and weaknesses of the claims asserted in this Action, the costs and risks of proceeding with the litigation, and the benefit to Settlement Class Members of receiving a recovery without further delay.

As detailed herein, the Settlement represents a very favorable recovery for the Settlement Class, based on an estimate of Lead Plaintiff's reasonable recoverable damages. The Settlement will eliminate the risks and uncertainty of continued proceedings by ensuring that Settlement Class Members will receive compensation in the near-term – instead of many months or years from now, or perhaps never.

The Settlement satisfies Rule 23(e)(1) of the Federal Rules of Civil Procedure for the issuance of the Notice, as well as each of the Rule 23(e)(2) factors and those identified in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), which courts consider at the preliminary and final approval stages.[2] Accordingly, Lead Plaintiff respectfully requests preliminary approval of the Settlement so that notice may be provided to the Settlement Class pursuant to the proposed Preliminary Approval Order, submitted herewith as Exhibit A to the Stipulation, which will:

1.  preliminarily approve the Settlement on the terms set forth in the Stipulation;

2.  find that the Settlement Class satisfies each element of Rules 23(a) and 23(b)(3) and should be certified for settlement purposes;

3.  approve the form and content of the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice") and Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Summary Notice"), attached as Exhibits A-1 and A-3 to the Stipulation;

---

[2] Citations, internal quotations, and footnotes omitted unless otherwise noted.

4920-0761-7884.v1

4. find that the procedures for distributing the Notice and publishing of the Summary Notice, as set forth in the Preliminary Approval Order, constitute the best notice practicable under the circumstances and comply with the requirements of due process, Rule 23, and Section 27(a)(7) of the Securities Act, 15 U.S.C. §77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

5. establish a schedule and procedures for: (i) disseminating the Notice and publishing the Summary Notice; (ii) requesting exclusion from the Settlement Class; (iii) objecting to any aspect of the Settlement, Plan of Allocation, Lead Counsel's application for an award of attorneys' fees, charges, and expenses or Lead Plaintiff's application for an award pursuant to 15 U.S.C. §77z-1(a)(4); (iv) submitting papers in support of final approval of the Settlement; and (v) the Settlement Hearing.

## II.    SUMMARY OF THE ACTION

On December 30, 2021, the above-captioned action was filed in the United States District Court for the Southern District of New York (the "Court") asserting claims under the Securities Exchange Act of 1934 (the "Exchange Act").

By Order dated March 29, 2022, the Court appointed: (1) SHEPP as Lead Plaintiff; and (2) its chosen counsel, Robbins Geller Rudman & Dowd LLP, as Lead Counsel.

On June 17, 2022, Lead Plaintiff filed the Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against Defendants under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Exchange Act.

Prior to filing the Complaint, Lead Plaintiff, through Lead Counsel, conducted a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the

- 3 -

4920-0761-7884.v1

subject of the Action.  This process included reviewing and analyzing: (i) documents filed publicly by the Company with the U.S. Securities and Exchange Commission ("SEC"); (ii) publicly available information, including press releases, KE Holdings earnings call transcripts, news articles, and other public statements issued by or concerning the Company and the other Defendants; (iii) other publicly available information and data concerning the Company; and (iv) the applicable law governing the claims and potential defenses.

On July 26, 2022, Defendants filed their pre-motion to dismiss letter.  Lead Plaintiff filed its response on July 29, 2022.  On August 10, 2022, the Court held a telephonic hearing to discuss the pre-motion to dismiss letters.

On September 23, 2022, Defendants filed their motion to dismiss the Complaint.  On November 7, 2022, Lead Plaintiff filed its memorandum of law in opposition to the motion to dismiss, and, on December 7, 2022, Defendants filed their reply memorandum of law.

On February 26, 2024, the Court granted in part and denied in part Defendants' motion to dismiss.

On March 18, 2024, Lead Plaintiff filed its Second Amended Complaint.

On April 1, 2024, Defendants filed their request for a pre-motion to dismiss conference.  The Court granted the request on April 2, 2024, and held the conference on April 10, 2024.

On May 8, 2024, the Parties filed a joint letter stating their respective positions regarding Lead Plaintiff's proposed Third Amended Complaint (the "Operative Complaint").

On May 10, 2024, the Court granted leave to file the Operative Complaint, and on May 13, 2024, Lead Plaintiff filed the Operative Complaint, asserting Securities Act Sections 11, 12(a)(2), and 15 claims in connection with disclosures associated with KE Holdings' November 19, 2020

4920-0761-7884.v1

follow-on offering ("Follow-On Offering").  Defendants answered the Operative Complaint on June 17, 2024.

The Court held the Initial Pre-Trial Conference on July 1, 2024, and entered the Civil Case Management Plan and Scheduling Order.

On July 15, 2024, the Parties served initial disclosures and requests for the production of documents.  On August 14, 2024, the Parties served their responses and objections to the initial requests for production.

On October 24, 2024, Magistrate Judge Moses held a status conference with the Parties.

On October 24, 2024, Lead Plaintiff voluntarily dismissed, without prejudice, its claims against defendants China Renaissance Securities (Hong Kong) Limited, Peng Yongdong, Xu Tao, Shan Yigang, Bao Fan, Li Zhaohui, and Chen Xiaohong (the "Former Defendants").

On November 1, 2024, Lead Plaintiff filed its motion for class certification, and on December 20, 2024, Defendants filed their opposition to the motion for class certification.

The Parties began exploring the possibility of a settlement in early 2025.  Specifically, the Parties agreed to engage in mediation and subsequently retained David M. Murphy, Esq., to act as Mediator in the Action.

On March 27, 2025, Lead Counsel and KE Holdings Defendants' Counsel participated in a mediation session before the Mediator.  In advance of the mediation, Lead Plaintiff and KE Holdings submitted detailed opening and reply mediation statements to the Mediator, which addressed both liability and damages issues.  The Parties negotiated in good faith at the March 27, 2025 mediation, but no agreement was reached.  Following additional negotiations facilitated by the Mediator, the Parties ultimately accepted the Mediator's proposal to settle the Action for $4.95 million, subject to the execution of a "customary long form" stipulation of settlement and related papers.  On April 24,

4920-0761-7884.v1

2025, the Parties notified the Court of the Settlement and requested a stay of the Action, which was granted the same day.

On September 8, 2025, following additional negotiations concerning specific settlement terms, the Parties executed the Stipulation.  The Stipulation (together with the exhibits thereto) reflects the final and binding agreement between the Parties.

Lead Plaintiff, through Lead Counsel, conducted an extensive investigation into the claims and the underlying events and transactions alleged in the Operative Complaint, including the maximum amount of damages that Lead Counsel believes was potentially recoverable by the Settlement Class.  Based upon their investigation, prosecution, and mediation of the case, and taking into consideration the immediate and significant monetary benefit that the Settlement Class Members will receive from the Settlement, weighed against the significant risks of continued litigation and trial, Lead Plaintiff and Lead Counsel have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate to Lead Plaintiff and to the other Settlement Class Members, and in their best interests, and have agreed to settle the claims raised in the Action pursuant to the terms and conditions of this Settlement.

Defendants have denied and continue to deny any wrongdoing or that they have committed any act or omission giving rise to any liability or violation of law, including the U.S. securities laws. Defendants have denied and continue to deny each and every one of the claims alleged by Lead Plaintiff in the Action on behalf of the Settlement Class, including all claims asserted or which could have been asserted in the Operative Complaint and all other complaints filed in this Action. Defendants also have denied, and continue to deny, *inter alia*, the allegations that they violated or breached any law, regulation, or duty owed to Lead Plaintiff or Settlement Class Members, that they failed to disclose any material information to investors, that their public statements were false or

- 6 -

misleading, or that Lead Plaintiff or Settlement Class Members have suffered any damages or were otherwise harmed by the conduct alleged in the Action. Defendants have asserted, and continue to assert, that their conduct was, at all times, proper, that their acted, at all times, in good faith and in compliance with all applicable provisions of law, and that the claims asserted against Defendants are without merit. In addition, Defendants maintain that they have meritorious defenses to all of the claims alleged in the Action. Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden, and expense of further protracted litigation. Defendants have determined that it is desirable and beneficial to them that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in the Stipulation.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    Terms of the Settlement

The Settlement resolves all of the Settlement Class's claims against Defendants. The Stipulation provides that KE Holdings will pay, or cause to be paid, the Settlement Amount ($4.95 million) within 21 calendar days after the later of: (i) the entry date of the Preliminary Approval Order; and (ii) KE Holdings Defendants' Counsel's receipt from Lead Counsel of the information necessary to effectuate a transfer of funds to the Escrow Account. Stipulation, ¶5. For the Settlement Class's benefit, the Settlement Amount will be invested in instruments backed by the Full Faith & Credit of the U.S. Government or an Agency thereof, or fully insured by the U.S. Government or an Agency thereof, and reinvested as those instruments mature in similar instruments at their then-current market rates. *Id.*, ¶9.

The recovery to individual Settlement Class Members will depend on variables outlined in the proposed Plan of Allocation (set forth in the Notice), including the number and aggregate amount of claims submitted by eligible Settlement Class Members, the timing and amount of their purchases

- 7 -

4920-0761-7884.v1

and sales of KE Holdings ADS, and whether the shares were purchased pursuant to KE Holdings' November 19, 2020 Follow-On Offering.

The Settlement Amount, plus accrued interest, comprises the Settlement Fund. The cost of Settlement administration – including the costs of notice to the Settlement Class, Taxes, and Tax Expenses – will be funded by the Settlement Fund. Stipulation, ¶8. Lead Plaintiff proposes an experienced and nationally-recognized class-action settlement administrator, Verita Global ("Verita" or the "Claims Administrator"), to disseminate notice to the Settlement Class in accordance with the process set forth in the Preliminary Approval Order. *Id.*, ¶1(c). If the Court grants preliminary approval, the Claims Administrator will mail the Notice and Proof of Claim (Exhibits A-1 and A-2 to the Stipulation) to Settlement Class Members who can be identified with reasonable effort. Stipulation, Ex. A, ¶¶9-10. The Claims Administrator will also cause the Summary Notice (Exhibit A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *Id.*, Ex. A, ¶12.

The Notice explains the terms of the Settlement, including that the Net Settlement Fund will be distributed to eligible Settlement Class Members who submit valid and timely Proofs of Claim, under the Plan of Allocation and subject to this Court's approval; and there will be no reversion to Defendants. *See generally* Stipulation, Ex. A-1. The Notice also describes: (i) Lead Counsel's application for attorneys' fees and expenses, and Lead Plaintiff's application for an award pursuant to 15 U.S.C. §77z-1(a)(4); (ii) the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement, the Plan of Allocation, or Lead Counsel's or Lead Plaintiff's requests; and (iii) the date and time for the Settlement Hearing. *See* Stipulation, Ex. A-1.

In exchange for the benefits provided by the Settlement, Settlement Class Members will release any and all claims against Defendants that "arise from or out of or are in connection with or

- 8 -

are based upon, arise from, or related in any way to: (a) the allegations, transactions, offerings, facts, matters, events, acts, failures to act, occurrences, breaches of duty, statements, representations, misrepresentations, disclosures, omissions, or claims which were or could have been alleged in this Action; and (b) the purchase, acquisition, holding, sale, or disposition of American Depository Shares ("ADS") of KE Holdings that were purchased or otherwise acquired during the Settlement Class Period or traceable to the Follow-On Offering's registration statement." Stipulation, ¶1(aa).[3]

As detailed herein, the proposed Settlement is a favorable result for the Settlement Class and provides a certain cash recovery now without the risks and delays of further litigation.

## B.    The Standards for Preliminary Approval of a Proposed Settlement

Rule 23(e) requires judicial approval for settling claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). The settlement of class-action litigation is favored and encouraged. *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998) (recognizing a "strong judicial policy in favor of settlements, particularly in the class action context"); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom.*, *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (same, citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Under Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of

---

[3]    The Stipulation also describes the general terms of KE Holding's termination option – that KE Holdings may withdraw from and terminate the Settlement if Settlement Class Members who purchased or acquired in excess of a certain amount of KE Holdings ADS opt out of the Settlement Class. Stipulation, ¶39.

4920-0761-7884.v1

judgment on the proposal." *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Rule 23(e)(2) provides:

> (2)     ***Approval of the Proposal***. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)     the class representatives and class counsel have adequately represented the class;
> >
> > (B)     the proposal was negotiated at arm's length;
> >
> > (C)     the relief provided for the class is adequate, taking into account:
> >
> > > (i)     the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)     any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)     the proposal treats class members equitably relative to each other.

These factors largely overlap with, but do not displace (*In re Payment Card*, 330 F.R.D. at 29) the *Grinnell* factors, which include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463; *Volino v. Progressive Cas. Ins. Co.*, 2025 WL 733251, at *2 (S.D.N.Y. Mar. 7, 2025). As discussed below, the proposed Settlement satisfies each of the factors identified in

- 10 -

4920-0761-7884.v1

Rule 23(e)(2), as well as each of the applicable *Grinnell* factors.[4]  In addition, each of the Rule 23(a)

and (b) factors are met for certification of the Settlement Class for settlement purposes.

Accordingly, notice of the proposed Settlement should be sent to the Settlement Class.

### C.    The Settlement Satisfies the Rule 23(e)(2) Factors

#### 1.    Lead Plaintiff and Its Counsel Have Adequately Represented the Settlement Class

Lead Plaintiff and Lead Counsel unquestionably satisfy the adequacy requirements of Rule

23(e)(2)(A), because they have diligently litigated this case throughout on behalf of the Settlement

Class.  They thoroughly investigated the facts and potential legal claims.  These efforts continued

and resulted in the preparation of the Complaint, Second Amended Complaint, and the Operative

Complaint.  Lead Counsel litigated Defendants' motion to dismiss which the Court granted in part

and denied in part.  The Parties exchanged written discovery and responses, and briefed Lead

Plaintiff's motion for class certification.  These efforts also provided Lead Plaintiff with a thorough

understanding of the potential strengths and weaknesses of the theories of liability asserted and

upheld, and of its challenges in moving forward with the litigation.  This understanding positioned

Lead Plaintiff to prepare an effective mediation statement and presentation to Mr. Murphy, and

ultimately to successfully resolve this Action.

Lead Plaintiff also participated actively in this Action, reviewing pleadings and collecting

and producing documents in response to discovery requests.  In addition, Lead Plaintiff closely

---

[4]    Since notice of the proposed Settlement has not been approved by the Court or disseminated to the Settlement Class, consideration of this factor is premature at the preliminary approval stage. *See, e.g.*, *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 n.1 (S.D.N.Y. 2019) ("The Court need not consider *Grinnell* factor #2 . . . because consideration of this factor is generally premature at the preliminary approval stage.").

4920-0761-7884.v1

monitored the progress of the Action, maintained ongoing communication with Lead Counsel, and participated in key strategic decisions, including those pertaining to the resolution of the case.

In addition, Lead Counsel has substantial experience in prosecuting complex securities class actions in the District and nationwide, and that experience directly led to the favorable result here. *See, e.g.*, *In re Am. Realty Capital Props., Inc. Litig.*, No. 1:15-mc-0040-AKH, Transcript at 184:10-11 (S.D.N.Y. Jan. 23, 2020) ("I believe that, in this case, as I said before, the services delivered by the Robbins Geller firm were outstanding . . . .") (excerpt of Transcript attached as Exhibit 2 to the Boardman Decl.); *Villella v. Chem. & Mining Co. of Chile Inc.*, 333 F.R.D. 39, 59 (S.D.N.Y. 2019) (finding that Robbins Geller "has extensive experience in securities class actions and complex litigation," which reflect "its ability to manage this litigation").  *See also* www.rgrdlaw.com.

Bringing this experience and knowledge to bear, and given the unique challenges present in this case, Lead Counsel believes that the Settlement is in the best interests of the Settlement Class. *See Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (recognizing that "great weight is accorded to counsel's recommendation" if a settlement is reached by experienced counsel after arm's-length negotiations); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) ("[G]reat weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### 2.   The Proposed Settlement Was Negotiated at Arm's Length

The Settlement is the result of extensive, arm's-length negotiations with sophisticated counsel conducted through an experienced and neutral Mediator.  The Parties worked on developing a thorough understanding of the strengths and weaknesses of their claims and defenses and balanced

4920-0761-7884.v1

those considerations against the risks of continued litigation. Here, the Mediator was instrumental in separately working with the Parties to achieve a reasonable result.

The Parties attended an in-person mediation on March 27, 2025, preceded by the submission and exchange of detailed opening and reply mediation statements. Although the Parties negotiated in good faith, the mediation was not successful. Further discussions and negotiations subsequently took place with the Mediator, and ultimately, the Parties accepted a Mediator's proposal to resolve the Action for $4.95 million, subject to the negotiation of final settlement terms and Court approval.

In short, negotiations were hard-fought, extensive, lengthy, well-informed, and facilitated by a neutral, third-party Mediator experienced in evaluating and resolving litigation of this nature. Accordingly, Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the "'product of serious, informed, non-collusive negotiations,'" *Fulton Cnty. Emps. Ret. System v. Blankfein*, 2022 WL 4292894, at *2 (S.D.N.Y. Sept. 16, 2022), and was "based on the suggestion of . . . a neutral mediator." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018), *aff'd*, 822 F. App'x 40 (2d Cir. 2020). *See also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

### 3.    The Proposed Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

Assessing a settlement even at preliminary approval requires balancing the benefits offered to the class against the costs, risks, and delay of continued litigation. *See* Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the first (the complexity, expense, and likely duration of the litigation), fourth (the risks of establishing liability), and fifth (the risks of establishing damages) *Grinnell* factors.

- 13 -

4920-0761-7884.v1

Securities class actions are notoriously complex and present numerous hurdles to proving liability and damages. *See, e.g.*, *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*10 (S.D.N.Y. Oct. 16, 2019) ("'In evaluating the settlement of a securities class action, federal courts, including this Court, have long recognized that such litigation is notably difficult and notoriously uncertain.'"); *Flag Telecom*, 2010 WL 4537550, at \*15 (recognizing that complex securities class actions are "'notably difficult and notoriously uncertain'").

While Lead Plaintiff believes that evidentiary support exists for the allegations, it recognizes that significant hurdles stand in the way of continuing to develop evidence, proving liability, establishing damages, and proceeding to – and prevailing at – trial.  Indeed, although Lead Plaintiff believes its case is strong, it acknowledges that whether it could obtain discovery from China-based defendants to prove its claims created a serious risk as well as significant delay in the proceedings.

Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class would have recovered an amount significantly less than the Settlement Amount (or nothing at all).  The $4.95 million, all cash, recovery now weighs heavily in favor of preliminary approval of the Settlement, particularly when viewed against the risks, costs, delay, and uncertainty of further proceedings.

### 4.    The Proposed Method for Distributing Relief Is Effective

As demonstrated below, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are effective.  The notice plan includes direct mail notice to all those who can be identified with reasonable effort, supplemented by publication of the Summary Notice in *The Wall Street Journal* and over a national newswire service.  Stipulation, Ex. A, ¶¶9-12.  In addition, a Settlement-specific website will be created where Settlement-related

- 14 -

and other key documents will be posted, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.

If approved by the Court, the Claims Administrator, Verita, will use standard methods to process claims and distribute relief after final settlement approval. Specifically, Settlement Class Members will submit the Court-approved Claim Form, either by mail or online through the Settlement website's claims filing portal. Based on the trading information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate in the Settlement by, among other things, calculating their respective claims based on the Court-approved Plan of Allocation. *See* Stipulation, ¶¶21-22. Lead Plaintiff's claim is subject to the same standard of review. The Claims Administrator will notify claimants of any deficiencies in their claims or conditions of ineligibility and claimants will be afforded the opportunity to cure any deficiencies or to contest the rejection of their claims. *Id.*, ¶28(d). Any claims dispute that cannot be resolved will be presented to the Court for resolution. *Id.*, ¶28(e).

Upon the occurrence of the Effective Date and the completion of the claims administration process, the Claims Administrator will distribute the Net Settlement Fund to Authorized Claimants. In the event there are un-claimed funds after the initial distribution, and it would be economically feasible to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (after the deduction of the estimated expenses and costs of doing so). Any additional distributions will proceed in the same manner until it is no longer economically feasible to do so. Stipulation, ¶25.

### 5.    Attorneys' Fees and Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states that Lead Counsel intends to seek an

- 15 -

award of attorneys' fees of up to 33-1/3% of the Settlement Amount and litigation expenses not to exceed $125,000, plus interest on these amounts at the same rate as earned by the Settlement Fund. *See* Stipulation, Ex. A-1 at 4, 19. In addition, Lead Plaintiff may seek an award not to exceed $5,000 for its representation of the Settlement Class. *Id*. at 19. The anticipated fee request is in line with awards in other securities settlements recently approved. *See, e.g.*, *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding 33-1/3% of $19.5 million recovery, plus expenses); *Panther Partners Inc. v. Jianpu Tech. Inc., et al.*, No. 1:18-cv-09848-PGG, ECF 130 (S.D.N.Y. May 12, 2022) (awarding 33-1/3% of $7.5 million recovery, plus expenses); *Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding one-third of $18 million recovery, plus expenses); *In re PPDAI Group Inc. Sec. Litig.*, 2022 WL 198491, at *14-*17 (E.D.N.Y. Jan. 21, 2022) (awarding 33-1/3% of $9 million recovery, plus expenses); *Lea v. Tal Education Group*, 2021 WL 5578665, at *12-*13 (S.D.N.Y. Nov. 30, 2021) (awarding 33-1/3% of $7.5 million recovery, plus expenses).

With respect to the timing of payment, the Stipulation provides that any attorneys' fees and expenses awarded shall be paid to Lead Counsel after the Court executes the Judgment and an order awarding such fees and expenses. Stipulation, ¶13.

### 6.    The Parties Have No Additional Agreement Other than an Agreement to Address Requests for Exclusion

Rule 23(e)(2)(C)(iv) requires disclosure of any other agreement. The parties have entered into a standard supplemental agreement which provides KE Holdings with the option to terminate the Settlement if opt-out requests by Settlement Class Members exceed a certain threshold. *See* Stipulation, ¶39.

- 16 -

### 7.    Settlement Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), considers whether Settlement Class Members are treated equitably.  As reflected in the Plan of Allocation set forth in the Notice (Stipulation, Ex. A-1), the Settlement treats Settlement Class Members equitably relative to each other, and will recover based on the timing of their purchases and sales of KE Holdings ADS.  Authorized Claimants will receive their respective *pro rata* shares of the Net Settlement Fund based on their recognized losses under the Plan of Allocation.  Where, as here, the proposed Plan of Allocation calls for the *pro rata* distribution of settlement proceeds it is "presumptively reasonable." *In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008).

### D.    The Settlement Also Satisfies the Remaining *Grinnell* Factors

### 1.    The Stage of the Proceedings

Although the Settlement was reached at a relatively early stage of the litigation, Lead Plaintiff and Lead Counsel approached settlement negotiations with a deep understanding and knowledge of the merits, and the strengths and weaknesses of their claims.  This knowledge is based on a prolonged, in-depth, and extensive investigation, drafting the complaints, briefing Defendants' motion to dismiss, briefing class certification, and propounding and responding to written discovery requests.  All this work provided the foundation for a productive mediation and ultimately successful negotiations.

Lead Counsel also extensively consulted with its damages consultant, who provided useful guidance in evaluating and valuing the claims based on the facts alleged.  This insight was essential. It allowed Lead Plaintiff and Lead Counsel to realistically assess the prospect of establishing damages, while enabling them to develop an effective plan to negotiate an eventual resolution.  The Mediator's involvement was also indispensable.  Mr. Murphy provided guidance based on his candid

- 17 -

4920-0761-7884.v1

assessment of the strengths and weaknesses of the claims and defenses and interfaced with each side to drill down on potential points of compromise.

This process allowed Lead Plaintiff and Lead Counsel to develop adequate information about the claims to negotiate a favorable resolution.

### 2. The Risks of Maintaining the Class Action Through Trial

While Lead Plaintiff is confident that the Court would grant the pending class certification motion, there are certainly no guarantees. Further, if Lead Plaintiff was successful in achieving class certification, Defendants could have moved at any time to decertify the class or to shorten the class period. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992); Fed. R. Civ. P. 23(c) (authorizing decertification at any time). This factor therefore supports preliminary approval of the Settlement.

### 3. The Ability of Defendants to Withstand a Greater Judgment

Although Defendants may have been able to withstand a greater judgment, this fact "does not necessarily preclude a finding that the settlement is fair." *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *11 (S.D.N.Y. Dec. 13, 2024); *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020). This is particularly true where, as here, the other factors overwhelmingly weigh in favor of approval. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *14 ("Plaintiffs concede it is likely that Alibaba could have withstood [a greater judgment], but correctly note that 'where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair.'"); *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *6 (S.D.N.Y. Dec. 14, 2017) ("Although [d]efendants may have had the ability to withstand a greater judgment, this factor does not render the settlement unfair, given the force of the other *Grinnell* factors.").

- 18 -

### 4.    The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged not "'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987)).  The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range which recognizes "'the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent'" in taking any litigation to completion.  *Giant Interactive*, 279 F.R.D. at 162.

The Settlement represents a favorable result for the Settlement Class.  Lead Plaintiff has estimated reasonably recoverable damages could be no more than $27 million, but could be significantly less, depending on various scenarios.  Thus, the Settlement of over 18% of maximum estimated recoverable damages falls well within the range of reasonableness and supports preliminary approval.  Indeed, the recovery here is multiples above the 5.2% median percentage recovery for cases with estimated losses of between $20 and $49 million in securities class actions settled between 2015 and 2024.[5]

An additional compelling consideration that militates in favor of the reasonableness of the Settlement is that the Settlement provides for payment to the Settlement Class now, rather than the speculative possibility of payment years later.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning

---

[5]    *See* Boardman Decl., Ex. 3, Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 26, fig. 23 (NERA Economic Consulting Jan. 22, 2025).

4920-0761-7884.v1

interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

## IV.    THE PROPOSED FORM AND METHOD OF PROVIDING NOTICE TO THE SETTLEMENT CLASS ARE APPROPRIATE

There are no "rigid rules" that apply when determining the adequacy of notice for a class action settlement.  Rather, when measuring the adequacy of notice under the Due Process Clause or Federal Rules, a court will look to its reasonableness.  *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. 2007).  "Notice need not be perfect, but need only be the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members." *Id*.

The proposed Preliminary Approval Order (Stipulation, Ex. A) provides that the Claims Administrator will mail the Notice and Proof of Claim to all potential Settlement Class Members who can be identified with reasonable effort.  Stipulation, Ex. A, ¶9.  This includes mailing to all Settlement Class Members identified by KE Holding's depository bank and further by brokers and other nominees who purchased or held KE Holdings ADS on behalf of others.  *Id.*, ¶¶9-10.  The Claims Administrator will also publish the Summary Notice in the national edition of *The Wall Street Journal* and once over a national newswire service.  *Id.*, ¶12.  Additionally, the Claims Administrator will establish and maintain a Settlement-related website at which the Notice and other relevant materials will be available to Settlement Class Members.

Courts have approved similar notice programs in a multitude of cases.  *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *8-*9 (S.D.N.Y. Sep. 29, 2022) (Rule 23(c)(2)(B) satisfied where notice plan provided for mail and/or email notice and publication notice); *GSE*, 414 F. Supp. 3d at 702 (Rule 23(e)(1)(B) and Rule 23(c)(2)(B) satisfied where notice provided for individual mail

- 20 -

4920-0761-7884.v1

notice and publication notice); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 184-85 (S.D.N.Y. 2012) (mailed notice to 1,813 banks, brokerage companies, and institutional investors and notice via publishing an approved form of summary notice through newspapers and via electronic newswires found adequate).

The proposed form of notice also comports with the requirements of due process, the PSLRA, and Rule 23, and is similar to that routinely approved in other cases. Notice is reasonable if "the average class member understands the terms of the proposed settlement and the options provided to class members thereunder." *In re Stock Exchs. Options Trading Antitrust Litig.*, 2006 WL 3498590, at *6 (S.D.N.Y. Dec. 4, 2006); *see also Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (the notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings'") (Alteration in original).

The proposed Notice contains all of the information required under the PSLRA.[6] 15 U.S.C. §77z-1(a)(7)(A)-(F). *See* Stipulation, Ex. A-1. It advises recipients that they have the right to request exclusion from the Settlement Class or to object to any aspect of the Settlement, the Plan of Allocation, Lead Counsel's fee and expense application, or Lead Plaintiff's requested award. It provides recipients with the contact information for the Claims Administrator (Verita) and Lead

---

[6] The PSLRA requires that the settlement notice include the following: (1) the amount of the settlement proposed for distribution, determined in the aggregate and on an average per share basis; (2) if the parties do not agree on the average amount of damages per share recoverable in the event plaintiff prevailed, a statement from each party concerning the issue(s) on which the parties disagree; (3) a statement indicating which parties or counsel intend to apply for an award of fees and costs (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought; (4) the name, telephone number, and address of a representative of counsel for the class who will be reasonably available to answer questions about any matter contained in the notice of settlement; (5) a brief statement explaining the reasons why the parties are proposing the settlement; and (6) such other information as may be required by the court.

Counsel, and directs recipients to the Settlement website for further information (including electronic copies of the Notice and Proof of Claim). And it advises Settlement Class Members of the date, time, and location of the Settlement Hearing. This information is also presented in a way that is accessible to the reader and is in a format similar to notices approved in other cases.

## V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Under the terms of the Stipulation, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class. The Settlement Class is defined as:

> [A]ll Persons that purchased or otherwise acquired KE Holdings ADS during the Settlement Class Period between November 19, 2020 and March 10, 2022, inclusive or traceable to the Follow-On Offering's registration statement. Excluded from the Settlement Class are Defendants, the Former Defendants, the officers and directors of KE Holdings and the Underwriter Defendants (at all relevant times), members of their Immediate Families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant or Former Defendant has a controlling interest; provided, however, that notwithstanding anything set forth above, any "Investment Vehicle" shall not be excluded from the Settlement Class. Also excluded from the Settlement Class is any Person who timely and validly requests exclusion from the Settlement Class.

Stipulation, ¶1(ee).

The proposed Settlement Class satisfies the requirements of Federal Rules 23(a), 23(b)(3), and 23(e), and should be certified for settlement purposes. In addition, Lead Plaintiff should be appointed Class Representative and Lead Counsel should be appointed Class Counsel.

***First***, KE Holdings sold 35.4 million ADS in the Follow-On Offering. *See* ECF 144 at 7. Thus, the Settlement Class likely consists of more than 40 members and numerosity is satisfied. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (numerosity "'may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period'").

- 22 -

*Second*, because the Settlement Class's claims arise from the same alleged misstatements and omissions and rely on the same theories of liability, questions of law and fact are common to the Settlement Class. *See Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012) ("[c]ommon questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 181 (S.D.N.Y. 2014) ("'Securities-fraud cases generally meet Rule 23(a)(2)'s commonality requirement.'"). The facts here raise common questions as to whether: (1) Defendants' conduct violated the Securities Act; (2) Defendants publicly misrepresented material facts or omitted material facts they were required to disclose; (3) the price of KE Holdings ADS was artificially inflated as a result of Defendants' alleged misconduct; and (4) the Settlement Class suffered damages when the artificial inflation of KE Holdings ADS's price dissipated upon revelation of the truth. These common questions readily establish commonality. *See In re Virtus Inv. Partners, Inc. Sec. Litig.*, 2017 WL 2062985, at *2 (S.D.N.Y. May 15, 2017) (commonality satisfied in securities case involving similar questions).

*Third*, Lead Plaintiff's claims are typical of the Settlement Class's because they share the same factual and legal underpinnings. ECF 144 at 9-10; *see In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) ("[i]n a securities class action . . . the claims and nature of evidence 'are generally considered sufficient to satisfy the typicality requirement'").

*Fourth*, Lead Plaintiff is an adequate class representative because its interests are aligned with, and not antagonistic to, those of other Settlement Class Members, and Lead Counsel is "qualified, experienced and able to conduct the litigation." *See Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Lead Plaintiff purchased its KE Holdings ADS

- 23 -

in the Follow-On Offering or at market prices during the Settlement Class Period and was injured by the same alleged material misrepresentations and omissions and subsequent stock price declines that injured all Settlement Class Members.  It also "actively supervised and monitored the progress of this litigation . . . ." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 100 (S.D.N.Y. 2015).

Additionally, the requirements of Rule 23(b)(3) are satisfied as common questions of law and fact predominate over individual ones and class treatment is superior to separate and disjointed individual adjudications.  *See* ECF 144 at 11-16.  Because the elements of Lead Plaintiff's claims present common questions of law and fact that predominate over individualized ones, the predominance requirement is "readily met" here.  *See Billhofer*, 281 F.R.D. at 158.  Superiority is also readily met because adjudicating individual claims would significantly waste judicial resources. Lead Plaintiff is unaware of any other related litigation, and no management difficulties preclude this Action from being maintained as a class action for settlement purposes.

Accordingly, class certification is appropriate here for purposes of the Settlement.

## VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court grants preliminary approval of the proposed Settlement, Lead Plaintiff respectfully requests approval of the following schedule for the Court's review:

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Deadline to commence mailing the Notice and Proof of Claim ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice in *The Wall Street Journal* and over a national newswire service | 7 calendar days after the Notice Date |

- 24 -

| EVENT | TIME FOR COMPLIANCE |
|---|---|
| Posting and filing of Lead Plaintiff's motion for final approval of the Settlement and Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and expenses, and award to Lead Plaintiff | 35 calendar days before the Settlement Hearing |
| Deadline for opting out or submitting an objection | 21 calendar days before the Settlement Hearing |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |
| Posting and filing of Lead Plaintiff's reply in further support of final approval of the Settlement and Plan of Allocation, and in support of Lead Counsel's application for an award of attorneys' fees and expenses, and award to Lead Plaintiff | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | At least 100 calendar days after entry of the Preliminary Approval Order, at the Court's convenience |

## VII.    CONCLUSION

Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will provide for: (i) preliminary approval of the Settlement; (ii) approval of the proposed form and manner of providing notice to the Settlement Class; (iii) certification of the Settlement Class for settlement purposes; and (iv) a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

DATED:  September 9, 2025          Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN

                    s/ Erin W. Boardman
                  ERIN W. BOARDMAN

- 25 -

4920-0761-7884.v1

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 26 -

4920-0761-7884.v1

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 7,563 words.  This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

DATED:  September 9, 2025

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
ERIN W. BOARDMAN

s/ Erin W. Boardman
ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com

Lead Counsel for Lead Plaintiff

4920-0761-7884.v1