UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KEITH CHIN, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

      vs.

KE HOLDINGS INC., COLLEEN A. DE VRIES, GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC and CHINA RENAISSANCE SECURITIES (US) INC.,

                    Defendants.

---

: Civil Action No. 1:21-cv-11196-GHW-BCM
:
: MEMORANDUM OF LAW IN SUPPORT
: OF LEAD PLAINTIFF'S MOTION FOR
: FINAL APPROVAL OF CLASS ACTION
: SETTLEMENT AND APPROVAL OF PLAN
: OF ALLOCATION

4902-9291-7129.v1

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND...........................................................3

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL....................................................3

        A.      The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell* ..............3

        B.      The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23
                and *Grinnell* Factors ..................................................................................6

                1.      The Settlement Class Was Adequately Represented ...................................6

                2.      The Proposed Settlement Was Negotiated by Experienced Counsel
                        at Arm's Length Before an Experienced Mediator......................................8

                3.      The Relief Provided by the Settlement Is Adequate in Light of the
                        Litigation Risks, Costs, and Delays of Trial and Appeal............................9

                4.      Stage of the Proceedings and the Amount of Discovery Completed.........13

                5.      The Recovery Is Reasonable in Light of the Best Possible
                        Recovery and Attendant Risks of Litigation..............................................13

                6.      The Reaction of the Settlement Class Supports Final Approval................14

                7.      Maintaining Class-Action Status Through Trial.......................................15

                8.      Defendants' Ability to Withstand a Greater Judgment..............................16

                9.      Other Rule 23(e)(2) Factors Support Final Approval...............................16

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD
        BE APPROVED BY THE COURT ...............................................................................19

V.      THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS
        FOR PURPOSES OF EFFECTUATING THE SETTLEMENT....................................20

VI.     THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS
        REQUIREMENTS...................................................................................................21

VII.    CONCLUSION........................................................................................................23

4902-9291-7129.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Castagna v. Madison Square Garden, L.P.*,
2011 WL 2208614 (S.D.N.Y. June 7, 2011) ...........................................................................16

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................................................................. *passim*

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014),
*aff'd sub nom. Arbuthnot v. Pierson*,
607 F. App'x 73 (2d Cir. 2015) .....................................................................................15, 16

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001)................................................................................................8

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974),
*abrogated by Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................................3, 19

*In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012)............................................................................9, 13

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ..........................................................................5

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. 2013) .......................................................................................19

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
*aff'd*, 674 F. App'x 37 (2d Cir. 2016)..............................................................................12

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018),
*aff'd*, 822 F. App'x 40 (2d Cir. 2020).......................................................................... *passim*

4902-9291-7129.v1

**Page**

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)...........................................................................10

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ...........................................................................................13

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................5, 10

*In re GSE Bonds Antitrust Litig.*,
2020 WL 3250593 (S.D.N.Y. June 16, 2020) ....................................................................6, 15

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).............................................................................9, 10, 15

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................................................14, 19

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) .......................................................................................4, 12

*In re Jernigan Cap., Inc. Sec. Litig.*,
No. 1:20-cv-09575-JLR-KHP, ECF 154 (S.D.N.Y. May 29, 2025) ......................................18

*In re Merrill Lynch Tyco Rsch. Sec. Litig.*,
249 F.R.D. 124 (S.D.N.Y. 2008) ...........................................................................................21

*In re Namenda Direct Purchaser Antitrust Litig.*,
462 F. Supp. 3d 307 (S.D.N.Y. 2020)..................................................................................5, 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 F. App'x 760 (2d Cir. 2020) .........................................................................................6, 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019)...............................................................................................5

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ................................................................ *passim*

*In re Sony SXRS Rear Projection Television Class Action Litig.*,
2008 WL 1956267 (S.D.N.Y. May 1, 2008) .........................................................................16

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................................12

4902-9291-7129.v1

**Page**

*In re Veeco Instruments Inc. Sec. Litig.*,
   2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007)...................................................................14, 20

*In re XL Fleet Corp. Sec. Litig.*,
   2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024)...........................................................................18

*Lokman v. Azure Power Glob. Ltd.*,
   2025 WL 2627124 (S.D.N.Y. Sept. 8, 2025)............................................................................17

*Maley v. Del Glob. Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................14, 18

*McIntosh v. Katapult Holdings, Inc.*,
   2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) ................................................................. *passim*

*Mikhlin v. Oasmia Pharm. AB*,
   2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) .............................................................................12

*Pearlstein v. Blackberry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022).................................................................3, 18, 23

*Rodriguez v. CPI Aerostructures, Inc.*,
   2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)........................................................................9, 23

*Skiadas v. Acer Therapeutics, Inc.*,
   No. 1:19-cv-06137-GHW, ECF 136 (S.D.N.Y. Jan. 7, 2022)..................................................18

*Synder v. Ocwen Loan Servicing, LLC*,
   2019 WL 2103379 (N.D. Ill. May 14, 2019) .............................................................................6

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003) .................................................................................................5

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ...............................................................................................21

*Volino v. Progressive Cas. Ins. Co.*,
   2025 WL 733251 (S.D.N.Y. Mar. 7, 2025) .........................................................................8, 21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005),
   *superseded by rule as stated in Moses v. N.Y. Times Co.*,
   79 F.4th 235 (2d Cir. 2023) ............................................................................................ *passim*

4902-9291-7129.v1

**Page**

*Xu v. Gridsum Holding*,
2024 WL 5301450 (S.D.N.Y. Apr. 3, 2024)..............................................................17

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014)................................................................3

*Yuzary v. HSBC Bank USA, N.A.*,
2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ...........................................................5, 15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§77k.............................................................................................................................11
§77z-1(a)(4) .............................................................................................1, 17, 19, 22
§77z-1(a)(7) ......................................................................................................... 21, 22

Federal Rules of Civil Procedure
Rule 23 ...................................................................................................6, 9, 21, 22
Rules 23(a)...............................................................................................................20, 21
Rules 23(b)(3) ......................................................................................................20, 21
Rule 23(c)(1)(C).........................................................................................................15
Rule 23(c)(2)(B)..............................................................................................21, 22, 23
Rule 23(e)(1)(B)..........................................................................................................21
Rule 23(e)(2) ........................................................................................................ *passim*
Rule 23(e)(2)(A) ...........................................................................................................6
Rule 23(e)(2)(B)............................................................................................................8
Rule 23(e)(2)(C)(i)................................................................................................5, 9, 16
Rule 23(e)(2)(C)(ii)..................................................................................................5, 16
Rule 23(e)(2)(C)(iii)................................................................................................5, 16
Rule 23(e)(2)(C)(iv)................................................................................................5, 16
Rule 23(e)(2)(D) ....................................................................................................5, 17
Rule 23(e)(3).......................................................................................................1, 3, 4, 21

**SECONDARY AUTHORITIES**

*Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*,
Edward Flores and Svetlana Starykh
(NERA Economic Consulting Jan. 22, 2025)...........................................................2

*Securities Class Action Settlements, 2024 Review & Analysis*,
Laarni Bulan and Eric Tam
(Cornerstone Research 2025)..................................................................................14

4902-9291-7129.v1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, lead plaintiff Saskatchewan Healthcare Employees' Pension Plan ("SHEPP" or "Lead Plaintiff") respectfully submits this memorandum of law in support of its motion for final approval of the Settlement and approval of the Plan of Allocation.[1]

## I.      PRELIMINARY STATEMENT

After extensive litigation and substantial arm's-length negotiations overseen by an experienced mediator, Lead Plaintiff and Lead Counsel obtained a $4.95 million cash recovery (the "Settlement") for the Settlement Class.  The Settlement represents an excellent result for the Settlement Class and should be approved as fair, reasonable, and adequate.

For over three years, Lead Plaintiff and Lead Counsel diligently prosecuted this Action on behalf of the Settlement Class: drafting and filing amended complaints; successfully, in part, defeating Defendants' motion to dismiss; negotiating the appropriate scope of discovery; moving for class certification; and participating in arm's-length negotiations overseen by David M. Murphy of Phillips ADR, a highly experienced mediator.  Through these efforts, Lead Plaintiff and Lead Counsel developed a deep and thorough understanding of the facts and the relative strengths and weaknesses of Lead Plaintiff's claims.

While Lead Plaintiff and Lead Counsel believe in the merits of the claims asserted in this Action, they recognized that continued litigation posed significant risks, as Defendants vehemently deny liability and damages.  Defendants argued that if they prevailed on any of these arguments at

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, filed on September 9, 2025 (ECF 163-1) (the "Stipulation") and in the accompanying Declaration of Erin W. Boardman in Support of: (1) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) (the "Boardman Declaration" or "Boardman Decl.").  Unless otherwise noted, internal citations are omitted and emphasis is added.

summary judgment or trial, the Settlement Class stood to recover no (or significantly reduced) damages.

With the foregoing in mind, and based on years of experience prosecuting securities class actions, Lead Counsel supports the Settlement.  The Settlement recovers approximately 18% of the maximum estimated recoverable damages of $27 million, an outstanding recovery under any measure.[2]  Moreover, Lead Plaintiff supports the Settlement, and, although the deadline to object to the Settlement has not yet passed, there have been no objections thus far.[3]  Nor have any Settlement Class Members sought exclusion from the Settlement Class.[4]  *See* Declaration of Ross D. Murray Regarding: (A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date ("Murray Decl."), ¶16, submitted herewith.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation.  The Plan of Allocation was developed in consultation with Lead Counsel's damages expert and was detailed in the Court-approved Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses ("Notice").  The Plan of Allocation treats Settlement Class Members equitably and provides for the *pro rata* distribution of the Net Settlement Fund to Authorized

---

[2]    *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 26, fig. 23 (NERA Economic Consulting Jan. 22, 2025) (attached as Ex. A hereto).

[3]    The deadline to object to the Settlement and Plan of Allocation is February 6, 2026.  If any objections are timely filed, Lead Counsel will respond in its reply brief, to be filed on February 20, 2026.

[4]    One request for exclusion was submitted by a putative Settlement Class Member, but it does not provide any evidence of membership in the Settlement Class, and is therefore invalid.

- 2 -

4902-9291-7129.v1

Claimants based on their recognized losses. Boardman Decl., ¶¶81-86. To date, there have been no objections to the proposed Plan of Allocation.

Given the risks to proceeding and the recovery obtained, the Court should grant final approval of the Settlement, approve the Plan of Allocation, and confirm its certification of the Settlement Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The Boardman Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation of the Net Settlement Fund.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Legal Standards for Final Approval Under Rule 23(e) and *Grinnell*

Rule 23(e) of the Federal Rules of Civil Procedure provides for final approval of a class action settlement that is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Second Circuit there is a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *see also Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *2 (S.D.N.Y. Sept. 29, 2022) ("'The law favors compromise and settlement of class action suits.'"); *Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *3 (S.D.N.Y. Sept. 4, 2014) ("When exercising discretion to approve a settlement, courts are mindful of the strong judicial policy in favor of settlements.") (citation modified); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors

- 3 -

settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").  In considering final approval of a class action settlement, courts in the Second Circuit have held that a court should examine both the negotiating process leading to the settlement and the settlement's substantive terms.  *Wal-Mart*, 396 F.3d at 116; *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012).

In determining whether a proposed settlement is "fair, reasonable, and adequate," courts consider whether:

> (A)    the class representatives and class counsel have adequately represented the class;
>
> (B)    the proposal was negotiated at arm's length;
>
> (C)    the relief provided for the class is adequate, taking into account:
>
> > (i)    the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Courts in the Second Circuit also consider the following factors, which overlap with the Rule 23(e)(2) factors, in determining whether to grant final approval of a class action settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9)

4902-9291-7129.v1

the range of reasonableness of the settlement fund . . . in light of all the attendant risks of litigation.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors . . . .'"); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("[T]here is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors, as they both guide a court's substantive, as opposed to procedural, analysis.").

The Rule 23(e)(2) and *Grinnell* factors are analyzed holistically. *See Moses*, 79 F.4th at 243 ("Courts . . . must consider the four factors outlined in Rule 23(e)(2) holistically . . . ."); *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *8 (S.D.N.Y. Dec. 13, 2024) ("Importantly, 'not every factor must weigh in favor of [the] settlement, rather the court should consider the totality of these factors in light of the particular circumstances.'") (alteration in original); *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) ("All nine factors need not be satisfied, rather, the court should consider the totality of these factors in light of the particular circumstances."). "'Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.'" *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *4 (S.D.N.Y. Oct. 2, 2013) (alterations in original); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (Courts should not substitute their "'business judgment for that of counsel, absent evidence of fraud or overreaching.'").

The Court considered and found these factors warranted providing notice to the Class. *See* ECF 170. The Court's "conclusions [at preliminary approval] stand and counsel equally in favor of final approval now." *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prods. Liab.*

- 5 -

*Litig.*, 2019 WL 2554232, at \*2 (N.D. Cal. May 3, 2019); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at \*1 (S.D.N.Y. June 16, 2020) ("The Court in its opinion and orders providing the basis for its preliminary approval . . . has already explained in detail why the Rule 23 and *Grinnell* factors support approval . . . . The Court re-adopts that analysis here, and limits its focus to those few developments since . . . preliminary approval . . . ."); *see also Synder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at \*4 (N.D. Ill. May 14, 2019) (noting at final approval that "[s]ignificant portions of the Court's [preliminary approval] analysis remain materially unchanged").

B. **The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23 and *Grinnell* Factors**

1. **The Settlement Class Was Adequately Represented**

In approving a settlement, courts are required to consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The adequacy assessment typically "'entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest[s] of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation.'" *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at \*2 (S.D.N.Y. July 21, 2020); *see also In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764 (2d Cir. 2020) ("[T]he primary factors [in assessing adequacy] are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'").

These requirements are readily satisfied here. Lead Plaintiff's claims "are typical of and coextensive with those of other [Settlement] Class Members and [it] has no interests antagonistic to those of other [Settlement] Class Members." *Signet*, 2020 WL 4196468, at \*2. Like all other Settlement Class Members, Lead Plaintiff purchased KE Holdings ADS pursuant to an allegedly false and misleading registration statement. Lead Plaintiff has "claims that are typical of and

- 6 -

coextensive with those of other [Settlement] Class Members and has no interests antagonistic to those of other [Settlement] Class Members." *Id.* Therefore, Lead Plaintiff was "sufficiently motivated" to obtain the largest possible recovery for the Settlement Class. *See Patriot*, 828 F. App'x at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member").

As detailed in Lead Plaintiff's declaration, Lead Plaintiff actively participated in the prosecution of this Action, including by reviewing pleadings, providing document discovery, and participating in numerous discussions with Lead Counsel regarding case developments, litigation strategy, and settlement negotiations. *See* Declaration of Pam Peters ("Peters Decl."), ¶¶3-4, submitted herewith.

Lead Counsel has extensive experience litigating complex securities class actions. *See* accompanying Declaration of Erin W. Boardman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses, Ex. F (Firm Resume).

Lead Counsel also adequately represented the Settlement Class in this Action, vigorously prosecuting this case for over three years. *See generally* Boardman Decl. Lead Counsel conducted a thorough investigation and filed detailed amended complaints. Lead Counsel also opposed Defendants' motion to dismiss, moved for class certification, propounded document requests, and responded to Defendants' discovery requests. The parties also vigorously negotiated the appropriate scope of discovery in light of the Court's ruling on Defendants' motion to dismiss. Lead Counsel also participated in settlement negotiations and drafted the settlement-related documents. *Id.* Through these efforts, Lead Counsel was able to obtain an excellent recovery for the Settlement Class.

4902-9291-7129.v1

Accordingly, the adequacy factor is satisfied and weighs in favor of final approval of the Settlement.

**2.    The Proposed Settlement Was Negotiated by Experienced
Counsel at Arm's Length Before an Experienced Mediator**

Rule 23(e)(2)(B), which analyzes whether the settlement was the product of arm's length negotiations, favors approval. *See Moses*, 79 F.4th at 243 ("[T]he arms-length quality of the negotiations remain a factor in favor of approving the settlement (one whose absence would count significantly against approval).").

Here, the proposed Settlement was the result of arm's-length negotiations, and was only reached after more than three years of hard fought litigation. On March 27, 2025, the Parties participated in a full-day, in-person mediation overseen by David Murphy, an experienced mediator. In advance of the mediation, the Parties submitted and exchanged opening and reply mediation statements, supported by expert damages analyses. During the mediation session, the Parties engaged in substantive discussions regarding the documentary evidence and their respective positions on liability and damages. A settlement was not reached during that session, but the Parties thereafter continued their negotiations through Mr. Murphy and on April 7, 2025, accepted Mr. Murphy's recommendation to settle the Action for $4.95 million in cash.

Accordingly, the Settlement warrants approval because it was the result of arm's-length negotiations by experienced counsel overseen by a mediator, whose involvement "helps to ensure that the proceedings were free of collusion and undue pressure." *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see also Volino v. Progressive Cas. Ins. Co.*, 2025 WL 733251, at *2 (S.D.N.Y. Mar. 7, 2025) ("[s]ettlement [wa]s procedurally fair because it was reached through vigorous, arm's-length negotiations that were overseen by a neutral mediator and only after experienced counsel had thoroughly evaluated the merits of Plaintiffs' claims through factual and

4902-9291-7129.v1

legal investigation and extensive litigation"); *In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (settlement was procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *In re Bear Stearns Co., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding settlement procedurally fair where the parties engaged in arm's length negotiations before an experienced mediator).

### 3. The Relief Provided by the Settlement Is Adequate in Light of the Litigation Risks, Costs, and Delays of Trial and Appeal

Courts must consider the adequacy of a settlement in light of "the costs, risks, and delay of trial and appeal" and other factors. Fed. R. Civ. P. 23(e)(2)(C)(i). This Rule 23 factor overlaps with the first, fourth, and fifth *Grinnell* factors (*i.e.*, the complexity, expense, and likely duration of the litigation; the risks of establishing liability; and the risks of establishing damages). *See Rodriguez v. CPI Aerostructures, Inc.*, 2023 WL 2184496, at *11 (E.D.N.Y. Feb. 16, 2023) ("'The first factor set forth under Rule 23(e)(2)(C), the "costs, risks, and delay of trial and appeal," "subsumes several Grinnell factors," including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages . . . .'"); *Namenda*, 462 F. Supp. 3d at 311 ("'The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's Grinnell factors . . . .'"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693-94 (S.D.N.Y. 2019) (analyzing the adequacy factor alongside the first, fourth, and fifth *Grinnell* factors). As detailed below, each of these factors weigh in favor of final approval.

#### a. The Complexity, Expense, and Likely Duration of Litigation

"Courts recognize that securities class actions are generally complex and expensive to prosecute," and litigating such actions "is notably difficult and notoriously uncertain." *Signet*, 2020

4902-9291-7129.v1

WL 4196468, at *4 (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019); *see also In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (same).  This Action is no different.

This case involved complex and disputed issues concerning, among other things, falsity, materiality, negative loss causation, and damages.  This case arose from alleged misrepresentations in the Offering Documents for KE Holdings' Follow-On Offering.  Defendants challenged Lead Plaintiff's standing to pursue the Securities Act claims, and the Exchange Act claims were dismissed.  Although the Court upheld much of Lead Plaintiff's Securities Act claims, it dismissed the Exchange Act claims, and the parties differed on the scope of relevant discovery on the upheld statements.  If Defendants' position was accepted by the Court, Lead Plaintiff would likely have had significant difficulty obtaining the necessary evidence to establish its claims.  Given Defendants' asserted defenses, and their opposition to Lead Plaintiff's standing to pursue Securities Act claims, obtaining class certification or success at summary judgment or trial was by no means guaranteed. Lead Plaintiff would have emphasized Defendants' access to information contrary to the alleged misstatements, but Defendants would have presented strong counterarguments.

The Settlement eliminates the risks of unfavorable outcomes with respect to these and other issues.

### b.     The Risks of Establishing Liability and Damages at Trial

In assessing the fairness, reasonableness, and adequacy of a settlement, "[a] court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'"  *GSE*, 414 F. Supp. 3d at 694; *see also Glob. Crossing*, 225 F.R.D. at 459 ("[T]he Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement.").

- 10 -

4902-9291-7129.v1

To prevail on a §11 claim, Lead Plaintiff must establish all elements of the claim, including falsity and materiality. Defendants need to succeed on only one defense to defeat the entire case.

Lead Plaintiff alleged that Defendants made materially false and misleading statements and/or omissions in the Offering Documents for the Follow-On Offering. Boardman Decl., ¶¶14-21. More specifically, Lead Plaintiff alleges that the Offering Documents materially misstated the number of stores and agents on KE Holdings' platform, because the stated numbers were significantly inflated, and included inactive stores and agents, as well as nonexistent ones. *Id.* Lead Plaintiff alleges that the price of KE Holdings ADS declined when it was disclosed that only a portion of the stores and agents claimed to be on the Company's platform were actually "active" on its platform. *Id.*, ¶¶22-24.

Defendants vehemently disputed liability. They argued that Lead Plaintiff could not prove Defendants made any materially false or misleading statements in the Offering Documents about the number of stores and agents at the time of the Follow-On Offering. They also argued that the Muddy Waters Report was based on methodological flaws, and that any overstatement of the number of stores and agents was nevertheless immaterial.

Defendants also maintained in their opposition to class certification that Lead Plaintiff lacks standing to assert a Securities Act claim, because it cannot trace its ADS to the 35.4 million shares issued in the Follow-On Offering, as opposed to the 121.9 million ADS issued in KE Holdings' initial public offering in August 2020. Defendants claims that all of the ADS were deposited with, and are held in, fungible bulk at DTC.

While Lead Plaintiff and Lead Counsel believe they had meritorious responses, they recognized that Defendants' success on any one of these arguments posed risks to the Settlement Class' ability to recover if the Action continued.

4902-9291-7129.v1

Even if Lead Plaintiff established liability, there was risk and uncertainty that Defendants would prevail on their negative causation defense, significantly limiting recoverable damages. To counter negative causation and prove damages, Lead Plaintiff would have relied heavily on expert testimony. This would have invariably led to *Daubert* challenges and a "battle of the experts" with unpredictable results. *See Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at *6 (E.D.N.Y. Jan. 6, 2021) ("Both parties would present expert testimony on the issue of damages, which makes it 'virtually impossible to predict' which side's testimony would be found more credible, as well as 'which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.'"); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("'[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses.'") (alteration in the original), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *IMAX*, 283 F.R.D. at 193 ("[I]t is well established that damages calculations in securities class actions often descend into a battle of experts."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 579-80 (S.D.N.Y. 2008) ("'In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found . . . .'").

In sum, the Settlement provides the Settlement Class with a substantial and immediate cash benefit while avoiding the risks and costs of continued litigation. Given the absence of any applicable insurance, and the questionability of enforcing a judgment against Chinese assets, approval of the Settlement is appropriate.

- 12 -

4902-9291-7129.v1

### 4. Stage of the Proceedings and the Amount of Discovery Completed

The stage of the proceedings factor examines "'whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement.'" *In re Signet*, 2020 WL 4196468, at \*7 (ellipsis in original).  Here, Lead Plaintiff and Lead Counsel had more than enough information to assess the strengths and weaknesses of Lead Plaintiff's claims, and the propriety of the Settlement.  By the time the Settlement was reached, the Action was well underway: Lead Counsel had defeated in part Defendants' motion to dismiss; moved for class certification; propounded discovery and attempted to negotiate the proper scope of discovery; consulted with an expert on damages; and participated in settlement negotiations with mediator David Murphy.  Therefore, Lead Plaintiff and Lead Counsel "had a sufficient record to intelligently assess the strengths and weakness[es] of their claims and the value of the case," *id.*, which supports final approval of the Settlement.

### 5. The Recovery Is Reasonable in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of a recovery "may not be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'"  *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 162 (S.D.N.Y. 2011).  Moreover, when there are "serious challenges to establishing liability," the best recovery must be adjudged against "the risk of non-recovery." *Facebook*, 343 F. Supp. 3d at 414; *see also Bear Stearns*, 909 F. Supp. 2d at 270.

Here, the $4.95 million Settlement represents an outstanding recovery under any measure. The Settlement represents approximately 18% of the maximum estimated recoverable damages.  *See*

- 13 -

Lead Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Settlement, Certification of the Class, and Approval of Notice to the Class (ECF 162) at 19. The Settlement also far exceeds the median settlement recovery of 7.9% of statutory damages in Securities Act settlements between 2015 and 2024. Laarni Bulan and Eric Tam, *Securities Class Action Settlements, 2024 Review & Analysis*, at 8, fig. 6 (Cornerstone Research 2025) (attached as Ex. B hereto). Finally, the $4.95 million Settlement is within the range of reasonableness because it was "agreed upon" by Lead Counsel after "careful consideration" of the substantial risks of no recovery. *See Facebook*, 343 F. Supp. 3d at 414 (finding agreed upon $35 million settlement within the range of reasonableness where there was a risk of obtaining zero or minimal damages).

### 6. The Reaction of the Settlement Class Supports Final Approval

"'[T]he favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in [the] *Grinnell* inquiry' into the fairness and adequacy of the Settlement." *In re Signet*, 2020 WL 4196468, at *6 (alterations in original); *see also In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *6 (S.D.N.Y. Dec. 19, 2014) ("The reaction of the Class to the Settlement is a significant factor in assessing its fairness and adequacy." The absence of objections and opt outs "provides evidence of Class Members' approval of the terms of the Settlement and desire to share in the proceeds thereof."); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *7 (S.D.N.Y. Nov. 7, 2007) ("It is 'well-settled' that the reaction of the class to a settlement is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("[T]he reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

- 14 -

While the deadline for submitting objections has not yet passed, there have been no objections to the Settlement. *See* Murray Decl., ¶16. Only one invalid request for exclusion was received. *Id.* The Settlement Class' reaction thus far weighs in favor of approval. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) ("The absence of objections may itself be taken as evidencing the fairness of a settlement.") (citation modified), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015); *see also GSE*, 2020 WL 3250593, at *2 ("'A favorable reception by the Class constitutes "strong evidence" that a proposed settlement is fair.'"); *Yuzary*, 2013 WL 5492998, at *6 ("This favorable response [*i.e.*, no objections and only eight opt outs] demonstrates that the class approves of the settlement and supports final approval."); *Facebook*, 343 F. Supp. 3d at 410 ("The overwhelmingly positive reaction – or absence of a negative reaction – weighs strongly in favor of [final approval].").

### 7.    Maintaining Class-Action Status Through Trial

A class certification order "may be altered or amended before final judgment." *See* Fed. R. Civ. P. 23(c)(1)(C). Consequently, courts routinely find that this factor weighs in favor of final approval when there is a risk that defendants would oppose class certification. *See, e.g.*, *Christine Asia*, 2019 WL 5257534, at *13 (finding this factor weighed in favor of approval where there remained a risk that defendants would oppose class certification if the case went to trial and "a class certification order may be altered or amended [at] any time before a decision on the merits"); *GSE*, 414 F. Supp. 3d at 694 ("Although the 'risk of maintaining a class through trial is present in [every] class action,' 'this factor [nevertheless] weighs in favor of settlement' where 'it is likely that defendants would oppose class certification' if the case were to be litigated.") (alterations in original).

- 15 -

Lead Plaintiff's class certification motion was pending at the time the settlement was reached. Defendants vigorously opposed the motion, arguing that neither Lead Plaintiff nor any other member of the proposed class had standing to pursue Securities Act claims, as they could not trace their KE Holdings ADSs to the Offering Documents for the Follow-On Offering. Boardman Decl., ¶¶55-56. Failure to obtain class certification would effectively end the Action. Therefore, this factor supports approval of the Settlement.

### 8.    Defendants' Ability to Withstand a Greater Judgment

A defendant's ability to withstand a potentially larger settlement "does not necessarily preclude a finding that the settlement is fair." *McIntosh*, 2024 WL 5118192, at *11; *see also Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (S.D.N.Y. June 7, 2011) ("'[D]efendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"); *Aeropostale*, 2014 WL 1883494, at *9 ("Courts . . . generally do not find the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement."). Moreover, a "defendant is not required to 'empty its coffers' before a settlement can be found adequate." *In re Sony SXRS Rear Projection Television Class Action Litig.*, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).

Here, even if Defendants possessed the ability to pay a larger settlement, in light of the other factors favoring approval, the Court may find this factor neutral.

### 9.    Other Rule 23(e)(2) Factors Support Final Approval

Rule 23(e)(2) requires courts to consider the following additional factors: (i) the effectiveness of the proposed method of distributing relief to the class; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) the equitable treatment of class members. *See* Fed. R. Civ. P.

- 16 -

23(e)(2)(C)(i)-(iv); Fed. R. Civ. P. 23(e)(2)(D).  Each of these factors support final approval of the proposed Settlement.

### a.  The Proposed Method of Distributing Relief Is Effective

The methods for processing Settlement Class Members' Claim Forms and distributing relief to Authorized Claimants is well-established and effective.  Here, the Court-appointed Claims Administrator, Verita Global, will review and process Claim Forms under the guidance of Lead Counsel, allow claimants the opportunity to cure any deficiencies in their Claim Forms or request the Court's review of a denial of their Claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the proposed Plan of Allocation.  *See* Stipulation, ECF 163-1, ¶¶24, 28; Murray Decl., Ex. A (Notice, at 10-12).  This proposed method of distributing settlement proceeds is "standard in securities and other class actions and is effective."  *Christine Asia*, 2019 WL 5257534, at *14.

### b.  The Proposed Award of Attorneys' Fees Is Fair and Reasonable

As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) ("Fee Memorandum"), Lead Counsel is applying for an award of 33-1/3% of the Settlement Fund as compensation for the services it rendered on behalf of the Settlement Class, as well as payment of litigation costs and expenses in the amount of $72,924.02.  The attorneys' fees requested by counsel are reasonable in light of the work performed and the results obtained, and a 33-1/3% fee award is consistent with fees awarded by courts in the Second Circuit, including in this District and by this Court, in similar common-fund cases.  *See, e.g.*, *Lokman v. Azure Power Glob. Ltd.*, 2025 WL 2627124, at *4-*5 (S.D.N.Y. Sept. 8, 2025) (Woods, J.) (awarding attorneys' fees of 33-1/3% of the settlement fund); *Xu v. Gridsum Holding*, 2024 WL 5301450, at *1 (S.D.N.Y. Apr.

- 17 -

4902-9291-7129.v1

3, 2024) (Woods, J.) (awarding attorneys' fees of 33-1/3% of the settlement fund); *Skiadas v. Acer Therapeutics, Inc.*, No. 1:19-cv-06137-GHW, ECF 136, ¶1 (S.D.N.Y. Jan. 7, 2022) (Woods, J.) (awarding attorneys' fees of one-third of the settlement fund) (attached as Ex. D to the Fee Memorandum); *In re Jernigan Cap., Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 154, ¶4 (S.D.N.Y. May 29, 2025) (awarding attorneys' fees of 33-1/3% of the settlement fund) (attached as Ex. B to the Fee Memorandum); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33-1/3% of the settlement fund); *McIntosh*, 2024 WL 5118192, at *11-*13 (awarding attorneys' fees of 33-1/3% of the settlement fund); *Pearlstein*, 2022 WL 4554858, at *10 ("Class counsel's request for one-third of the gross settlement fund is reasonable within this circuit."); *Maley*, 186 F. Supp. 2d at 370 ("Petitioners' request [for 33-1/3% of the class settlement fund] is well within th[e range of fees awarded by courts in the Second Circuit] and falls comfortably within the range of fees typically awarded in securities class actions.").  Notably, the Court's consideration of the requested attorneys' fees is separate from its consideration of approval of the Settlement, the Settlement may not be terminated based on the Court's ruling on attorneys' fees, and the Settlement Class was notified of the terms of the proposed award of attorneys' fees, including the timing of such payments.  *See* Stipulation, ¶¶12, 18.

### c.    Identification of Agreements in Connection with the Settlement

As previously disclosed, the Settling Parties have entered into a confidential supplemental agreement pursuant to which KE Holdings may terminate the Settlement if requests for exclusion (*i.e.*, opt-outs) reach a certain threshold.  *See* Stipulation, ¶39.  This type of agreement is standard in securities class action settlements and has "no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at *15.

4902-9291-7129.v1

#### d. The Settlement Treats All Settlement Class Members Equitably Relative to One Another

The Settlement treats Settlement Class Members equitably. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, their, or its *pro rata* share of the Net Settlement Fund based on their recognized losses as calculated by the Plan of Allocation. Lead Plaintiff is subject to the same distribution formula as every other Settlement Class Member.[5]

In sum, the Rule 23(e)(2) and *Grinnell* factors support final approval of the Settlement.

## IV. THE PLAN OF ALLOCATION IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approving a Plan of Allocation is the same as the standard for approving a settlement – namely, the plan must be "fair, reasonable, and adequate." *Signet*, 2020 WL 496468 at *13; *see also Guevoura Fund Ltd. v. Sillerman,* 2019 WL 6889901, at *10 (S.D.N.Y. Dec. 18, 2019); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 157-58 (S.D.N.Y. 2013) ("The plan of allocation is subject to the same test of fairness, reasonableness, and adequacy as the settlement itself."). A plan of allocation "'need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.'" *McIntosh*, 2024 WL 5118192, at *11; *Christine Asia*, 2019 WL 5257534, at *15; *see also Advanced Battery*, 298 F.R.D. at 180 ("'When formulated by competent and experienced class counsel,' a plan for allocation of net settlement proceeds 'need have only a reasonable, rational basis.'"); *In re Hi-Crush Partners L.P.*, 2014 WL 7323417, at *10 (same).

Here, the proposed Plan of Allocation, which was developed in consultation with Lead Counsel's damages expert, is fair, reasonable, and adequate. *See* Boardman Decl., ¶82; *Facebook*,

---

[5] As detailed in the Fee Memorandum, Lead Plaintiff is seeking an award pursuant to 15 U.S.C. §77z-1(a)(4) in connection with its representation of the Settlement Class in this matter.

4902-9291-7129.v1

343 F. Supp. 3d at 414 ("Plaintiffs' Plan of Allocation was prepared by experienced counsel along with a damages expert – both indicia of reasonableness."). The proposed Plan of Allocation provides that the Net Settlement Fund will be distributed to Authorized Claimants on a *pro rata* basis based on their recognized losses. Boardman Decl., ¶¶82-86; *see also McIntosh*, 2024 WL 5118192, at *11 (approving plan of allocation that distributed settlement funds to class members on a *pro rata* basis to class members as appropriate and consistent with prior cases). Moreover, the Plan of Allocation was set forth in the Notice and, to date, no objections to the Plan of Allocation have been filed. This favorable response from the Settlement Class supports approval of the Plan of Allocation as fair and reasonable. *See In re Signet*, 2020 WL 4196468, at *6 ("The reaction of the Class also supports approval of the Plan of Allocation."); *In re Vecco*, 2007 WL 4115809, at *14 ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation.").

## V. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT

In its motion for preliminary approval of the Settlement, Lead Plaintiff requested that the Court certify the Settlement Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to object to the Settlement, request exclusion from the Settlement Class, or submit Proofs of Claim, could be issued. *See* ECF 162 at 22-24. In the Preliminary Approval Order, the Court addressed the requirements for class certification as set forth in Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure. The Court found that Lead Plaintiff had met the requirements for certification of the Settlement Class for purposes of settlement. ECF 170, ¶¶2-3. In addition, the Court preliminarily certified Lead Plaintiff as Settlement Class Representative and Lead Counsel as Settlement Class Counsel. *Id.*, ¶4.

4902-9291-7129.v1

Nothing has changed since the Court's entry of the Preliminary Approval Order to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Thus, for all of the reasons stated in Lead Plaintiff's motion for preliminary approval (incorporated herein by reference), Lead Plaintiff respectfully requests that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and appoint Lead Plaintiff as Settlement Class Representative and Lead Counsel as Settlement Class Counsel.

## VI.    THE NOTICE OF SETTLEMENT SATISFIES RULE 23 AND DUE PROCESS REQUIREMENTS

Rule 23(e) requires that notice of a proposed class action settlement be given to class members in a "reasonable manner," Fed. R. Civ. P. 23(e)(1)(B), and that the notice be "the best notice . . . practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort[s]." Fed. R. Civ. P. 23(c)(2)(B). In addition, a notice of settlement must satisfy due process and include the information outlined in Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §77z-1(a)(7). A notice that fairly apprises "'members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings'" satisfies Rule 23(e) and due process. *Wal-Mart*, 396 F.3d at 114; *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26-27 (2d Cir. 2014); *see also In re Merrill Lynch Tyco Rsch. Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008) ("Notice is generally deemed reasonable if the average person understands the terms of the proposed settlement and the options provided to class members thereunder.") The notice plan used here satisfies these requirements. *See Volino*, 2025 WL 733251, at *2 (finding notice program "effectuated pursuant to the Preliminary Approval Order satisfies the requirements of Federal Rule of Civil Procedure 23 and due process and constitutes the best notice practicable under the circumstances").

- 21 -

4902-9291-7129.v1

In accordance with the Preliminary Approval Order, the Claims Administrator, Verita Global, disseminated over 37,200 copies of the Court-approved Notice and Claim Form ("Claim Package") to potential Settlement Class Members and nominees. Murray Decl., ¶11.[6] The Claims Administrator also published the Summary Notice in *The Wall Street Journal* and transmitted it over *Business Wire*. *Id.*, ¶12. In addition, the Claims Administrator provided potential Settlement Class Members with the Court-approved Notice online through the Settlement website. *Id.*, ¶14.

The Court-approved Notice provides Settlement Class Members with the necessary information to make an informed decision about the proposed Settlement. The Notice provides recipients with information concerning: (i) the nature of the Action and the claims asserted therein; (ii) the definition of the Settlement Class; (iii) the essential terms of the Settlement; (iv) the proposed Plan of Allocation and estimated average per ADS recovery; (v) the maximum amount of attorneys' fees and expenses that will be sought; (vi) Settlement Class Members' rights to request exclusion from the Settlement Class or to object to the Settlement, the Plan of Allocation, and/or a request for attorneys' fees or expenses (including the method and timing for requesting exclusion or objecting to the Settlement); (vii) the binding effect of a judgment on Settlement Class Members; and (viii) the contact information for Lead Counsel and the Claims Administrator. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. §77z-1(a)(7). The Notice also provides information concerning how to submit a Proof of Claim and the date, time, and location of the Settlement Hearing.

Here, the Court-approved notice plan, which combines individual email or First-Class Mail notice with publication of a Summary Notice in a widely-circulated publication and internet newswire, satisfies the requirements of Rule 23, due process, and the PSLRA, and constitutes the

---

[6] Verita was also informed by one institution that it anticipated sending over 39,800 Claim Packages to potential Settlement Class Members.

- 22 -

4902-9291-7129.v1

"best notice . . . practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B); *see also*

*Rodriguez*, 2023 WL 2184496, at \*9-\*10 (finding First-Class Mail combined with print and internet-

based publication of settlement was "the best notice practicable under the circumstances");

*Pearlstein*, 2022 WL 4554858, at \*8-\*9 (Rule 23(c)(2)(B) satisfied where notice plan provided for

mail and/or email notice and publication notice); *In re Signet*, 2020 WL 4196468, at \*14 ("Th[e]

combination of individual mail to all Class Members . . . supplement[ed] by notice in an appropriate,

widely circulated publication, transmitted over the newswire, and set forth on internet websites, was

'the best notice . . . practicable under the circumstances.'") (ellipsis in original).

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant final

approval of the proposed Settlement and Plan of Allocation, and certify the Settlement Class for

settlement purposes.

DATED:  January 23, 2026                      Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN


                                              *s/ Erin W. Boardman*
                                              ERIN W. BOARDMAN

                                              58 South Service Road, Suite 200
                                              Melville, NY  11747
                                              Telephone:  631/367-7100
                                              631/367-1173 (fax)
                                              srudman@rgrdlaw.com
                                              drosenfeld@rgrdlaw.com
                                              eboardman@rgrdlaw.com

- 23 -

4902-9291-7129.v1

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 24 -

4902-9291-7129.v1

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 7,052 words. This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

DATED: January 23, 2026

ROBBINS GELLER RUDMAN
& DOWD LLP
ERIN W. BOARDMAN

_s/ Erin W. Boardman_
ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
eboardman@rgrdlaw.com

4902-9291-7129.v1