UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | |
|---|---|
| KEITH CHIN, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. 1:21-cv-11196-GHW-BCM |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AN AWARD TO LEAD PLAINTIFF PURSUANT TO 15 U.S.C. §77z-1(a)(4) |
| vs. | |
| KE HOLDINGS INC., COLLEEN A. DE VRIES, GOLDMAN SACHS (ASIA) L.L.C., MORGAN STANLEY & CO. LLC, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC and CHINA RENAISSANCE SECURITIES (US) INC., | |
| Defendants. | |

---------------------------------------------------------------x

4933-8729-3577.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................................1

II.   HISTORY AND BACKGROUND OF THE ACTION .........................................................3

III.  ARGUMENT.............................................................................................................3

    A.  Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses
        from the Common Fund...............................................................................3

    B.  The Court Should Apply the Percentage Method in Awarding Attorneys'
        Fees to Lead Counsel .................................................................................4

    C.  The Requested 33-1/3% Fee Is Consistent with Fee Awards in Common
        Fund Cases in Courts in the Second Circuit ...............................................6

    D.  The Lodestar Cross-Check Confirms the Reasonableness of the Requested
        Attorneys' Fees .........................................................................................8

    E.  The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable...............9

        1.  The Time and Labor Expended by Counsel ...................................9

        2.  The Magnitude and Complexity of the Litigation .......................11

        3.  The Risks of the Litigation .........................................................12

        4.  The Quality of Representation Supports the Requested Fee .......15

        5.  The Requested Fee in Relation to the Settlement ......................16

        6.  Public Policy Considerations ......................................................16

        7.  The Settlement Class' Reaction to the Fee Request Supports the
            Requested Fee .............................................................................16

        8.  The Fee Request Is Supported by Lead Plaintiff ........................17

IV.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
      NECESSARY TO THE PROSECUTION OF THE ACTION.........................................17

V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15
      U.S.C. §77z-1(a)(4)..............................................................................................18

VI.   CONCLUSION........................................................................................................20

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anwar v. Fairfield Greenwich Ltd.*,
   2012 WL 1981505 (S.D.N.Y. June 1, 2012) ...............................................................8

*Blum v. Stenson*,
   465 U.S. 886 (1984)......................................................................................................6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980).....................................................................................................3, 4

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)............................................................11

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014),
   *aff'd sub nom. Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ....................................................................... *passim*

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011)........................................................................5

*Erlandson v. Triterras, Inc.*,
   No. 7:20-cv-10795-CS, ECF 82 (S.D.N.Y. Sept. 8, 2022)........................................7

*Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*,
   925 F.3d 63 (2d Cir. 2019)..........................................................................................4, 5

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................... *passim*

*Guevoura Fund Ltd. v. Sillerman*,
   2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ...........................................................7, 11, 12

*Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings*,
   2022 WL 4136175 (S.D.N.Y. Feb. 14, 2022)..............................................................7

*Hayes v. Harmony Gold Mining Co.*,
   509 F. App'x 21 (2d Cir. 2013) ...................................................................................5

*Hicks v. Stanley*,
   2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..............................................................4

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..........................................................................6, 12

4933-8729-3577.v1

**Page**

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)............................................................................11, 14

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012).........................................................................................9

*In re China Sunergy Sec. Litig.*,
   2011 WL 1899715 (S.D.N.Y. May 13, 2011) ..........................................................................17

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014).........................................................................................8

*In re Deutsche Bank AG Sec. Litig.*,
   2020 WL 3162980 (S.D.N.Y. June 11, 2020) ....................................................................7, 19

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015),
   *aff'd*, 674 F. App'x 37 (2d Cir. 2016)................................................................................7, 11

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................................................12, 17, 18

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................................18

*In re GSE Bonds*,
   2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...........................................................12, 16, 18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...........................................................................7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003)......................................................................................18

*In re Jernigan Cap., Inc. Sec. Litig.*,
   No. 1:20-cv-09575-JLR-KHP, ECF 154 (S.D.N.Y. May 29, 2025) ........................................6

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .........................................................................19

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .......................................................................................13, 15

4933-8729-3577.v1

**Page**

*In re NYSE Specialists Sec. Litig.*,
No. 1:03-cv-08264, ECF 38 (S.D.N.Y. June 10, 2013)..............................................7

*In re Parking Heaters, Antitrust Litig.*,
2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)............................................................4

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................................5

*In re Perrigo Co. PLC Sec. Litig.*,
2022 WL 500913 (S.D.N.Y. Feb. 18, 2022)..............................................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
985 F. Supp. 410 (S.D.N.Y. 1997)..........................................................................12

*In re Qudian Inc. Sec. Litig.*,
2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...........................................................19

*In re Revolution Lighting Techs., Inc. Sec. Litig.*,
2020 WL 4596811 (S.D.N.Y. Aug. 11, 2020)..........................................................19

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ...............................................16, 17, 20

*In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*,
2022 WL 525807 (D.N.J. Feb. 22, 2022) .................................................................9

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)..............................................6, 13, 15, 17

*In re XL Fleet Corp. Sec. Litig.*,
2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024).........................................................7, 19

*Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*,
2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) .............................................................7

*Kohari v. MetLife Grp.*,
2025 WL 100898 (S.D.N.Y. Jan. 15, 2025) .....................................................7, 16, 19

*Lea v. Tal Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021)...........................................................12

*Lokman v. Azure Power Glob. Ltd.*,
2025 WL 2627124 (S.D.N.Y. Sept. 8, 2025)..........................................................6, 19

- iv -

**Page**

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................6, 7, 17

*McIntosh v. Katapult Holdings, Inc.*,
    2024 WL 5118192 (S.D.N.Y. Dec. 13, 2024) .............................................7, 11, 16, 19

*Mo. v. Jenkins by Agyei*,
    491 U.S. 274 (1989)..................................................................................................6

*Nichols v. Noom, Inc.*,
    2022 WL 2705354 (S.D.N.Y. July 12, 2022) ........................................................4, 8

*Pearlstein v. BlackBerry Ltd.*,
    2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)...........................................................8

*Savoie v. Merchs. Bank*,
    166 F.3d 456 (2d Cir. 1999).....................................................................................5

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ...................................................12, 14

*Skiadas v. Acer Therapeutics, Inc.*,
    No. 1:19-cv-06137-GHW, ECF 136 (S.D.N.Y. Jan. 7, 2022) .............................6, 19

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003).......................................................................5

*Taft v. Ackermans*,
    2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...........................................................15

*Toure v. Amerigroup Corp.*,
    2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012)......................................................8, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005), *superseded by rule as stated in*
    *Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .................................................................................4, 5

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
    2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017).........................................................16

*Xu v. Gridsum Holding*,
    2024 WL 5301450 (S.D.N.Y. Apr. 3, 2024)......................................................6, 9, 19

4933-8729-3577.v1

**Page**

*Yuzary v. HSBC Bank USA, N.A.*,
    2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ...........................................................................19

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §77k ...................................................................................................................................11, 13
    §77o ........................................................................................................................................11
    §77z-1(a)(4) ................................................................................................................1, 3, 18, 20
    §77z-1(a)(6) ..............................................................................................................................6

4933-8729-3577.v1

Lead Counsel respectfully submits this memorandum of law in support of its motion for attorneys' fees and expenses and an award to Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4) for its work on behalf of the Settlement Class.[1]

## I.    INTRODUCTION

Through diligence and unwavering advocacy, Lead Counsel secured a $4.95 million cash recovery (the "Settlement") for the benefit of the Settlement Class.  As detailed in the Boardman Declaration and in the Settlement Memorandum, Lead Counsel devoted considerable resources and brought a high level of skill and experience to the prosecution of this Action.  Lead Counsel, among other things: (1) drafted and filed complaints, based on an extensive investigation into the facts and potential claims and defenses; (2) briefed pre-motion to dismiss letters; (3) successfully in part opposed Defendants' motion to dismiss; (4) moved for class certification; (5) served discovery requests on Defendants; (6) negotiated discovery protocols; (7) engaged in numerous meet and confers with Defendants regarding the scope of discovery; (8) engaged in settlement negotiations, including a full-day, in-person mediation session with an experienced mediator, which included the exchange of mediation statements and expert analyses that set forth the Parties' respective positions on liability and damages; (9) negotiated and obtained the instant Settlement; (10) drafted and negotiated the Settlement documents; and (11) moved for preliminary approval of the Settlement. *See generally* Boardman Decl.

---

[1]    Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation of Settlement, filed on September 9, 2025 (ECF 163-1) (the "Stipulation"), the accompanying Declaration of Erin W. Boardman in Support of: (1) Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4) (the "Boardman Declaration" or "Boardman Decl."), and in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation ("Settlement Memorandum"), submitted concurrently herewith.  Unless otherwise noted, all internal citations and quotation marks have been omitted and emphasis has been added.

4933-8729-3577.v1

Having obtained a substantial recovery on behalf of the Settlement Class, Lead Counsel now respectfully moves this Court for an award of attorneys' fees equal to 33-1/3% of the Settlement Amount and payment of $72,924.02 in litigation expenses, together with interest on both amounts. The requested fee is fair and reasonable under the standards set forth in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), and is fully supported by both the percentage-of-the-fund method and the lodestar cross-check. Lead Counsel's fee request is also consistent with fees awarded by courts in the Second Circuit (including this Court) in similar common fund cases, and the litigation expenses sought by Lead Counsel were reasonably incurred in connection with the prosecution of the Action.

The requested fee is also supported by the significant risks undertaken by Lead Counsel. Lead Counsel pursued this Action on behalf of the Settlement Class on a contingent fee basis, dedicating over 3,300 hours of time in the case and $72,924.02 in expenses without any promise of recovery, payment, or reimbursement. Lead Counsel has not received a single payment for the services it has performed and the expenses it has incurred over the course of nearly four years of litigation. The risk of no recovery was particularly pronounced here, where highly skilled and experienced defense counsel fiercely contested Lead Plaintiff's ability to establish falsity, materiality, causation, and damages.

Lead Plaintiff supports the Settlement and Lead Counsel's request for attorneys' fees and expenses. *See* Declaration of Pam Peters ("Peters Decl."), ¶6, submitted herewith. Moreover, to date, there have been no objections to the requested attorneys' fees and expenses or to the award to

- 2 -

4933-8729-3577.v1

Lead Plaintiff.  The absence of objections from the Settlement Class supports a finding that Lead Counsel's request for fees and expenses is fair and reasonable.[2]

Finally, Lead Plaintiff seeks an award of $2,475 pursuant to 15 U.S.C. §77z-1(a)(4).  *See* Peters Decl., ¶¶3, 8.  Lead Plaintiff monitored and actively participated in the prosecution of this Action; and its request for an award for the time it expended in representing the Settlement Class should be granted.  *See id.*, ¶4.  Lead Plaintiff, among other things, reviewed pleadings and opinions of the Court, collected and produced documents in response to discovery requests, and participated in numerous discussions with Lead Counsel regarding case developments, litigation strategy, and settlement negotiations.  *Id.*, ¶¶3-4, 8.

Accordingly, Lead Counsel respectfully submits that the Court should grant its Motion for an Award of Attorneys' Fees and Expenses and an Award to Lead Plaintiff Pursuant to 15 U.S.C. §77z-1(a)(4).

## II.     HISTORY AND BACKGROUND OF THE ACTION

A detailed description of Lead Plaintiff's claims and counsel's vigorous prosecution of the Action (including key pleadings, motions, and discovery and mediation efforts) is set forth in the accompanying Boardman Declaration.  For the sake of brevity, the Court is respectfully referred to that declaration.

## III.    ARGUMENT

### A.     Lead Counsel Is Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

An attorney who creates a common fund for the benefit of a class is entitled to reasonable fees from the fund.  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a

---

[2]     The deadline to object to the Settlement, Plan of Allocation, and Lead Counsel's requests for attorneys' fees and expenses and an award to Lead Plaintiff is February 6, 2026.  If any objections are timely filed, Lead Counsel will respond in its reply brief to be filed on February 20, 2026.

- 3 -

lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund."); *see also Goldberger*, 209 F.3d at 47 ("[A]ttorneys whose efforts created the fund are entitled to a reasonable fee – set by the court – to be taken from the fund."); *Fresno Cnty. Emps.' Ret. Ass'n. v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019).  The common fund doctrine is designed to "fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf." *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) (citing *Goldberger*, 209 F.3d at 47), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015).

Here, Lead Counsel created a $4.95 million common fund for the Settlement Class and is entitled to reasonable attorneys' fees from the fund.  *See Boeing*, 444 U.S. 478; *see also Goldberger*, 209 F.3d at 47.  Moreover, fairly compensating Lead Counsel for the risks associated with pursuing this litigation is vital to the pursuit of "such actions" which "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

### B.    The Court Should Apply the Percentage Method in Awarding Attorneys' Fees to Lead Counsel

The trend in the Second Circuit has been to award attorneys' fees based on a percentage of the common fund.  *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."), *superseded by rule as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235 (2d Cir. 2023); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) ("'The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'") (quoting *In re Parking Heaters, Antitrust*

- 4 -

*Litig.*, 2019 WL 8137325, at \*7 (E.D.N.Y. Aug. 15, 2019)); *Aeropostale*, 2014 WL 1883494, at \*11-\*12.

Courts in the Second Circuit have recognized that the percentage method "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores*, 396 F.3d at 121; *see also Hayes v. Harmony Gold Mining Co.*, 509 F. App'x 21, 24 (2d Cir. 2013) ("[T]he prospect of a percentage fee award from a common settlement fund . . . aligns the interests of class counsel with those of the class."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The percentage method better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients . . . ."). Courts have also recognized that the percentage method avoids some of the pitfalls of the lodestar method (*see Goldberger*, 209 F.3d at 48-49; *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999)), and "is consistent with and, indeed, is intended to mirror, practice in the private marketplace." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *see also Payment Card Interchange*, 991 F. Supp. 2d at 440 ("The percentage method also accords with the overwhelming prevalence of contingency fees in the market for plaintiffs' counsel . . . ."); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011) ("[T]he percentage method . . . is consistent with the system typically used by individual clients to compensate their attorneys.").

Recently, the Second Circuit reaffirmed these principles in rejecting an objection to the percentage approach for awarding attorneys' fees in PSLRA cases. *See Fresno Cnty.*, 925 F.3d at 63, 72 (confirming the propriety of the percentage approach for awarding fees in PSLRA cases).

The text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") also supports the use of the percentage-of-the-fund method. The PSLRA states: "[t]otal attorneys' fees and

- 5 -

4933-8729-3577.v1

expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class.  15 U.S.C. §77z-1(a)(6).  Courts have interpreted this provision of the PSLRA as indicating Congress' preference for the percentage method in common fund cases.  *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *3 (S.D.N.Y. Nov. 7, 2007); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).

In light of the foregoing, the Court should award attorneys' fees to Lead Counsel based on the percentage method.

### C.    The Requested 33-1/3% Fee Is Consistent with Fee Awards in Common Fund Cases in Courts in the Second Circuit

In assessing the reasonableness of a fee award, the Supreme Court has recognized that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.  *Mo. v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).  "'In tort suits, an attorney might receive one-third of whatever amount the [Lead Plaintiff] recovers.  In those cases, therefore, the fee is directly proportional to the recovery.'"  *Blum v. Stenson*, 465 U.S. 886, 903 n* (1984).

Lead Counsel's request for attorneys' fees equal to 33-1/3% of the Settlement Amount is well within the range of percentage fees awarded by courts in the Second Circuit, including this Court and other courts in this District.  *See, e.g.*, *In re Jernigan Cap., Inc. Sec. Litig.*, No. 1:20-cv-09575-JLR-KHP, ECF 154, ¶4 (S.D.N.Y. May 29, 2025) (awarding attorneys' fees of 33-1/3% of the settlement fund) (attached as Ex. B hereto); *Lokman v. Azure Power Glob. Ltd.*, 2025 WL 2627124, at *4-*5 (S.D.N.Y. Sept. 8, 2025) (Woods, J.) (awarding attorneys' fees of 33-1/3% of the settlement fund); *Xu v. Gridsum Holding*, 2024 WL 5301450, at *1 (S.D.N.Y. Apr. 3, 2024) (Woods, J.) (awarding attorneys' fees of 33-1/3% of the settlement fund); *Skiadas v. Acer*

- 6 -

*Therapeutics, Inc.*, No. 1:19-cv-06137-GHW, ECF 136, ¶1 (S.D.N.Y. Jan. 7, 2022) (Woods, J.) (awarding attorneys' fees of one-third of the settlement fund) (attached as Ex. D hereto); *Erlandson v. Triterras, Inc.*, No. 7:20-cv-10795-CS, ECF 82, ¶4 (S.D.N.Y. Sept. 8, 2022) (awarding attorneys' fees of one-third of the settlement fund) (attached as Ex. A hereto); *In re Deutsche Bank AG Sec. Litig.*, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (Woods, J.) (awarding attorneys' fees of one-third of the settlement fund); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *1 (S.D.N.Y. Apr. 30, 2024) (awarding attorneys' fees of 33-1/3% of $19.5 million settlement); *Kohari v. MetLife Grp.*, 2025 WL 100898, at *11-*12 (S.D.N.Y. Jan. 15, 2025) (awarding attorneys' fees of 33-1/3% of $4.5 million settlement); *McIntosh v. Katapult Holdings, Inc.*, 2024 WL 5118192, at *13 (S.D.N.Y. Dec. 13, 2024) (awarding attorneys' fees of 33-1/3% of $2.5 million settlement); *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings*, 2022 WL 4136175, at *1 (S.D.N.Y. Feb. 14, 2022) (awarding attorneys' fees of $6 million, plus interest, from $18 million settlement); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *1, *14-*22 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees of 33-1/3% of $7.5 million settlement); *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *9, *11-*12 (S.D.N.Y. Nov. 9, 2015) (awarding attorneys' fees of 33% of $26.5 million settlement), *aff'd*, 674 F. App'x 37 (2d Cir. 2016); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *12-*13 (S.D.N.Y. Dec. 19, 2014) (awarding attorneys' fees of 33-1/3% of $3.8 million settlement); *Aeropostale*, 2014 WL 1883494, at *20 (awarding attorneys' fees of 33% of $15 million settlement); *In re NYSE Specialists Sec. Litig.*, No. 1:03-cv-08264, ECF 38, ¶19 (S.D.N.Y. June 10, 2013) (awarding attorneys' fees of 41% of $18.5 million settlement) (attached hereto as Exhibit C); *Maley*, 186 F. Supp. 2d at 370 (awarding attorneys' fees of 33-1/3% of $11.5 million settlement and finding requested fees fell "comfortably within the range of fees typically awarded in securities class actions"); *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co.*, 2022

- 7 -

WL 3127633, at *4 (E.D.N.Y. Apr. 12, 2022) (awarding attorneys' fees of one-third of $10 million

as "reasonable and consistent with awards in similar cases in this Circuit").[3]

> **D.      The Lodestar Cross-Check Confirms the Reasonableness of the Requested Attorneys' Fees**

Courts may use the value of services on an hourly basis or lodestar as a "'cross check,'"

*Goldberger*, 209 F.3d at 50, "to ensure that an otherwise reasonable percentage fee would not lead to

a windfall." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014).

The lodestar method involves a two-part analysis,

> first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work.

*Aeropostale*, 2014 WL 1883494, at *13.  Here, the lodestar method confirms the reasonableness of

Lead Counsel's fee request.

In the aggregate, Lead Counsel has spent over 3,300 hours of attorney and paraprofessional

time, amounting to $2,709,542.50 in lodestar based on Lead Counsel's current hourly rates in

contingent cases, which are consistent with rates charged by firms performing comparable work on

behalf of plaintiffs and defendants.  Lead Counsel's request for attorneys' fees equal to 33-1/3% of

---

[3]      *See also Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at *10 (S.D.N.Y. Sept. 29, 2022) ("Class counsel's request for one-third of the gross settlement fund is reasonable within this circuit."); *Noom*, 2022 WL 2705354, at *10 ("A fee equal to one-third of a settlement fund is routinely approved in this Circuit."); *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding attorneys' fees of 33-1/3% of $31.9 million settlement); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (awarding attorneys' fees of 33% of the approximately $7.7 million settlement and finding award "well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (finding fee award of one-third of $4.45 million settlement to be "reasonable and 'consistent with the norms of class litigation in this circuit'").

4933-8729-3577.v1

the Settlement Amount represents a lodestar multiplier of less than 0.61, which further supports a finding that Lead Counsel's fee request is fair and reasonable. *See, e.g.*, *Xu*, 2024 WL 5301450, at *2 ("the requested fee results in a 'negative' lodestar multiplier of 0.58 which confirms the reasonableness of the requested fee"); *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving fee with negative multiplier as a "strong indication of the reasonableness of the [requested] fee"); *see also In re Valeant Pharms. Int'l, Inc. Third-Party Payor Litig.*, 2022 WL 525807, at *7 (D.N.J. Feb. 22, 2022) ("Unlike many others, Lead Counsel's lodestar results in a negative multiplier, thereby furnishing strong evidence that the requested fees are reasonable.").

### E.    The *Goldberger* Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit identified several factors that district courts should consider in assessing the reasonableness of a fee award in common fund cases, whether under the percentage or lodestar methods. These factors include: (1) the time and labor expended by counsel; (2) the magnitude and complexity of the litigation; (3) the risks of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See Goldberger*, 209 F.3d at 50. Each of these factors supports the reasonableness of the fee request here.

### 1.    The Time and Labor Expended by Counsel

Lead Counsel devoted significant time and resources to the prosecution of this Action. Over the course of over three years of litigation, Lead Counsel and its paraprofessionals devoted more than 3,300 hours to the prosecution of this Action, on a wholly contingent basis, with no guarantee of compensation. As detailed in the Boardman Declaration, which is being submitted herewith, Lead Counsel performed significant work throughout the Action. Lead Counsel, among other things:

4933-8729-3577.v1

- conducted an extensive legal and factual investigation and drafted amended complaints;

- exchanged pre-motion to dismiss letter briefs;

- opposed Defendants' motion to dismiss;

- moved for class certification;

- engaged in discovery, including serving document requests and participating in numerous discovery conferences concerning the scope of discovery and the production of documents;

- responded to Defendants' discovery requests;

- negotiated an ESI protocol with Defendants;

- consulted with a financial expert regarding causation and damages;

- participated in a full-day, in-person mediation session overseen by an experienced mediator, David M. Murphy of Phillips ADR Enterprises;

- worked with its damages expert to develop a Plan of Allocation that treats the Lead Plaintiff and the other Settlement Class Members fairly and equitably;

- drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and the Supplemental Agreement;

- drafted the preliminary approval motion and supporting materials submitted therewith;

- worked with the Court appointed Claims Administrator to provide notice to the Settlement Class; and

- drafted the final approval motion and supporting materials submitted therewith.

*See generally* Boardman Decl. Moreover, Lead Counsel will continue to provide services to the Settlement Class in connection with the implementation and administration of the Settlement, including responding to Settlement Class Members' inquiries, helping with the completion and submission of Claim Forms, overseeing the claims administration process, and working with the Claims Administrator to resolve any issues that may arise. Lead Counsel's provision of these

- 10 -

4933-8729-3577.v1

additional services, for which no fees or expenses will be sought, further supports the reasonableness of the requested fee. *See Facebook*, 2015 WL 6971424, at *10 ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."); *see also McIntosh*, 2024 WL 5118192, at *12 (noting that counsel "will incur additional time in connection with implementation of the Settlement").

In sum, Lead Counsel's commitment of over 3,300 hours to the prosecution of this Action and procurement of a $4.95 million cash recovery strongly supports a finding that the 33-1/3% fee request is reasonable.

### 2.      The Magnitude and Complexity of the Litigation

Courts in this District recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *see also Guevoura*, 2019 WL 6889901, at *5 (Securities class actions are by their very nature complicated, and courts in this Circuit have long recognized that securities class actions are "notably difficult and notoriously uncertain" to litigate.) (citation modified); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *18 (S.D.N.Y. Oct. 16, 2019) ("Securities class actions in particular are 'notably difficult and notoriously uncertain.'").  This Action was no different.

Lead Plaintiff's claims under §§11 and 15(a) of the Securities Act of 1933 involved complex, contested issues concerning, among other things, falsity, materiality, and negative causation. Moreover, Defendants heavily disputed Lead Plaintiff's ability to prove damages, which would have been the subject of expert testimony and factual disputes.  Navigating these contested and complex factual and legal issues required significant skill, diligence, and expertise from Lead Counsel to

- 11 -

achieve the current Settlement.  Thus, this factor weighs in favor of the requested fee.  *See Aeropostale*, 2014 WL 1883494, at *16 (finding second *Goldberger* factor favored settlement where case involved "difficult, complex, hotly disputed, and expert-intensive issues").

### 3.    The Risks of the Litigation

"Courts have held that this factor [*i.e.*, the risks of litigation] is often 'the most important *Goldberger* factor.'"  *In re GSE Bonds*, 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020).  Here, the risk of litigation was substantial, including because Lead Plaintiff pursued this case as a class action, on a contingency basis, against foreign-based defendants.  *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) ("'Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.'").

### a.    Contingent Nature of Lead Counsel's Representation

"The Second Circuit . . . recognize[s] that courts should consider the risks associated with . . . undertaking a case on a contingent fee basis."  *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014); *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) ("Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *Bank Note Holographics*, 127 F. Supp. 2d at 433 (finding it "appropriate to take [contingent-fee] risk into account in determining the appropriate fee"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award.").

Lead Counsel pursued this Action on a contingency basis, assuming significant risks without any guarantee of recovery.  *See Guevoura*, 2019 WL 6889901, at *19 ("Lead Counsel understood from the outset that they were embarking on a complex, and potentially expensive and lengthy

litigation, which would require the investment of thousands of hours of attorney time, with no guarantee of ever being compensated for their investment of such time and money."). The risk of no recovery in securities class actions, including this Action, is real. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *See Veeco*, 2007 WL 4115808, at *6.

Lead Counsel's assumption of the contingency-fee risk strongly supports the reasonableness of the requested fee. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### b.   Risk of Establishing Liability

Lead Plaintiff believes that there was evidentiary support for its claim that the Offering Documents were materially false and misleading. Nevertheless, Defendants disputed liability. At summary judgment and trial, Defendants would have argued, as they did at the motion to dismiss stage, that the statements at issue were not materially false and misleading, and they denied the allegations in the Muddy Waters Report. The Underwriter Defendants would also continue to press their "due diligence" defense. Therefore, whether Lead Plaintiff ultimately would prove liability was far from assured.

Moreover, Defendants vigorously opposed Lead Plaintiff's motion for class certification, arguing neither Lead Plaintiff nor any other member of the class had standing to represent a class, as none could trace their ADS purchases to the registration statement for the Follow-On Offering, as required by Section 11 of the Securities Act. Boardman Decl., ¶55. Defendants bolstered their argument by contending that all KE Holdings ADS were held by a depository trust company in "fungible bulk," which meant that purchasers acquired a *pro rata* interest in an undifferentiated pool

4933-8729-3577.v1

of securities. *Id.*, ¶56. If Defendants successfully challenged standing and tracing, the case would be effectively over.

Finally, Defendants challenged Lead Plaintiff's ability to pursue discovery outside of a six-week period, involving only the narrow issue of KE Holdings' store and agent numbers as a September 30, 2020. *Id.*, ¶¶50-52. While Lead Plaintiff believed this view of relevance was too narrow, there is no guarantee that the Court would permit broader discovery, significantly impacting Lead Plaintiff's ability to prove its claims.

### c.      Risk of Establishing Damages

"Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *JPMorgan*, 2014 WL 1224666, at \*11; *see also AOL*, 2006 WL 903236, at \*9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). This case is no exception. Defendants would continue to attack the link between the alleged misstatements and Lead Plaintiff's losses as well as the damages calculations of Lead Plaintiff's expert which, if accepted, would severely limit, or entirely eliminate, the amount of damages that could be recovered. Defendants argued that confounding information caused or contributed to the decline in KE Holdings' ADS price.

There is no way to know how the Court or jury would decide these issues. The damages assessments of the parties' respective trial experts would become a "battle of the experts." The outcome of such battles is never predictable, and there existed the very real possibility that the Court or a jury could be swayed by experts for Defendants to minimize the Settlement Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.

- 14 -

4933-8729-3577.v1

Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained might well be only a fraction of the damages claimed.

### 4. The Quality of Representation Supports the Requested Fee

In assessing the quality of counsel's representation, courts consider, among other things, "the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). Lead Counsel is recognized as a leader in securities class actions and complex litigations. *See* accompanying Declaration of Erin W. Boardman Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Fee Decl."), Ex. F (Firm Resume). Lead Counsel respectfully submits that this factor is best illustrated by the result achieved. In a case where liability and damages were heavily contested, Lead Counsel, through a high-level of skill, hard work, and determination, secured a $4.95 million cash recovery for the Settlement Class.

Courts also consider the quality of the adversary when evaluating counsel's performance. *See, e.g.*, *Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a fee award was that defendants were represented by "one of the country's largest law firms"). Lead Counsel was opposed in this Action by experienced and skilled defense counsel at O'Melveny & Myers LLP and Goodwin Procter LLP, who employed a number of defenses, arguments, and strategies in an attempt to obtain the dismissal of this case, prevent class certification, and limit their clients' exposure. Defendants' Counsel also resisted Lead Plaintiff's discovery efforts throughout the course of the Action. In the face of this formidable opposition, Lead Counsel persisted and obtained an excellent result for the Settlement Class.

- 15 -

4933-8729-3577.v1

### 5.    The Requested Fee in Relation to the Settlement

"When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value."  *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020) (citation modified).  As discussed in detail in §III.C, *supra*, the requested fee of 33-1/3% of the Settlement Amount is well within the range of percentage fee awards that courts in the Circuit have awarded in comparable cases.  Accordingly, the fee requested is reasonable in relation to the Settlement.

### 6.    Public Policy Considerations

Public policy supports rewarding Lead Counsel for taking on the risk of pursuing this private securities class action.  *See Kohari*, 2025 WL 100898, at *12 ("Courts in this Circuit have recognized the importance of private enforcement actions and the corresponding need to incentivize attorneys to pursue such actions on a contingency fee basis."); *McIntosh*, 2024 WL 5118192, at *13 (same); *Signet*, 2020 WL 4196468, at *21 ("A strong public policy concern exists for rewarding firms for bringing successful securities litigation."); *GSE*, 2020 WL 3250593, at *5 ("Generally, public policy is served by ensuring a fee is large enough to incentivize lawyers to bring meritorious class actions in the future."); *Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *7 (S.D.N.Y. Aug. 18, 2017) (fee award was "appropriate, and not excessive, to encourage future securities class actions").

### 7.    The Settlement Class' Reaction to the Fee Request Supports the Requested Fee

The Claims Administrator has disseminated over 37,200 copies of the Notice and Claim Form ("Claim Package") to potential Settlement Class Members and nominees, and one institution has informed the Claims Administrator that it anticipated sending over 39,800 Claim Packages to

- 16 -

potential Settlement Class Members.  *See* accompanying Declaration of Ross D. Murray Regarding:

(A) Notice Dissemination; (B) Publication; (C) Establishment of Call Center Services and Website;

and (D) Requests for Exclusion Received to Date, ¶11.  The time to object to Lead Counsel's fee

request expires on February 6, 2026.  To date, no Settlement Class Member has objected to the fee

and expense amounts set forth in the Notice.  The Settlement Class' reaction supports a finding that

the requested fee is fair and reasonable.  *See, e.g.*, *Signet*, 2020 WL 4196468, at *21 ("The absence

of any objections to the requested attorneys' fees . . . supports a finding that the request is fair and

reasonable.").[4]

### 8.     The Fee Request Is Supported by Lead Plaintiff

Lead Plaintiff, which has overseen Lead Counsel's litigation activities, supports the fee

request.  *See* Peters Decl., ¶6.  Lead Plaintiff's endorsement of Lead Counsel's fee request supports

approval of the request.  *See, e.g.*, *Veeco*, 2007 WL 4115808, at *8 ("[P]ublic policy considerations

support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of

lead counsel and has approved the fee request.").

All of these factors weigh in favor of Lead Counsel's fee request.

## IV.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO THE PROSECUTION OF THE ACTION

Lead Counsel respectfully requests an award of $72,924.02 in reasonable costs, charges, and

expenses in connection with the prosecution of this Action.  *See In re China Sunergy Sec. Litig.*,

2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (In a class action, attorneys should be

---

[4]     *Flag Telecom*, 2010 WL 4537550, at *29 ("If th[e] important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook."); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered.").

compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation.""); *In re Flag Telecom*, 2010 WL 4537550, at \*30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class."); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients.") (citation modified).

Lead Counsel's expenses are consistent with the stage of the Action at the time the Settlement was reached, and include, for example, expert and consultant fees, legal research costs, mediation fees, and filing fees.  These fees are routinely charged and awarded in common fund cases.  *See, e.g.*, *GSE*, 2020 WL 3250593, at \*6 (awarding counsel for, among other things, expert-related expenses, copying costs, online research, and filing and service fees); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys.  For this reason, they are properly chargeable to the Settlement fund.").

The expenses incurred by Lead Counsel are described in detail in the accompanying Fee Decl.  To date, there have been no objections to Lead Counsel's expense request.

## V.    LEAD PLAINTIFF IS ENTITLED TO A REASONABLE AWARD UNDER 15 U.S.C. §77z-1(a)(4)

Lead Plaintiff is seeking an award of $2,475 for the time it spent representing the Settlement Class in this Action.  *See* 15 U.S.C. §77z-1(a)(4) (providing for an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of [a] class").  Such awards are permitted because they

- 18 -

4933-8729-3577.v1

"'compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.'" *McIntosh*, 2024 WL 5118192, at *13; *Kohari*, 2025 WL 100898, at *12 (same).

Numerous courts in this Circuit, including this Court, have approved reasonable awards to compensate a class representative for his, her, or its time and expenses in representing the class. *See*, *e.g.*, *Azure Power*, 2025 WL 2627124, at *4 (awarding $10,000 to lead plaintiff); *Skiadas*, ECF 136, ¶3 (awarding $10,000 to lead plaintiff); *Xu*, 2024 WL 5301450 at *2 (awarding total of $30,000 to plaintiffs); *Deutsche Bank*, 2020 WL 3162980, at *2 (awarding $20,000 to class plaintiffs); *XL Fleet*, 2024 WL 1884483, at *2 (awarding $25,000 to lead plaintiff and $15,000 to each named plaintiff); *Kohari*, 2025 WL 100898, at *12-*13 (approving request of $15,000 to each lead plaintiff); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding $12,500 to lead plaintiff); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL 4596811, at *3 (S.D.N.Y. Aug. 11, 2020) (awarding $10,000 to lead plaintiff); *Yuzary v. HSBC Bank USA, N.A.*, 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2, 2013) ("The Court finds reasonable service awards of $10,000 each to named [p]laintiffs . . . ."); *Toure*, 2012 WL 3240461, at *6 (awarding $10,000 to each named plaintiff).

Here, Lead Plaintiff actively participated in this Action, including reviewing pleadings and briefs, reviewing opinions issued by the Court, collecting and producing documents in response to discovery requests, participating in numerous discussions with Lead Counsel regarding litigation strategy and case developments, monitoring the progress of settlement negotiations, and approving the Settlement. Peters Decl., ¶¶3-4, 8. These types of activities "support awarding reimbursement of expenses to class representatives," *see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009), and the amount requested is consistent with awards in

- 19 -

4933-8729-3577.v1

other complex cases. *See Signet*, 2020 WL 4196468, at \*22-\*24 (collecting cases and awarding $25,410 to lead plaintiff).

Accordingly, Lead Plaintiff respectfully requests that the Court grant its request for an award of $2,475 for its time and effort in representing the Settlement Class.

## VI.   CONCLUSION

For all of the foregoing reasons, Lead Counsel respectfully requests that the Court grant its motion for an award of attorneys' fees of 33-1/3% of the Settlement Amount, payment of $72,924.02 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund, and an award of $2,475 to Lead Plaintiff pursuant to 15 U.S.C. §77z-1(a)(4).

DATED:  January 23, 2026                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
ERIN W. BOARDMAN


                                   *s/ Erin W. Boardman*
                               ERIN W. BOARDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com
eboardman@rgrdlaw.com

- 20 -

4933-8729-3577.v1

ROBBINS GELLER RUDMAN
   & DOWD LLP
ELLEN GUSIKOFF STEWART
(admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
elleng@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 21 -

## WORD COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel certifies that the total number of words in the foregoing brief, inclusive of point headings and footnotes and exclusive of the caption, table of contents, table of authorities, signature block, and this Certification, is 6,218 words.   This figure is based on Microsoft Word's word count function, which includes legal citations, numerical information, and certain forms of punctuation in the word count.

DATED:  January 23, 2026                    ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                            ERIN W. BOARDMAN


                                            *s/ Erin W. Boardman*
                                            ERIN W. BOARDMAN

                                            58 South Service Road, Suite 200
                                            Melville, NY  11747
                                            Telephone:  631/367-7100
                                            631/367-1173 (fax)
                                            eboardman@rgrdlaw.com

4933-8729-3577.v1