# Exhibit C

 **SCHWARTZ** PC

IRWIN B. SCHWARTZ
ISCHWARTZ@BLASCHWARTZ.COM
TEL 781.636.5032

January 23, 2026

<u>By E-Mail</u>

Darren J. Robbins, Esq.
Ellen Gusikoff, Esq.
Robbins Gellar Rudman & Dowd, LLP
655 West Broadway, Suite 1900
San Diego, California 92101

      Re: <u>Chin v. KE Holdings Inc.</u>, Civ. No. 1:21-cv-11196-GHW-BCM (S.D.N.Y.)

Greetings Darren and Ellen:

      I write to follow up on our firm's efforts to get clarity on what appears to be typographical errors in the plan of allocation submitted in the above-referenced case. By way of background and as Darren likely remembers, we calculate recognized loss for our clients on all settled cases for, among other reasons, to assure that their claims filing services are properly submitting claims and that the clients receive all funds due to them. With respect to the KE Holdings case, most of our clients have exposure, including CalSTRS and Mass PRIM, which have authorized me to reach out to you.

      In early January our analyst identified an apparent ambiguity in the proposed plan of allocation submitted to the court for the class notice. In short, information in plan of allocation paragraph 70 is inconsistent with Table A as well as Notes 70.1 and 70.2, which is replicated below:

 **BLA** SCHWARTZ ᴾᶜ

IRWIN B. SCHWARTZ
ISCHWARTZ@BLASCHWARTZ.COM
TEL  781.636.5032

70.     A "Recognized Loss Amount" will be calculated for each purchase or acquisition of KE Holdings (ticker: BEKE) ADS ("Shares") during the Settlement Class Period or pursuant to or traceable to the registration statement and prospectus for the November 19, 2020, secondary offering by KE Holdings. Only Shares held until at least November 16, 2021, and sold on or after November 16, 2021, will be entitled to a Recognized Loss Amount under this Plan. The Recognized Loss Amount shall be based on the Date of Sale as set forth in Table A below; provided, however, that all such losses will be limited by loss limitation rules set forth in A.1–4 below. For each eligible KE Holdings Share, the Purchase Price shall be the amount paid (excluding fees and expenses) and the Sale Price shall be the amount received (before paying fees and expenses). To the extent that the calculation of a claimant's Recognized Loss Amount results in a negative number or zero under the criteria below, that Recognized Loss Amount will be deemed to be zero.

**Table A: Calculation of Recognized Loss Amounts for**
**Eligible KE Holdings ADSs (Shares) Based on Relevant Dates of Sale**

| Period | Begin Date | End Date | Recognized Loss Per Share |
|---|---|---|---|
| 1 | November 19, 2020 | December 15, 2021 | $0.00 |
| 2 | December 16, 2021 | December 19, 2021 | The lesser of: (i) $0.50 per Share; or (ii) the difference between $18.70 per Share and the sales price |
| 3 | December 20, 2021 | March 9, 2022 | $0.99 |
| 4 | March 10, 2022 | The Current Date | $1.99 |

1.      If sold on or before November 15, 2021, the Recognized Loss Amount for each eligible KE Holdings Share shall be zero.

2.      If sold from November 16, 2021 through March 10, 2022, inclusive, the Recognized Loss Amount for each eligible KE Holdings Share shall be the lesser of: (a) the calculations of the Recognized Loss Amount per Share on the Date of Sale set forth in Table A; or (b) the Offering Price of $58.00 minus the Sales Price.[2]

3.      If held as of the close of trading on March 10, 2022, the Recognized Loss Amount for each eligible KE Holdings Share shall be $1.99.

Table A Period 1 lists the End Date of the zero Recognized Loss ("RL") Period as December 15, 2021, while Paragraph 70, as well as 70.1, both state that the same period ends on November 15, 2021.  The same issue continues with Table A Period 2, creating confusion regarding the beginning of the actual RL period.

In addition, we are unable to harmonize the calculation methodology set forth in Table A Period 2, which references "the difference between $18.70 per Share and the sales price," with what is set forth in Note 70.2, which references "the Offering Price of $58.00 minus the Sales Price."

Further, we want to ensure that the language "or traceable to the Follow-On Offering's registration statement" does not expand the class period beyond November 19, 2020, to March 10, 2022.

On January 5, 2026, Max Djafari of our firm wrote by email to Verita Global ("Verita") seeking guidance as to these ambiguities. He heard nothing back until January 20, 2026, which response offered no guidance and suggested that we submit a claim as to which Verita will evidently apply its own undisclosed interpretations of these ambiguities. A copy of that email thread is attached as Exhibit A hereto.  In the



IRWIN B. SCHWARTZ
ISCHWARTZ@BLASCHWARTZ.COM
TEL 781.636.5032

meantime, Max's supervisor, David Pineau, wrote by email to Ellen on January 13, 2026, asking whether Paragraph 70 contained typographical errors and, if not, to request further guidance. A copy of David's email is attached as Exhibit B hereto. We still have not heard back from Ellen.

Accordingly, this will provide courtesy notice that, absent an explanation as to these concerns, we will likely object to the settlement on behalf of CalSTRS, PRIM and perhaps other clients, to the extent that the plan of allocation is ambiguous and unworkable. I would like to avoid having to do so and we are happy to have a call to discuss these concerns next week if Robbins Gellar is willing to do so.

Finally, Verita's failure to provide substantive responses to our inquiries seeking clarification on plan of allocation issues, as evidenced in this case, is unacceptable. Prior to it rebranding, we contacted Gilardi on numerous settlements with legitimate interpretive questions as to which we received no answer. This time the delayed response did not address the substance of our inquiry. By contrast, every other claim administrator that we contact willingly answers such entreaties. Yet the settlement notices specifically direct claimants to contact Verita with any questions and Verita's non-responsiveness causes frustration for us, our clients, and ultimately burdens class counsel with this kind of follow-up. Could you please identify a person at Verita that will be responsible for addressing the substance of our inquiries on a going forward basis?

Thanks in advance.

Sincerely,

Irwin B. Schwartz

Enclosures